28 93 61 00 8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED
MAR 07 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| ROGER CORONADO, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 1254 |
| v. ) | |
| ) | Judge Darrah |
| VALLEY VIEW PUBLIC SCHOOL DISTRICT, ) | |
| 365-U, et al., ) | |
| ) | |
| Defendants. ) | |

### RESPONSE TO PLAINTIFF'S MOTION FOR AN ORDER OR INJUNCTIVE RELIEF OR AN EVIDENTIARY HEARING BEFORE THIS COURT[1]

NOW COME Defendants VALLEY VIEW PUBLIC SCHOOL DISTRICT, 365-U (hereinafter "the District"), DON LAVERTY and TIMOTHY GAVIN, by and through their attorneys, BRIAN J. RIORDAN and CLAUSEN MILLER P.C., and in response to Plaintiff's[2] motion, states as follows:

### Background

Plaintiff's motion and Complaint fail in several areas to fully inform this Court of the events surrounding the expulsion of ROGER CORONADO, JR., and further fail to meet the requisite standards for injunctive relief and should be dismissed.

---

[1] Plaintiff appears to rely on his "Complaint for Declaratory and Injunctive Relief and For Money Damages" filed simultaneously to his "Motion for an Order or Injunctive Relief or an Evidentiary Hearing Before This Court" for support of his motion so Defendants will attempt to respond to the motion while also addressing some of the issues raised in the Complaint. Defendants reserve the right to so properly address the remaining issues of the "Complaint" that are apparently not address in the Plaintiff's "Motion".

[2] Plaintiff's Complaint and motion identifies him as a 15-year old and thus he is not a proper party to this suit. Procedurally, Plaintiff is required to add his parent, guardian or next friend to this suit.

1172302.1

Mr. Coronado was charged with participating in "mob action" and "subversive activity and organization" in accordance with the Bolingbrook School Code which he and his parents received in the beginning of the school year. He was one of many students expelled for this incident and the District's decision had absolutely nothing to do with the fact that he is of Mexican decent.

Plaintiff, among many others, was seen in the cafeteria by District personnel participating in a mob action during the lunch hour on February 4, 2008. (See Incident Report of Timothy Gavin attached as Exhibit A.) Mr. Coronado even admits on two separate occasions by way of signed statements as well as to the District Disciplinary Hearing Officer at his hearing that he did walk over to lend support to the group of students that were about to start a large scale fight, throwing gang signs and yelling at each other and being subversive and responding to security guard's order to disperse. He testified fully at the disciplinary hearing that he lent his support to his friends and people at his table in what was turning into a mob scene and that he knew some these students to be gang members. (See Exhibit B, Plaintiff's signed statement, and Exhibit C, Hearing Officer's Prodehl's Report, p. 2, Section XII.)

### Plaintiff's Claims That He Was Not Provided Due Process and That the District's Action's Were Racially Motivated Are Without Merit

In Illinois, expulsions may be implemented for up to two calendar years. School district administrators may recommend that a student be expelled for gross disobedience or misconduct, and school boards have the authority to expel students for a definite period of time for such offenses. 105 ILCS 5/10-22.6(d).

The School Board of Education must provide the student with procedural and substantive due process. All of those due process rights were afforded to Mr. Coronado before and during his disciplinary hearing, including notice and an impartial, fair hearing. Mr. Coronado and his

parents were immediately notified of the charges against him by letter dated February 7, 2008 sent by Assistant Principal Dan Laverty. Attached as a Exhibit D find the letter sent to the Plaintiff's parents.

The Seventh Circuit Court of Appeals has held in *Linwood v. Board of Education of City of Peoria, School District No. 150, Peoria County, Illinois*, 463 at 2d, 763, 7770 (7th Cir. 1972) that the "type of administrative hearing here involved need not take the form of a judicial or quasi judicial trial. Due process in the context of a disciplinary hearing in a school district is not be equated with that essential to a criminal or juvenile court delinquency proceeding. The *Linwood* court held that the requirement is an orderly hearing before an impartial tribunal, in which the administration presents its case through written evidence and witnesses and the student is allowed to cross examine the evidence and to present evidence.

In this case, just such a hearing took place and the Plaintiff had every opportunity to cross examine the District personnel who were present at the hearing. They also had the opportunity to present evidence, which they chose not to do. The Plaintiff again admitted all of the activities to which he was being charged as he did in an earlier signed statement to District personnel. There was no evidence or facts in dispute at the hearing contrary to Plaintiff's Complaint. He admitted to the actions he was charged with.

### Procedural Rights Were Afforded

Additionally, Plaintiff and his parents were notified on February 11, 2008 by regular and certified mail there was to be a hearing regarding the recommendation for expulsion of the Plaintiff by the School District. The date and time for that hearing was to be February 19, 2008, more than 8 days after the Plaintiff received notice of hearing. Attached as Exhibit E find the

letter from Hearing Officer Steven J. Prodehl sent February 8, 2008, as well as the signature for the certified mail by Plaintiff's mother and father.

At the hearing the Plaintiff, as well as his parents, were afforded every opportunity to present their side of the incident at issue. The Plaintiff, Roger Coronado, nor his parents, provided any evidence whatsoever to contradict the reports and testimony of the actions of February 4, 2008. In fact, Plaintiff himself admitted to those very actions that he was charged with, including subversive behavior and mob action. He testified that he did get up from his chair and join a group of students who were yelling and screaming and about to get into a large scale altercation to lend them support. (See Exhibits B and C.)

In this case, the Plaintiff has received a fair and impartial hearing with an opportunity to offer evidence and cross examine any witnesses. All fundamental concepts of fair hearing including the opportunity to be heard, the right to cross examine and adverse witnesses in to impartiality and the rulings upon the evidence have been met. Attached hereto as Exhibit C find the report from the hearing officer regarding the Plaintiff Roger Coronado which outlines the procedures and due process steps taken by the District.

Based on the hearing officer's recommendation and the evidence presented therein, the School Board took the proper action at the February 22, 2008 Board meeting and expelled the Plaintiff. By way of certified mail letter dated February 25, 2008, Plaintiff and his parents were notified of this decision. Attached hereto as Exhibit F find the certified letter from the School Board President to Plaintiff and his parents notifying them of the results of the Board hearing.

**<u>Substantive Rights Were Afforded</u>**

Plaintiff's substantive due process rights were also maintained by a fair and balanced hearing. Substantive due process is the protection of the individual from governmental actions

4

1172302.1

that are arbitrary and capricious. Substantive due process involves the exercise of governmental power without reasonable justification and it is most often described as an abuse of governmental power that "shocks the conscious." *Tun v. Whittiker*, 398 F. 3d 899, 902 (7th Cir. 2005).

In this case, the District, having to deal with the ever present and real threat of gang activity throughout its school must focus its concerns on the safety of all the students and the community. The actions the District took to discipline all those involved was entirely appropriate and in no way can be considered to have "shocked the conscious."

In *Remer v. Burlington Area School District*, 286 F. 3d 1007 (7th Cir. 2002), the court found that the school district did not violate its student substantive due process rights when it expelled him for four years for his role in a plot to break into a school and assassinate teachers and students. The court held that the district's interests in providing for a safe and stable learning environment <u>free of distraction and fear</u> certainly justified the permanent expulsion of the student from its schools. (Emphasis added.)

Similarly, in this case, rampant and public gang activity and intimidation by a certain group of students has a drastic effect on the ability of other students to have a safe and stable learning environment. The school district is not only encouraged but also compelled to take swift and decisive action regarding all gang activity at the school. In *Remer*, the student was expelled for four years, however here the discipline for Mr. Coronado is less than two full semesters. The expulsion for the remainder of this semester and one additional semester may seem harsh to Mr. Coronado at this point, however the damage to both the learning environment at the District and to other students for the allowance of unchecked gang activity in the school certainly outweighs this disciplinary action imposed by the District in this case.

## Plaintiff Does Not Meet Requirements Necessary for an Issuance of a Preliminary Injunction

Injunctive relief is an extraordinary remedy and should not be issued unless the necessity for it is clearly established and free from doubt. *Shodden v. Chicago Title & Trust Co.*, 162 Ill. App. 3d 677, 673, 515 N.E.2d 1339, 1344 (2d Dist. 1987). There is general agreement by the courts on the following standards for issuance of injunctive relief: (a) Plaintiff has no adequate remedy at law and will suffer irreparable harm if the preliminary injunction is not entered; and (b) the threatened injury to the plaintiff outweighs threatened harm the injunction may inflict on the defendants; and (c) the plaintiff has a reasonable likelihood of success on merits; and (d) the granting of injunctive relief will not disserve the public interest. *See, O'Connor v. Board of Education*, 645 F.2d 578, 580 (7th Cir. 1981), *cert. den.*, 454 U.S. 1084 (1981); *Kanter and Eisenberg v. Madison Assoc.*, 116 Ill. 2d 506, 510, 508 N.E.2d 1053, 1055 (1987); *Buzz Barton & Assoc., Inc. v. Giannone*, 108 Ill. 2d 373, 383, 483 N.E.2d 1271, 1276 (1985); *Roland Machinery Co. v. Desser Indus., Inc.*, 749 F.2d 380, 382-83 (7th Cir. 1984). *All* of the above mentioned elements must be met for injunctive relief to be granted. The facts relieve that none of these factors balance in favor of the plaintiff. Therefore, the Plaintiff's motion must be denied and the Complaint dismissed for the following reasons:

### A.    Plaintiff Has Failed to Establish the Existence of Irreparable Injury.

Plaintiff appears to argue that his inability to remain a student at Bolingbrook High School during the approximately two semesters of his expulsion presents an irreparable injury. This argument presupposes that he lost his right to an education because of the District's decision to expel. This is simply not the case.

As the District's correspondence of February 25, 2008 indicates the Plaintiff is free to enroll in the Premier Academy in Joliet, Illinois (located in close proximity to Bolingbrook) for the period of his expulsion and to follow the program requirements. He then may be readmitted into Bolingbrook High School after a probationary period. See correspondence from the District dated February 25, 2008. (Exhibit F.)

Also Plaintiff admits both in his filing and in various news reports that he is being home schooled and has a private tutor working with him. The fact that the Plaintiff can enroll in school elsewhere and has home schooling shows that there is no threat of irreparable injury and that he is obtaining his education. Plaintiff holds no property right to obtain a public education specifically at any particular school.

### B. Plaintiff Has No Likelihood of Success on the Merits.

Even if the court believes that there is irreparable injury, Plaintiff has no likelihood of success on the merits and therefore his motion for injunctive relief should be denied. Although it is difficult to tell exactly what the Plaintiff is claiming in his Complaint regarding what the School District did that was improper, the Plaintiff appears to argue that he was not afforded his due process rights, and that the Board's decision to expel him was an abuse of their discretion and based on his race. The facts and evidence and the admission of the Plaintiff, clearly show that he participated in the alleged activity, was charged with the violations of school codes, was given proper notice, was given a proper hearing and was justly punished.[3]

The state's interest in education, safety and overall well-being of its young people has always been perceived as one of the most compelling concerns. It is always in the discretion of the Board of Education to expel a student who is guilty of gross disobedience or misconduct.

---

[3] We have previously outlined the full due process rights afforded the Plaintiff and his parents and incorporates those arguments and evidence by reference herein.

7

1172302.1

105 ILCS 5/10-22.6. Student discipline has been the subject of substantial litigation resulting in well-settled fundamental principles. School officials are given wide discretion in disciplinary actions, and the decision of the Board of Education must be upheld unless it is arbitrary and capricious, against the manifest weight of the evidence in an abuse of discretion. *Donaldson v. Bd. of Ed. Danville School District No. 118*, 98 Ill. App. 3d 438, 439, 424 N.E.2d 737, 738-739 (4th Dist. 1981); *see, also Norton v. Nicholson*, 187 Ill. App. 3d 1046, 1058, 533 N.E.2d 1053, 1059 (1989). Illinois courts have been reluctant to overturn decisions to suspend or expel students. *Clements v. Bd. of Ed. Decatur School Dist. No. 118*, 133 Ill. App. 3d 531, 532, 478 N.E.2d 1209, 1210 (1985); *Donaldson*, 98 Ill. App. 3d at 439, 424 N.E.2d at 739.

Student discipline is an arena in which courts are traditionally entered with great hesitation and reluctance, choosing to defer to school officials who are in the best position to determine if students have violated local school policies and, most importantly, to determine what the proper discipline should be. *See, Donaldson*, 98 Ill. App. 3d at 439, 424 N.E.2d at 739; *Robinson v. Oak Park School District No. 200*, 213 Ill. App. 3d 77, 80, 571 N.E.2d 931, 934 (1st Dist. 1991). As the *Donaldson* court eloquently stated:

> School discipline is an area which courts enter with great hesitation and reluctance and rightly so. School officials are trained and paid to determine what form of punishment best addresses a particular student's transgression. They are in a far better position than is a black-robed judge to decide what to do with a disobedient child at school. Donaldson, Ill. App. 3d at 439, 424 N.E.2d at 739.

In reviewing a Board's decision to determine whether the Board of Education abused its discretion, the court must consider (1) the egregious of the student's conduct; (2) the history or record of the student's pass conduct; (3) the likelihood that such conduct will effect the delivery of educational services to other children; (4) the severity of the punishment; and (5) the interest of the child. *Robinson*, 213 Ill. App. 3d at 80, 571 N.E.2d at 933.

8

The Defendants submit that, notwithstanding Plaintiff's attempt to distort the underlying facts, the interplay of the District's discipline policy, and the Illinois School Code, applicable case law and the true facts and circumstances demonstrated that the decision to expel Plaintiff was not arbitrary or capricious and was not based on race, was not against the manifest weight of the evidence, and was not an abuse of discretion. Students of other races were also punished for the same activities. The School District presents compelling support for the decision to expel Plaintiff in this case.

Further, the court stated in *Fuller v. Decatur Pub. Sch. Bd. of Educ. Sch. Dist.*, 61, 78 F. Supp. 2d 812 (C.D. Ill. 2000), that to establish racial discrimination, and thus prevail on the merits of the case, the plaintiff must show that "similarly situated individuals of a different race were not prosecuted." *Fuller* at 825 (citing *Armstrong*, 517 U.S. at 465). In *Fuller*, the court stated that plaintiff failed to prove that students of another race were not disciplined for similar conduct. *Id.* at 825. The court held that plaintiff's failure to show that students of a different race were treated less harshly resulted in a failure to establish that race played a role in the school board's expulsion decision. *Id.* The court rejected the student's request for injunctive relief. *Id.* at 814. Similarly in this case, other students of different races were also disciplined identically to Plaintiff for the same activity.

There can be no question that mob activity and the influence of recognized gang activity in school constitutes gross misconduct which may disrupt the normal operation of the school. In 1995, the United States Supreme Court articulated its concern for school safety when it stated:

> Maintaining order in the classroom has never been easy, but in recent years, school disorder has taken particularly ugly forms: drug use and violent crime in the schools have become major social problems. *New Jersey v. T.L.O.*, 469 U.S. 325, 339, 105 S.Ct. 733, 731 (1995).

Plaintiff <u>fully admitted</u> both to the hearing officer and to the Bolingbrook Police Department that he joined in the mob action and "lended support" to other students that were engaged in subversive activity which was leading to a very large scale fight in the cafeteria. Gang activity at the Bolingbrook High School has been well documented and has caused great concern for the community, the administration and parents, as well as students attending the high school. The Board of Education's decision to expel the Plaintiff along with all the others involved for participating in this mob activity and being subversive to the security guards who were attempting to control the situation is fully validated based on the tragic events that have been occurring in high schools across the country resulting in the violent deaths of numerous high school students. Gang affiliation and mob action are indeed specific and direct threats to the security and safety of both the students and the faculty at local high schools and have no place in our schools. Anyone who is a member, or lends their support to the gangs' violent ways, should be charged and appropriately punished.

The activity engaged in by the Plaintiff along with his other students by supporting gang activity is disruptive to the school environment and creates a sense of fear among the peers and negatively impacts the delivery of educational service for other students. Participation in such mob action in the public setting of the school cafeteria creates a heightened climate of fear. Students who are afraid do not perform well in school. Children must first feel safe in order to learn and perform to their potential.

The impact of violence on the public educational system of our country is staggering. Violence and fear of violence adversely affects the learning experience of all students, not to mention school personnel and administration. The pervasive nature of this threat requires strict responses from our school administration. Further, the imposition of hard measures is

imperative for the schools to adequately provide a safe environment for children to learn. Therefore, the Board of Education's decision to expel Plaintiff should stand. Plaintiff's motion should be denied.

### C. The Threatened Harm a Preliminary Injunction May Inflict on the District Outweighs any Injury to Plaintiff; Granting an Injunction Will Not Serve the Public Interest.

Even if this Court believes that the Plaintiff has a likelihood of success on the merits, the facts show that the harm the Preliminary Injunction will cause the District outweighs any alleged injury to the Plaintiff and will not serve the public interest. Based on a plain reading of the Illinois School Code and the school's personal conduct policy, the evidence indicates that the Board of Education properly arrived at the conclusion that the Plaintiff's action should result in expulsion. Plaintiff's expulsion for less than two semesters is not unreasonable or oppressive considering the severity of the conduct. Is the District required to wait until a full scale riot breaks out, injuring or even killing a student or District personnel before it takes disciplinary action against those students who stand ready and willing to turn to violence in the cafeteria?

School districts have legal and moral obligation, acting as *parens patriae*, to take action in dealing with students who engage in violent behavior potentially threatening the welfare and safety of other children in attendance at their schools.

As a general rule the exercise of the right to a free and public education is conditioned on compliance by the student with reasonable rules, regulations and requirements promulgated by the school board and implemented by school personnel. *See, Bluett v. Bd. of TRS. of the Univ. of Ill.*, 10 Ill. App. 2d 207, 211, 134 N.E.2d 635, 637 (1st Dist. 1956). A breach of such rules or regulations may subject a student to discipline, including school suspension or expulsion. *Id.* As one Michigan state court has noted, a student attending a public school system has no "special privilege not to conform to reasonable standards . . . and certainly his student status does not give

11

1172302.1

him any right to violate or impair the rights of others, or engage in conduct that tends to deprive other students of an orderly atmosphere or study . . ." *Davis v. Ann Arbor Public Schools*, 313 F. Supp. 1217, 1225 (E.D. Mich. 1970).

In this case Plaintiff has other educational opportunities, such as Premier Academy or the home tutor schooling he is currently engaged in. He is not being unreasonably harmed by the less than two semester expulsion.

Violence in schools is one of the most deadly, destructive and serious problems facing this country. Granting Plaintiff's motion and the relief sought in their Complaint would severely impede progress on this important issue. Schools must be able to deter young people from engaging in gang activity and violent behavior in using violence to solve their problems. The school's conduct policy and the resulting decisions of the District to expel Plaintiff was essential to eradicate violence among students, especially when the school is dealing with gang activity on a daily basis. The District seeks to instruct its students, through example and discipline, that engaging in mob activity and subversive organization and joining in or supporting their violent acts will be dealt with harshly. A strike against the District's conduct policy would undermine its enforcement and lessons to its students. It would constitute a significant step backwards in the mission of educating students. The Defendants therefore submit that the balance of equities tip in their favor as an advancement to the clear public interest. Neither students nor the Plaintiff would benefit by the Court's issuance of a preliminary injunction returning this student to school.

## CONCLUSION

Members of the Board of Education hire school district administrators to run the day to day operations of the School District. Perhaps one of the more important aspects of the duties of administrators is to maintain an environment that is both safe and conducive to learning.

In this case, the administrators, in carrying out their duties, determined that it was the best interest of the School District to recommend that Plaintiff be expelled from school. Indeed, it is required in the Illinois School Code and the District's policy. Mob action and violent subversive behavior and organization have no place in our public school system.

WHEREFORE, for all of the reasons stated above, Defendants VALLEY VIEW PUBLIC SCHOOL DISTRICT, 365-U, DON LAVERTY and TIMOTHY GAVIN, respectfully request this Court deny the Plaintiff's motion and dismiss Plaintiff's Complaint with prejudice.

CLAUSEN MILLER P.C.

By: /s/ Brian J. Riordan
BRIAN J. RIORDAN (ARDC No. 6237969)
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
Telephone: 312-606-7805
Facsimile: 312-606-7777
briordan@clausen.com
Counsel for Defendants School District,
Laverty and Gavin

1172302.1