**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Coronado, Roger Jr.** | ) |
|     **Plaintiff,** | )**Civil Action: 08cv1254** |
| v. | )**Judge: St. Eve** |
| | )**Magistrate Judge: Schenkier** |
| **Valleyview Public School District, 365-U** | )**Evidentiary Hearing Judge:** |
| **Alan Hampton,** Bolingbrook Policeman,Off.-Ind. Cap. | )    **John Darrah** |
| **Don Laverty Off.-Indiv. Capacities** | ) |
| **T. Gavin Off.-Indiv. Capacities** | ) |
| **Steven Prodehl** | ) |
|     **Defendants.** | ) |

<u>PLAINTIFF'S CLOSING ARGUMENT
ORAL ARGUMENTS (EVIDENTIARY HEARING AS TO DUE PROCESS BY
DEFENDANTS IN IMPOSING EXPULSION), MARCH 12, 2007 BEFORE THE
HONORABLE JUDGE DARRAH</u>

    NOW COMES Plaintiff, through his Attorney, **Christopher C. Cooper,** and provides the Plaintiff's closing argument in writing and, that of no fault of this Court, he does not have the Court transcript (since the hearing was yesterday) on which to rely, hence wrote this Argument to the best of his recollection. The Closing Argument is written in the first person and as speech in order to remain consistent with the objective and rationale for a Closing Argument:

    **Roger Coronado** is Mexican-American, a 15 year-old, braces wearing boy, in his first year at Bolingbrook [Illinois] High School. This hearing occurred because he was expelled from Bolingbrook High School for "POSTURING."  Roger has never been arrested. Until the matters for which this hearing concerned, Roger had never been expelled or received  action by school officials other than detention.  He testified before this Court that he enjoys Baseball and hopes to graduate college and law school and become a lawyer.  The evidence and testimony of March 12, 2008 shows that Roger's first contact (in his short lifetime) with a policeman, unfortunately, was with a an out-of-control, volatile Bolingbrook, Illinois policeman—Defendant Alan Hampton-- (who was previously a Cook County Correction's officer)--- a man who testified that he is grown, 6'6, 250 pounds and named Alan Hampton.  On March 12, 2008, Roger told this Court that on February 7, 2008, in Roger's presence, the Bolingbrook, Illinois policeman, Alan

1

Hampton, violently slammed a door to strike (and did strike) a chair in which 15 year-old Michael Clinton was sitting because Clinton refused to sign an admission of guilt, then growled and shouted as he demanded that 15 year-old Roger Coronado write a confession. The mistreatment of children by Officer Hampton is of concern.

Defendants' Gavin, Prodehl and Hampton state in their own writing (re: Hampton, see ticket for Mob Action and Disorderly Conduct), see Plaintiff's exhibits 1, 2, 4, and 6, that fifteen year-old Roger Coronado Jr. was suspended from Bolingbrook High School for one year (2 semesters) for: Posturing. We know from the Defendants' testimony and exhibits that this offense includes: [1] Mob Action (720 ILCS 5/25-1(a)(2); [2] Disorderly Conduct (720 ILCS 5/26-1); and [3] for allegedly being a member of a subversive group-Hate Group (School Code 41, see PF. Exh. 6). Defendant Alan Hampton (the previously unidentified Bolingbrook Policeman) joined by Defendants Prodehl (the District's hearing officer, a trained lawyer) and Gavin (one of the school security guards) took the stand on March 12, 2007 and not one of them could answer my question: *What did fifteen year-old Roger Coronado do that constituted "Posturing" and a "Mob Action" or that represents that he is a member of a subversive group/Hate Group/gang?* I asked the question of the Defendants and school principal so many times to no avail and the Court appropriately told me, more than once, that we had been over this and to move on.

There are two accusers of 15 year-old Roger. The most significant and the initiating accuser, Mr. Gavin, a 25-year-old male who states that he saw in a cafeteria at lunch time at a lunch table, Mexicans or Hispanics on one side of the cafeteria and blacks on the other (Gavin did NOT appropriately say Hispanic "People" or black People). Gavin conveyed and implied that he knew Roger was with the Mexicans. So, I asked Mr. Gavin: HOW DID YOU KNOW THAT HE WAS MEXICAN? HOW DID YOU KNOW THAT HE IS OF MEXICAN DESCENT? I believe that I asked him not once but twice. Mr. Gavin fell silent.

Clearly, on February 4, 2008, Mr. Gavin accused my client of a POSTURING, a Mob action ( a crime under Illinois law and an offense for which Roger received a ticket from Bolingbrook Policeman Alan Hampton) (see Plaintiff's Exh. 3, p.1., Gavin's signature). And, Mr. Gavin accused my client of being a member of a gang and that these

2

baseless accusations are in direct contravention to the US Supreme Court's holding in Chicago v. Morales, that holds that a law enforcement officer can't round up people he decides look like gang members or Mexicans, then charge them with a crime. After all, Roger is charged by the Valleyview School District and the Bolingbrook Police with **Posturing.** In this regard, it goes without saying that it is an abomination of the moral fiber of our nation, when a child is described, charged and expelled from high school for one year for (1) "Posturing"; (2) allegedly being a gang member; and (3) for a Mob Action, but not one of the Defendants could testify to what Roger DID and that Roger is charged with these offenses simply because there were other people seated at a lunch table with Roger (not even at their assigned lunch period and of no acquaintance to Roger) who share ethnicity and race with Roger. They came and sat down at Roger's table, that is what Roger testified.

      Officer Hampton, when asked his height and weight answered that he is 6'6 feet and 250 pounds. Judge Darrah described Roger Coronado as approximately 5'6 and 150 pounds. Hampton, a grown man in a Bolingbrook Police uniform, a gun at his side and vested authority to arrest Roger Coronado Jr., charged Roger with violations of Illinois law; however, never read Miranda Rights to the 15 year-old, braces wearing boy, never thought to have Roger's parents present as he (Hampton) ordered and threatened the scared and terrified boy to sign Gavin's statement of what happened and then to write a confession. The complaint/referral form by Gavin was signed by Roger under coercion and the confession written at the direction of Alan Hampton, both without parental presence or participation and without the basic FUNDAMENTAL protections of the United States Constitution---and then, the two documents were used against Roger Coronado at a Mid-Evil, Atavistic style expulsion hearing—and that this style hearing was convened and orchestrated by Attorney-Defendant Steven Prodehl.[1]

---

[1] Roger's grades were NOT considered by Mr. Prodehl. Mr. Gavin testified that Roger does not go to homeroom, yet he did not provide any evidence that Roger does not go to homeroom. Mr. Mitchum testified that Roger has been tardy to school 9 times since September 2007, yet Mr. Mitchum failed to provide any documentary evidence showing that his claim is truthful. Furthermore, Roger was expelled not because of his grades; alleged missed homerooms, or for allegedly being late for school. We know what the hearing examiner used in order to make the decision, he told us---he used PF Exhibit 3.

3

There should NOT be any circumstance in the United States of America in which a mere boy is ordered to write a confession without the <u>parents present</u>. I proffer to the Court that we can be even more realistic and consistent with our Constitution by holding that there should NOT be any circumstance in our Country in which anyone, especially not a 15-year old boy, is ordered to write a confession (see Plaintiff's Exhibit 3, page 2).

I say to the Court---- Roger was in police custody. Roger was not free to leave. Officer Hampton testified that he had Probable Cause as to Roger. Then, why wasn't Roger provided with the safeguards to which he is entitled as a United States Citizen(?) Why did Bolingbrook Policeman Alan Hampton dispose with the United States Constitution when he interacted with Plaintiff and Michael Clinton? The confessions (Referral/Complaint and written confession) from Roger, obtained by Hampton, were obtained illegally. The confessions are inadmissible. (In fact, the referral form/Complaint by Gavin should not be treated as a confession, see PF. Exh. 3, p.1). The written confession and referral form/Complaint by Gavin should not have been used at the expulsion hearing. Mr. Prodehl admitted that he obtained the signatures of the parents on the confession, 12 days later, not on February 7, 2008 when it was written. The parents admitted that because they do not read English well, they could not read what they were signing. They testified that they thought it was a "sign-in sheet." Defendant Prodehl took the confession from them and then he wrote above their names: *"I have seen this statement."(PF. Exh. 3).* Mr. And Mrs. Coronado did not write those words—Mr. Prodehl wrote those words. Mr. Prodehl was under oath when he admitted before this Court that he wrote those words. He wrote those words after Mr. and Mrs. Coronado signed their names to what Mr. Prodehl presented as a sign-in sheet.

Officer Hampton's unthruthfulness deserves accountability. He told this Court that he was holding Roger Coronado in the police station and that he (Hampton) was in possession of paperwork—the documents marked as Plaintiff's Exhibit 3. He told the Court under penalty of Perjury that the written Confession had already been written (previous to his intervention). He stated to the Court that the student referral form/Officer Gavin's Complaint, had already been signed by Roger.

Notice in Defendant's Exhibit 4, that Roger left the school cafeteria on February 4. Although implied by Principal Mitchum (a person who admits that he was not an

4

eyewitness to anything and that he reviewed a video tape, however, Mr. Riordan did not bring it to court) that Roger is a gang member, dangerous and a distraction to a learning environment, Principal Mitchum allowed Roger to attend school on February 5, February 6, and February 7. I asked Principal Mitchum why? Principal Mitchum confidently responded (essentially), that Roger was not allowed to attend school—that 4th was on a Friday and he implied that his administration was handling the situation over the weekend. It was not until I informed him that the 4th was a Monday, that he quickly backtracked and still was unable to explain to this Court how a child believed to be so disruptive [by Mr. Mitchum] was allowed to attend school after lunch on February 4; all day on February 5; all day on February 6; and part of February 7, 2008.

      As the testimony of Roger, Mr. Mitchum and Officer Gavin reveal, Roger did not have contact with any school administrator or police officer until February 7, 2008 when he was taken from his first period class to the police station---THREE DAYS LATER. In this encounter, Mr. Hampton admits that he met Roger for the first time on February 7, 2008. Then how is it possible that Roger wrote a confession and signed a form PREVIOUSLY(see PF. Exh. 3) -- and that the documents are dated February 7, 2008 (and the confession mistakenly dated 1/7/08 verses 2/7/08) and that Defendant Hampton had the documents in his possession? [Roger was picked up from the police station by his father.] When was PREVIOUSLY? Remember, Officer Gavin said that he gave the Referral form (his statement) to Dean Dettman. (Dean Dettman should have been brought to Court for the March 12th hearing by Mr. Riordan). Dean Dettman has never even met Roger Coronado Jr. CLEARLY, Alan Hampton is lying when he says that he received the written confession. Why did Officer Hampton have it, if it was already written? If someone does not think that Alan Hampton is lying then, can that someone tell us how Alan Hampton received, in his HANDS, a written, signed confession (p.2 of PF. Exh. 3) and a referral-complaint [by Officer Gavin; p1. of PF. Exh. 3] previous to meeting with Roger Coronado? Alan Hampton is attempting to obstruct justice. He did not receive a PREVIUOSLY written confession and a signed referral form/complaint [signed] by a 15 year-old, braces wearing since the boy had NO contact whatsoever with any school officer or administrator in possession of the forms.

5

## NUMBERED PARAGRAPH SECTION

*(1)* Colquitt v. Rich Township High School District, 1998 WL 476734 (Ill. App. 1st Dist. 1998); Goss v. Lopez, 419 U.S. 566 (1975) and 105 ILCS 5/10-22.6 holds that a 15 year-old, braces wearing Mexican-American boy that we know as Roger Coronado is entitled to confront his accusers. He is entitled to cross-examine them. The Colquitt decision clearly shows that Roger Coronado had these rights and was deprived of these rights.[2] Furthermore, 105 ILCS 5/10-22.6(a) reads in part: *"To expel pupils guilty of gross disobedience or misconduct, and no action shall lie against them for such expulsion. Expulsion shall take place only after the parents have been requested to appear at a meeting of the board, or with a hearing officer appointed by it, to discuss their child's behavior."*

(2) Mr. and Mrs. Coronado could not discuss their child's behavior because Defendant Prodehl, a trained lawyer, denied them an interpreter. Mr. and Mrs. Coronado testified through an interpreter on March 12, 2008 before Judge Darrah, that they do not have sufficient command of the English language to discuss something as serious and dramatic as their child's academic future and that they certainly did not have the legal expertise to represent their son at a an expulsion hearing and to insure that their 15 year-old child was afforded Due Process.[3]

(3) The Colquitt Court held that "the absence of a court reporter, in and of itself, is neither a denial of due process nor a denial of equal protection; there is no requirement to provide a stenographer's transcript in every case as long as there is some other means to allow for adequate and effective review." The issue in Roger's case is that there is nothing, not even a notepad.

---

[2] As long as a property interest is not de minimis, due process, in some form, must be accorded. Goss, 419 U.S. at 575-76.

[3] "The immutable minimum requisites of due process, however, are notice and a meaningful opportunity to be heard. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985); Goldberg v. Kelly, 397 U.S. 254, 267-68, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970)

(4)     Regarding the haphazard hearing to which Roger Coronado was prosecuted by Mr. Prodehl, there was not –and-- is not a "MEANS" that is adequate and that allows for an effective review of the February 19, 2008 hearing. On March 12th, before Judge Darrah, Mr. Prodehl testified that a record of the hearing does not exist (his notes are not a record)--- that no Transcript exists.  Mr. Prodehl testified that a transcript was not necessary.  The Plaintiff, Counsel, and Parents disagree. I say to the Court that the absence of a hearing record is in contravention to the holding in Colquitt and runs counter to the Court's holding in Goss v. Lopez (although the Goss Court does not address whether a Transcript is needed).  Additionally, for any process with consequences as serious as expulsion from school for one year, a reasonable hearing officer would maintain a record of the hearing (at a minimum, a tape recorder is running).[4]

(5)     In Colquitt, Lemont was not given the opportunity to cross-examine all witnesses against him. The Court wrote:  *"Although three independent witnesses were present to observe portions of the behavior and the language of Lemont, none of those witnesses were present at the inception of the confrontation. In fact, the only accusing witnesses against Lemont who allegedly observed the entire incident were not even present at the hearing. Here, the outcome of the hearing was directly dependent on the credibility of witnesses whose statements were received by the hearing officer; yet, these statements were conflicting. In such an instance, the opportunity for cross-examination is imperative."*

(6)     The Colquitt Court continued: *"Coupled with the fact that an expulsion hearing is not subject to all the common-law rules of evidence and procedure, the Board asserts that admission of hearsay, therefore, is not a denial of procedural due process where school officials are qualified to test students' credibility. We disagree, for in this instance,*

---

[4] "The United States Supreme Court has held that "[HN6] the extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss[]'." Goldberg [***15] v. Kelly, 397 U.S. at 262-63, quoting Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 95 L. Ed. 817, 71 S. Ct. 624 (1951)."
"The procedural safeguards required by due process in a particular case vary, depending on (1) the significance of the private interest which will be affected, (2) the risk of the erroneous deprivation of that interest through the procedures used, and (3) the significance of fiscal and administrative burdens that the additional or substitute procedural safeguards would entail."

*the admission of hearsay accusatory statements which also are bolstered by a school official's testimony that the proponent is "reliable," as occurred with Assistant Principal Martin's testimony, is a particularly egregious departure from the adversarial standard."*

(7)     Security officer Gavin testified that he was not at the expulsion hearing. Defendant Officer Hampton testified that he never interviewed Gavin. Defendant Prodehl testified that he did not interview Gavin or Hampton.  It goes without saying that "Egregious" best describes the situation and Egregious best describes Hearing Officer Prodehl convening a hearing on the basis of the non-verified referral form\statement by Gavin (see PF. Exh. 3, page 1 of 2) and a coerced confession coerced by Hampton and that the Coronado parents were never notified that their son was being ordered to write a confession.  The signatures of the Coronado parents on the confession was obtained 12 days later and that Mr. Riordan in his written Response to my motion for this hearing (March 12) attempted to dupe the Court along with Officer Hampton and Mr. Prodehl into believing that the confession was written at the expulsion hearing (see PF's Exh. 1 in which Mr. Prodehl describes the confession as having been written at the expulsion hearing).  On March 12, I asked Mr. Prodehl if the confession was written at hearing, he answered "NO."  Why the inconsistency between his written report and his in-court testimony(?)

(8)     Obviously, Mr. Riordan and Mr. Prodehl abandoned their plan to fool the Court. More important, we know that Officer Hampton is lying when he says that the boy did not write the confession in his presence. Well then—when else could the boy have accessed school district documents and wrote his own confession(?)---the idea that a mere boy would sneak into a supply closet and make off with a school confession form and then fill it out is preposterous.

(9)     Quoting the Colquitt Court:  "[a] basic tenet of our jurisprudence is that a person should receive a fair and impartial hearing, with an opportunity to offer evidence and cross-examine witnesses." Golden Egg Club, Inc. v. Illinois Liquor Control Commission, 124 Ill. App. 2d 241, 244, 260 N.E.2d 329 (1970); Gigger v. Board of Fire & Police

8

Commissioners, 23 Ill. App. 2d 433, 438-39, 163 N.E.2d 541 (1959). Fundamental concepts of a fair hearing include "the opportunity to be heard, the right to cross-examine adverse witnesses and to impartiality in rulings upon evidence." Mahonie v. Edgar, 131 Ill. App. 3d 175, 179, 476 N.E.2d 474, 87 Ill. Dec. 13 (1985).

(10)    Defendants Gavin and Hampton accused 15 year-old Roger Coronado of a MOB Action and "Posturing." Accuser Hampton went the extra step on February 7, 2008 and issued Roger a monetary fine for Disorderly Conduct (720 ILCS 5/26-1)and for having violated section 25-1(a)(2) of the Criminal Code of 1961, a subsection of the mob action statute prohibiting "[t]he assembly of 2 or more persons to do an unlawful act." 720 ILCS 5/25-1(a)(2), yet Officer Hampton and Officer Gavin failed to show at Roger Coronado's hearing!  And this very significant fact represents that Roger was deprived of Due Process[5] (specifically the right to confront his accusers and to cross examine his accusers) under the Fourteenth Amendment to the United States Constitution as well as per the holding in Colquitt v. Rich Township.

(11)    Roger Coronado Jr. is a boy, he is not a lawyer.  His parents are not lawyers. His parents are originally from Mexico. They do not speak fluent English and certainly do not write or read English except for common phrases necessary for social navigation in an English speaking country.  Like many people who do not speak English and migrate to the US, Mr. and Mrs. Coronado speak ONLY conversational English--- That is it—that is why they testified through an interpreter on March 12, 2008 that on February 19, 2008 they arrived at the hearing and asked Defendant Steven Prodehl to provide them an interpreter. Prodehl responded, *"You speak English well enough, you don't need an interpreter."*  Since Mr. Prodehl did not keep a transcript of the hearing, the situation becomes "He said, she said" yet another circumstance reminiscent of the Ryan Harris

---

[5] A student's entitlement to a public education is a property interest which is protected by due process guarantees; therefore, it may not be taken away without adherence to minimal procedural safeguards. Stratton v. Wenona Community Unit District No. 1, 133 Ill. 2d 413, 432, 551 N.E.2d 640, 141 Ill. Dec. 453 (1990).

case in which two children gave confessions without their parents present.[6]
.

(12)   The fact that in Roger's case, a transcript or equivalent was not kept is enough reason and basis for Court to hold that Due Process was not afforded to Roger Coronado.

(13)   Even more telling is that Mr. Riordan, counsel for the Valley View School District and Mr. Prodehl, knew on March 10, 2008 that Judge Darrah would convene a hearing on March 12 at 1:00PM.  Common sense dictates that Mr. Riordan should make Mr. Lathrop, the person with whom Mr. Prodehl conducted the hearing, available. Yet, Mr. Riordan showed to Judge Darrah's court without Mr. Lathrop.  Certainly, my clients and his parent want to know Mr. Lathrop's version of events.

(14)   The issue of injunctive of relief/temporary restraining order (or, if in the Illinois State Court, a matter before the Court through a Writ of Certiorari) relates only to the need for a decision from the Court without delay as to the manner in which the hearing was conducted (Due Process issues), in order that Roger can return to school.

(15)   Defendant's confuse and confound the Plaintiffs' motion.  Due Process is a "variable" in this instance.  This Variable was presented for review by this Court. It was presented under the umbrella of  injunctive relief/temporary restraining order. The relief sought by the Plaintiff is NOT related to the suitability of Premier Academy as a placement for Roger.

---

[6] Judge announces settlement in Ryan Harris case lawsuit, Monday, September 19, 2005 | 5:44 PM    Final price tag tops $11 million

  By Charles Thomas
September 19, 2005 (WLS) -- A $6.2 million settlement was reached Monday in a lawsuit filed by the family of a boy once accused of killing 11-year-old Ryan Harris. The girl's body was found back in 1998. The lawsuit claimed wrongful arrest. The boy was 8 years old when he was taken into custody.
    The boy is now 15 years old. The settlement was announced Monday afternoon after eight weeks of testimony.
    Both sides were preparing for closing arguments when word arrived at the courtroom that City Hall had settled the case. Over seven years after the arrests of what were described then as "the youngest murder suspects in history," the City of Chicago has agreed to pay up and end one of the most embarrassing episodes in police department history.
    At 12:40 Monday afternoon Judge Randye Kogan told the jury their services were no longer needed. Against the advice of one of the child's lawyers, the 15-year-old plaintiff's mother and father decided to take the $6.2 million offered by the city.
http://abclocal.go.com/wls/story?section=local&id=3457337

(16)     The hearing of March 12th properly occurred as a response to a pressing matter (that Roger was expelled without Due Process) that if not reviewed immediately and rectified, there could be irreparable harm.

(17)     I certainly did not intend for my Motion to cause a FRCP Rule 65 analysis of the suitability of Premier Academy.

(18)     The hearing of March 12th was for the purpose of determining whether or not the Valley View School District through Mr. Prodehl, Mr. Gavin, and Mr. Hampton acted arbitrarily and capriciously in an expulsion process.

(19)     A FRCP 65 analysis as to placement at Premier Academy, a school created disruptive and violent students (see PF. Exh. 11) is for another day and hearing.

## CONCLUSION

Once again, I asked Security Officer Gavin—myself, a decorated United States Marine and Iraq War veteran----how he knew my client to be of Mexican descent—after all, Mr. Gavin, a person who claims to be a Marine reservist--testified that he saw Mexicans\Hispanics and that my client was one of those Mexicans. When I asked him what my client said or did, Gavin told the Court, he could not be sure because of so many people behaving in a similar way. I pressed Gavin for words and a demonstration of the alleged Gang signs. The witness provided nothing.

My client, a Mexican-American, was eating lunch at his assigned lunch period. He exercised his US Constitutional right to move from a sitting to a standing position on February 4, 2008; and such bodily movement <u>absolutely</u>, did Not warrant his being charged by the School District and Gavin for "Posturing" (and that the Defendants were asked repeatedly in Court by me, what Posturing did and that no one answered the question[7]); and Policeman Hampton did not have a legal right to charge Roger with Disorderly Conduct and Mob action (and he did not confer Miranda rights); and that the School District did not have a legal right to charge Roger with a violation of Code 41: member of a subversive organization/hate group… (see PF. Exh. 6).

There was no evidence presented by the Defendants that Roger Coronado has EVER been a member of a hate group, gang, or subversive organization (as defined by

---

[7]And that this Court should hold that "Posturing" as defined by Valley View School District runs counter to the Supreme Court's decision in Chicago v. Morales, hence the School's policy against Posturing, whatever it is—is illegal.

11

the Valley View School District, see PF Exhibits 3, 5, and 6). The Defendants were asked by me to tell the Court the name of the Hate Group to which Roger is a member—I could not get an answer.

There was no evidence presented by the Defendants that Roger Coronado is friends with any of the boys described by Mr. Gavin as Mexican-Hispanic boys at Roger's lunch table, at Roger's assigned lunch hour. Remember, Mr. Gavin admitted before this Court that Roger was at his assigned lunch and that the other Hispanic and Mexican Americans were not at their assigned lunch). Furthermore, testimony by Defendant Gavin that he has a "Frequent Flyer List" and that students do not know if they are on it, certainly gives Mexican-American community and fraternal organizations a reason to probe as to the cultural appropriateness and Constitutionality of Mr. Gavin's "Frequent Flyer list."

Roger testified that his first ever contact with a police officer was with the out-of-control, volatile Officer Hampton who Roger described for this Court as shouting at Michael Clinton, saying "SIGN IT, YOU THINK YOU'RE TOUGHER THAN ME!" and when the child refused, Hampton became outraged, grabbed a large door and swung it into the chair in which Michael Clinton was sitting causing fear to envelop the room and Roger Coronado. Within seconds, Hampton returned to his next child victim, Roger, and ordered him to write the confession. The former Cook County corrections officer now a Bolingbrook Policeman admitted under oath that he is 6'6, 250 pound man. On February 7, 2008, as he held two boys, he was draped in police attire and equipment and his body enveloped the 5'5-5'6, 150 pound, braces wearing Roger (who Dr. Cappetta testified has a severe learning disability) and shouted and ordered: "Don't act Stupid!….write!" and ordered him to write.

More about "Posturing"—the main offense and umbrella offense Roger allegedly committed. The U.S. Supreme Court struck down a Chicago anti-loitering law that allowed police to arrest persons who look like gang members and loiter on city streets Chicago v. Morales, No. 97-1121 (1999). Officer Gavin rounded-up Mexican boys. Roger Coronado was one of them. Gavin's testimony is consistent with my characterization of what Gavin did—after all, he said Roger is Mexican, Roger is Hispanic. I said to him: "How did you know that?"

12

Roger is charged by Gavin with "Posturing." I asked Gavin, Principal Mitchum, Mr. Prodehl and Officer Hampton: Describe what he did—Use your body and your hands whatever you need, show the Court what Roger Coronado Jr. did! Not one Defendant could show the Court how the 15 year-old boy Postured in such a way that there was Probable Cause (had by Officer Hampton) to charge Roger Coronado with Disorderly Conduct and Mob Action under Illinois statutes. More important, I ask this Court: "When Roger was with Officer Hampton, What happened to Roger's 5th Amendment rights, why couldn't Roger talk with a lawyer, how about talk with his parents(?)" Remember, Roger testified that when he tried to talk with his father in Hampton's presence, Hampton ordered him *"Don't tell what you want to tell him, tell him what I tell you!"*

Roger's father testified that he asked to speak with a Dean or administrator, the out-of-control Hampton refused. Roger adds that at the March 12th hearing, Hampton was sneering, directly, at Roger from where he sat in a pew with his lawyer. The boy described fear even of the sneering Hampton in Judge Darrah's courtroom.

The officer lied to the Court and denied that he spoke with both Mr. and Mrs. Coronado. Only near the end of the hearing did Mr. Riordan recall Defendant Hampton and asked him about the phone conversations---only after Roger, his father and his mother had testified about them. In response to questions from Judge Darrah and Mr. Riordan, Hampton claims that he can't remember. Unbelievable, Literally.

WHEREFORE, Roger asks that this Court revoke the decision by the School Board and Mr. Prodehl, in order that this Court protects the Due Process, First Amendment and 5th Amendment rights of Roger and all other 15 year-old Mexican boys in the Seventh Circuit. In addition, parents of 15 year-old Mexican-American boys who cannot speak English are entitled to interpreters and to be present when their child is forced to write confessions, otherwise the United States and Illinois conferred legal rights held by Roger and other Mexican American boys are flouted.

RESPECTFULLY SUBMITTED,
s\Christopher C. Cooper, ESQ, JD, PHD,   13 March 2008
Counsel for Plaintiff
3700 West 103rd St. Chicago, IL 60655 or PO Box 1225, Hammond, IN 46325
Tel: 312 371 6752,  219 228 4396 or 773 298 3555
FAX: 866 334 7458  E-mail: cooperlaw3234@gmail.com

CERTIFICATE OF SERVICE

Undersigned attorney swears that he filed the foregoing through ECF on March 13, 2008 and that all Defendants are registered E-filers.

s\Christopher Cooper,