28 93 61 00 8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER CORONADO, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08 C 1254 |
| VALLEY VIEW PUBLIC SCHOOL DISTRICT, 365-U, et al., | ) Judge Darrah ) ) |
| Defendants. | ) |

### DEFENDANTS' CLOSING ARGUMENT IN RESPONSE TO PLAINTIFF'S CLOSING ARGUMENT

NOW COME Defendants VALLEY VIEW PUBLIC SCHOOL DISTRICT, 365-U (hereinafter "the District"), DAN LAVERTY and TIMOTHY GAVIN, by and through their attorneys, BRIAN J. RIORDAN and CLAUSEN MILLER P.C., and provides this Court with its Summary Closing Argument.

### INTRODUCTION

During this evidentiary hearing the burden lays with the plaintiff to show that the District's decision to expel him from school was made in an arbitrary and capricious manner. *Dunn v. Fairfield Comm.*, 158 F.3d 962 (7th Cir. 1998). That burden has been further defined by the courts as a situation where a school district has made a decision that "shocks the conscience." *Tun v. Whittaker*, 398 F.3d 899, 902 (7th Cir. 2005). It is also important to recognize that the Seventh Circuit Court of Appeals recently noted that the Supreme Court has repeatedly emphasized the need for **"*affirming the comprehensive authority of the states and of school***

1174204.1

*officials consistent with fundamental constitutional safeguards, to prescribe and control the conduct in schools."* Boucher v. School Bd. of School Dist. of Greenfield, 134 F.3d 821, 827 (7th Cir. 1998) (quoting *Tinner v. Des Moines Indep. Community School Dist.*, 303 U.S. 503, 507, 89 S.Ct. 733 (1969). (Emphasis added) Plaintiff's burden is also to establish that the punishment imposed by the District is a "substantive break from the norm" in terms of their usual and customary discipline for like actions. *See, Dunn.*

Plaintiff's efforts in this regard have simply failed to meet any of those burdens.

## ARGUMENT

In this case, Plaintiff was clearly seen in the cafeteria on February 4, 2008 getting up from his table and join in and stand behind a group of individuals who were screaming obscenities, flashing gang signs, and in the process of starting a large scale fight in the cafeteria which holds more than 750 students. This Court heard testimony from Timothy Gavin that this cafeteria is a large open room with many tables and has only three security officers on site at any given time. Timothy Gavin has been working in the school for several years, is familiar with Roger Coronado and made no mistake during his testimony that Roger Coronado participated fully in the mob action, lent his support, screamed obscenities and would not disperse or back down when specifically instructed to do so by the security officers.

Following this incident, a report was written up by Timothy Gavin which was signed by Roger Coronado. (Gavin's Report, Exhibit A) Subsequent to that, Roger Coronado wrote out his explanation of the events fully admitting to his participation therein. (Roger Coronado's voluntary statement, Exhibit B)

Next, the District, pursuant to Illinois Code and in following with all due process rights afforded to a student, notified Roger Coronado's parents of the charges against him pursuant to correspondence dated February 7, 2008 from Asst. Principal Dan Laverty. (Exhibit C) In

2

addition, plaintiff's parents were again informed of the charges against him as well as the time, place and location for an administrative hearing regarding the disciplinary action recommended for their son. (See Exhibit D, letter from Hearing Officer Prodehl)

Plaintiff and his parents showed up at the correct time and correct location and the correct date for the hearing. Plaintiff once again fully admitted to the actions that he participated in on February 4, 2008 to Hearing Officer Steven Prodehl. Contrary to plaintiff's parents' assertions at the evidentiary hearing, they were fully able to engage in conversations with and understand all of the proceedings that were taking place at the hearing. Each of them was able to recite several key aspects of what took place at the hearing even though there was no interpreter present at the hearing on February 19, 2008. (See Exhibit E, Hearing Officer Prodehl's Report) The Court must also cast a discerning eye on the plaintiff's claims of not being able to understand written or spoken English when on a majority of occasions at the evidentiary hearing both Mr. and Mrs. Coronado were answering questions prior to the interpreter having the chance to interpret the question either from plaintiff or defense counsel.

In addition, plaintiff Roger Coronado speaks both English and by their own admission Spanish (up to 80% fluency). According to Prodehl, at no time during the Disciplinary Hearing does he ever deny his actions from February 4, 2008. The School District did present a complaining witness that Mr. Coronado and his parents could have "cross examined" in the form of Dean Rob Lathrope. At no time did Roger Coronado indicate that the statement he had written out and signed on February 7, 2008 was coerced. At no time did he indicate to Dean Lathrope at the administrative disciplinary hearing that the allegations against him were false. He certainly is able to speak English and Spanish and could have relayed that information to the hearing officer, his parents and Dean Lathrope. Plaintiff and his parents' testimony in this regard

at the evidentiary hearing is truly suspect when looking at all of the documentary evidence as well as other credible testimony.

**<u>Plaintiff's Unfounded "Conspiracy Theory" Must Be Rejected</u>**

To believe plaintiff's account of the events surrounding this incident, the Court would need to be persuaded that a conspiracy of the grandest scale was underfoot at Bolingbrook High School. This conspiracy would need to have included first Timothy Gavin specifically picking out Roger Coronado among the other 750 students in the cafeteria and make up his participation in the mob action just in attempts to falsely accuse and punish him. There is no basis or reason why he would do this. Next, the conspiracy would need to include the Bolingbrook Police Department and Officer Hampton. Some how Security Officer Timothy Gavin and Officer Hampton would have had to conspire to now reportedly coerce a confession out of Roger Coronado. Why would they do this? There is no basis or credible evidence that this occurred. They both denied this at the evidentiary hearing.

Next, included in the conspiracy would have to be the administrative staff at Bolingbrook High School including Asst. Principal Dan Laverty, Dean Lathrope and well-respected Principal James Mitchem. They would have to further this conspiracy against Roger Coronado by preceding to having a meeting to the Administrative Counsel and further make recommendations regarding his expulsion to the Superintendent and Board of Education. All in an effort just to punish Roger Coronado for some unknown reason. This is not logical nor based or supported by any of the evidence.

Finally, the conspiracy would have to stretch to a well-respected member of the Illinois Bar and the Hearing Officer Steven Prodehl. For this Court to believe the plaintiff's wild conspiracy theory, Steven Prodehl would have had to meet with and consult with all of the

aforementioned individuals from Bolingbrook High School and Bolingbrook Police Department and then a further conspiracy by allegedly not allowing the plaintiff an opportunity to be heard at the hearing. This does not make any sense. It is not supported by any of the actual evidence or credible testimony.

In weighing the credibility of the testimony of various witnesses, the Court is directed to case law on this issue. In *Scott v. Department of Commerce and Community Affairs*, 84 Ill. 2d 42, 416 N.E.2d 1082 (1981), the court stated that **"state administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances."** Scott, 84 Ill. 2d at 55, 416 N.E.2d 1082 quoting *United States v. Morgan*, 313 U.S. 409, 421 61 S.Ct. 999 (1941). (Emphasis added)

There is absolutely nothing in the record, nor has plaintiff cited any particular instance, to overcome a presumption of honesty and integrity on the part of Mr. Prodehl, Mr. Laverty, Mr. Mitchem and Mr. Gavin. Moreover, the detail of Mr. Prodehl's report, including a number of positive references from Roger and his parents clearly indicated that he was not conspiring against Roger. If Mr. and Mrs. Coronado truly could not comprehend or communicate at the hearing, where did all of Mr. Prodehl's references to the good son Roger has been; his aspirations to go to college; and his love of sports and so on. If Prodehl was really "out to get" Roger, why would he include any of the positives about Roger in his report?

Since the plaintiff and his parents clearly came to the hearing and had an opportunity to be heard and admitted all of the allegations against them, many of the alleged due process arguments now made by plaintiff are moot. Mr. Prodehl testified and showed in his report that he relied on many things at the hearing. He relied on the signed statement of Roger, the report by Mr. Gavin, the recommendations of the Administrative Counsel, the transcripts of Roger's

5

grades and attendance, and most significantly, on the actual testimony of Roger and his parents at the hearing.

Plaintiff was afforded his due process rights in this matter. He was witnessed to be involved in actions that violated the Bolingbrook Student Conduct Code. The charges against him were properly provided to him and his parents were notified. The hearing was scheduled and his parents and he attended and had every opportunity to present evidence and to combat the allegations against him. Plaintiff, on at least three occasions, fully admitted to the actions that he undertook. Even with all of the evidence, the plaintiff somehow testified before this Court that on each of those occasions either he was coerced into making the statement or the individual professionals both at the School, the Bolingbrook Police Department, and the Disciplinary Hearing Officer were just flat out lying about him.

We ask this Court to see the plaintiff's claims and his testimony for what it is, a total disregard for the truth.

**Plaintiff's Cited Case Law Misses the Point**

The majority of the cases cited by plaintiff are completely irrelevant and fail to address the points of this particular hearing and setting. Plaintiff cites numerous criminal law cases where the standards are very different in the school law setting. In addition, many of the cases cited by plaintiff seem to address the constitutionality of portions of the School Code. Plaintiff's motion and Complaint in this case do not appear to be alleging any violations of the constitutionality of the School Code.

There are dozens of Seventh Circuit decisions which reflect that the disciplinary hearing procedures in high school are very much different than those of criminal justice system. In the school setting, substantive due process is very limited in scope. Substantive and procedural due

process is the protection of an individual from government actions that are arbitrary and capricious. Substantive due process involves the exercise of governmental power that is reasonably justified and is most often described as an abuse of government power that "shocks the conscience". *Tun v. Whittaker*, 398 F.3d 899, 902 (7th Cir. 2005). The courts have further stated that to "shock the conscience," the conduct calculated to injure a party must be unjustifiable by any governmental interest.

In addition, the Seventh Circuit Court of Appeals held in *Linwood v. Board of Education, City of Peoria*, 463 F.3d 763 (7th Cir. 1972), held that the type of administrative hearing here involved may not take the form of a judicial or quasi judicial trial. Due process in the context here involved ***"is not to be equated . . . with that essential to a criminal trial or a juvenile court delinquency proceeding."*** (Emphasis added)

Clearly, the plaintiff and his counsel have misunderstood the duties, burdens and responsibilities required under the law.

Plaintiff's counsel repeatedly makes arguments citing *Colquitt v. Rich Township High School*, alleging that his client did not have the right to face and cross examine his accusers. The *Colquitt* court's decision regarding the right to face his accusers has been highly criticized in many subsequent rulings. Specifically, the court in *Wagner v. Fort Wayne Community School* 255 F. Supp. 2d 915 (N.D. Ind. 2003), on the issue of facing the accusers, found that the risk of erroneous deprivation of that interest through procedures that do not include confrontation to be very low. The court noted that the clear weight of authority holds that a student facing an expulsion hearing does not have the right to cross examine witness or even learn their identities. In that case, a middle school student who had been suspended for distributing caffeine pills at

7

school argued that she should have been allowed to know the identities of and cross examine the students who had given statements. The court specifically disagreed with the student.

In addition, in the matter of *BS v. BD of TRS*, 255 F. Supp. 2d 891 (N.D. Ind. 2003), a high school who had been suspended for engaging in sexual conduct at the school argued that he should have been allowed to cross examine his alleged partner and the accusing students. In both *BS* and *Wagner*, the court evaluated the factors of a private interest of the student being affected. In both *BS* and *Wagner,* the court found that the risk of deprivation of rights of the student by not forcing accusers to be present at the hearing to be very low and was not necessary under the circumstances.

Finally, the court in *Brown v. Plainfield Comm. Consolidated Dist. 202*, 500 F. Supp.2d 996 (2007), found that although the Seventh Circuit has yet to specifically decide whether there is a right to cross examine witnesses at a high school expulsion hearing, they find it unlikely the Seventh Circuit would recognize such a right in the circumstances at issue.

In *Brown*, the student was accused of inappropriate behavior in touching a teacher. The statements of witnesses were used at the hearing; however, the witnesses were not present. The court found that these statements could be used and that the accused student could examine the District personnel present at the hearing and the student could provide his own version of the events. In this regard, the case is almost identical to the one here, where Roger was given all the same rights.

In *Brown*, the court found that even assuming the three witnesses who were not present had been discredited, there was still sufficient evidence to uphold the expulsion. As in this case, had Timothy Gavin or Dan Laverty been present and cross-examined, the outcome would be the same based on Plaintiff's own admissions.

In this case, besides the fact that many courts believe that the right to cross examination is not required, there is really no issue on this point. In fact, the District did provide a witness for the plaintiff to cross examine in Dean Lathrope. The plaintiff chose not to do so. Additionally, in all the cases, including *Colquitt,* cited by the plaintiff, the requests were made by the plaintiff to have certain witnesses present at the hearing and either the School did not cooperate in producing them or they did not attend. In this case, the plaintiff did not request a single witness to be present. Most importantly, the plaintiff came to the hearing admitting the conduct and did not challenge any of the allegations against him. To now argue that he was not afforded a due process right to face witness when they asked for none, did not counter any of the allegations against him with witnesses or testimony, and did not even attempt to cross examine the witness there presenting the case on behalf of the District, completely fails to meet the burden required of the plaintiff.

Plaintiff's argument that he was unable to understand or his parents were unable to understand the proceedings take place at the disciplinary hearing are also completely without merit. There is not one reference to any objection or any countering evidence on behalf of Roger Coronado at the Disciplinary Hearing. He clearly can speak English and did not appear to make a single request that Dean Lathrope reconsider the charges against him or any attempt to have his parents have a meaningful discussion with Dean Lathrope or Hearing Officer Prodehl.

### Appropriate Punishment Was Rendered and Plaintiff Received Both Procedural and Substantive Due Process

In this case, considering the egregiousness of the conduct of Roger Coronado and the testimony of both James Mitchem and Timothy Gavin as to the serious nature and consequences that occur when others jump in and lend support to and escalate a mob action, a less than two

semester expulsion is completely within the discretion of the School District. This decision was clearly not an abuse of discretion and does not in any way "shock the conscience".

They both provided testimony as to the serious nature of additional students "joining in", "lending support" and "escalating the confrontation". The scenario can be related to the rules in most supporting events such as basketball and hockey where there are severe and lengthy fines and suspensions or any player who joins in an altercation, who leaves the bench area to support a fighting teammate and does not disperse immediately when told to by reference or umpire.

Plaintiff provided virtually no evidence attacking the length of the punishment imposed by the District. Instead, plaintiff only argues that the events did not happen, everyone else is lying, he was forced into signing and drafting his version of the events. Clearly, plaintiff fails to meet his burden that this punishment "shocks the conscience."

You heard the testimony of Principal Mitchem indicate that 68 of the 69 expulsions at Bolingbrook High School over the recent past have all been for at least two semesters and the other remaining expulsion was for four semesters. A two semester expulsion is not overly broad or overly harsh under any circumstance specifically considering the actions and complete lack of accountability by Roger Coronado for his conduct.

This Court further heard testimony from Principal Mitchem that considering Roger Coronado's academic record, extremely poor attendance record as well as his propensity to be both late and miss classes throughout the day it would be in Roger Coronado's best interest to have immediately taken the advice to move over and gain credit at the Premier Academy in Joliet. With his current grade point average of .66 it was very unlikely that he was going to gain enough credits to move on to his next grade. However, if he continues with home schooling or attends the Premier Academy it is possible that he can gain credit that would applied to this

school year and thus have the opportunity to move on to the next grade in a timely fashion. This Court is well aware that it must take into consideration the best interest of the child in making its determination. With Roger Coronado's current status it would be in his best interest to uphold this expulsion and have him gain some much needed discipline and attention at the Premium Academy in attempts to resurrect his academic career.

## CONCLUSION

Plaintiff has not provided any testimony or documentary evidence which establishes that he was not afforded his due process procedural or substantive rights. Furthermore, they have not presented any evidence or testimony that in any way establishes that the Board decision for a less than two semester expulsion with the opportunity to attend Premium Academy and return to school after satisfactorily completing certain benchmarks was an abuse of discretion or in any shocked the conscience.

The documentary evidence as well as the testimony presented at the hearing overwhelmingly supports the fact that plaintiff was afforded every right due to him as well as supporting the decision of discipline made by the District. Therefore, the District requests that this Court fully uphold and confirm its decision regarding the discipline of Roger Coronado.

CLAUSEN MILLER P.C.

By:  /s/  Brian J. Riordan
BRIAN J. RIORDAN  (ARDC No. 6237969)
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
Telephone:  312-606-7805
Facsimile:  312-606-7777
briordan@clausen.com
Counsel for Defendants School District,
Laverty and Gavin

11

1174204.1