CGP/429087 6121-213

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROGER CORONADO, JR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 08 CV 1254 |
| VALLEY VIEW PUBLIC SCHOOL DIST., 365-U, | ) | |
| | ) | Judge St. Eve |
| UNIDENTIFIED BOLINGBROOK POLICEMAN, (Official and individual Capacity), | ) | |
| DON LAVERTY (Official and Individual Capacity), | ) | |
| T. GAVIN (Official and Individual Capacity), | ) | |
| STEVEN PRODEHL (Official and Individual Capacity), | ) | |
| | | |
| Defendants. | | |

**MEMORANDUM OF "UNIDENTIFIED BOLINGBROOK POLICEMAN"**
**IN HIS "INDIVIDUAL AND OFFICIAL CAPACITY"**
**IN SUPPORT OF PARTIAL MOTION FOR DISMISSAL**

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

## I. Introduction

On March 1, 2008, Roger Coronado, Jr, a 15-year-old minor, filed a six-count complaint against his school district, various school officials, and an "unidentified Village of Bolingbrook Policeman."[1] The Complaint, however, does not contain a proper "next friend" as Plaintiff and should be dismissed on those grounds. The minor Plaintiff complains that the School District allegedly improperly expelled him and violated his constitutional rights in the process of that expulsion. While unclear how Plaintiff thinks the "unidentified police officer" violated these rights (since obviously the police do not expel students), Plaintiff also filed a state law common law tort claim for assault against the "unidentified policeman."

As to the Unidentified Police Officer and the Village of Bolingbrook, Counts I-V must be dismissed regardless of the proper plaintiff issue. It is clear that the Complaint raises no recognizable First Amendment claim, or at least the officer would have had qualified immunity even if some how he violated that "right." Count II is a false imprisonment claim under § 1983, but that fails as a matter of law because the student was in school at the time, and there is no absolute "freedom of movement" about the school. Count III and IV concerning his expulsion fail because the officer had nothing to do with that process, and even if somehow he *could* have had some as yet undescribed involvement, there are no recognized constitutional rights that were violated. Count V is Title VI claim that cannot be made against an individual, so that fails against the officer and displaces Section 1983 in that regard anyway. Finally the Complaint vaguely claims "official capacity" claims (presumably as to all federal counts), but since the Complaint comes nowhere close to such type of *Monell* violation, those claims too must be dismissed. Counts I-V should be dismissed as to the Unidentified Officers in both his official and individual capacity

## II. Standard of Dismissal Under *Bell Atlantic*

Rule 8(a) of the *Federal Rules of Civil Procedure* requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough "'to give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). Rule 8(a) (2) requires a "showing," rather than a blanket assertion, of

[1] On March 31, 2008 Plaintiff filed a motion to amend the complaint to name Bolingbrook Officer Alan Hampton as the unidentified policeman. The motion did not contain a copy of the proposed complaint.

entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. *Id.* at n. 3.

The Seventh Circuit noted that in *Bell Atlantic*, the Supreme Court "retooled the federal pleading standards, retiring the oft-quoted *Conley* formulation that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007)(citing *Bell Atlantic, 127 S.Ct. at 1969*(*Conley*'s "famous observation has earned its retirement.")(in turn quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The Seventh Circuit explained in *Bell Atlantic* that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* (quoting *Bell Atlantic,* 127 S.Ct. at 1964-65). Instead, the Court held, the factual allegations in the complaint "must be enough to raise the right to relief above the speculative level." *Id.* (quoting *Bell Atlantic*, at 1965)(and quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir.2007)). *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663 (7th Cir.2007).

**III. Summary of Plaintiff's Complaint**

Plaintiff's Complaint is considered true for motion to dismiss purposes only. *Sneed v. Rybicki,* 146 F.3d 478, 480 (7th Cir.1998). Plaintiff states he is a 15 year-old boy (Complaint ¶ 1 pg. 5). Plaintiff states that on February 4, 2008, he was in the cafeteria at Bolingbrook High School (Complaint ¶ 4, pg. 3). He claim that when "gang members stood up from their chairs, so did he" (Complaint ¶6, pg. 3).

He claims three days latter he was summoned to a location in Bolingbrook High School and was "falsely imprisoned " by an "out of control Bolingbrook police officer and he allegedly coerced the Plaintiff to make a 'confession'" (Complaint ¶ 8, pg. 4). Plaintiff later attended a school expulsion hearing with his parents and was ultimately suspended from school for two semesters (Complaint ¶¶11-13, pg. 4). Plaintiff claims he was not give adequate due process in that he had no opportunity to "prepare, gather witnesses, or cross examine witnesses." Even though he was expelled from Bolingbrook High School, Plaintiff admits that he was still allowed to attend a state alternative school in Joliet, Illinois, but he claims he does not want to go to that

school (Complaint ¶ 15, pg. 4).

Plaintiff claims he was exercising his First Amendment right to "stand" when he stood up at the same time as the purported gang members, and thus should never have been expelled. (Complaint ¶ 19, pg. 4). Plaintiff claims that he is not a member of a gang, but when he "stood up" he was described as a gang member by the Defendants. (Complaint ¶¶ 20, 22, pg. 5)

## IV. Argument

### A. The Entire Complaint Must be Dismissed because Plaintiff is a Minor With No "Next Friend" Plaintiff and thus an Improper Plaintiff

Plaintiff's filing admits he is a 15-year-old minor and that his Complaint has no "next friend" as a proper plaintiff. He thus lacks standing and this court must dismiss the entire lawsuit as there is no jurisdiction to continue. In every federal case, the party bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Consistent with these principles, standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, see *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-562, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); and prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction," *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Capacity to sue (i.e. jurisprudential standing) is determined by reference to the law of the individual's domicile. Fed.R.Civ.P. 17(b). A minor in Illinois cannot bring suit in his own name. *Severs v. Country Mutual Life Insurance Co.,* 89 Ill.2d 515, 520, 61 Ill.Dec. 137, 139, 434 N.E.2d 290, 292 (1982). A parent may sue on behalf of his or her minor child as a "next friend" if the parent is represented by counsel and has no interests that conflict with those of the child. *See In re Chicago Rock I., & Pac., RR,* 788 F.2d 1280, 1282 (7th Cir.1986). This is not unique to either Seventh Circuit or Illinois law. *Gardner by Gardner v. Parson,* 874 F.2d 131, 137 n.10 (3d Cir.1989); (To maintain a suit in a federal court, a child or mental incompetent must be represented by a competent adult). See also 4 *Moore's Federal Practice* § 17.20[1], p. 17-87 (3d ed.1997).

Here, it is clear the only named Plaintiff in this action is 15 years old and has no next friend; there is thus no standing and thus this case cannot proceed as captioned so it must be dismissed.

**B. <u>The Alleged "Official Capacity" Claims must be Dismissed</u>**

While again Plaintiff's Complaint is rather vague, he does make some sort of representation in the caption that the claims are against the "Unidentified Bolingbrook Policemen" in both an "individual" and "official" capacity. Because under *Bell Atlantic,* the pleading falls woefully short for the "official capacity" claim, it must be dismissed.

As a prerequisite of a Section 1983 suit, a civil rights plaintiff must specify whether suit is brought against the defendant in his official capacity or in his individual capacity. This is not an insignificant distinction. *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). As characterized by the Supreme Court, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. * * * Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Whereas in an official capacity suit the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government because the real party in interest is the entity, an individual capacity suit focuses on the constitutional torts of an individual official. To establish *personal* liability in a Section 1983 action, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105.

However, that showing is not enough for an official capacity suit, where the action alleged to be under color must be linked with the entity's policy or custom. *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105; *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

The distinction between an individual and official capacity suit determines both the source and nature of the damages award. As the Supreme Court wrote in *Graham,* "it is clear that a suit against a government official in his or her personal capacity cannot lead to

imposition of fee liability upon the governmental entity. A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." *Hill*, 924 F.2d at 1373 (quoting *Graham,* 473 U.S. at 167-168, 105 S.Ct. at 3105-3107; *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1237 (7th Cir.1986).

Stated "Official-capacity" suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). And an official capacity suit is construed identically as a claim against the municipality itself. *Hafer v. Melo*, 502 U.S.C 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

As the Supreme Court stated in *Monell v. New York City Dept. of Social Servs.,* 436 U.S., 658, 689, 98 S.Ct., 2018, 2035 (1978), although municipalities and other local governmental bodies are "persons" within the meaning of § 1983 that could be subject to liability, the Court also recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.

It is not enough for plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Board of County Commissioners of Bryan Country, Ok.*, 520 U.S. 520, 117 S.Ct. 1382 (1997).

There is **nothing** in this complaint to give fair notice under *Bell Atlantic* for any *Monell* basis for liability. There is no policy or custom alleged or any claim of any such policy or custom was violated. Moreover, there is nothing to demonstrate that such policy or custom, even if there was one, was the "moving force" behind the alleged actions. This is a "one incident" type occurrence particularly unsuited for *Monell* treatment. All official capacity claims, which are really claims against the Village of Bolingbrook, must be dismissed with prejudice.

### C. There Is No Recognized First Amendment Right to "Stand" As Claimed by Plaintiff So Count I Must be Dismissed

Plaintiff claims a First Amendment right to "stand" in the cafeteria and according to the complaint he simply stood up when certain "gang members" did. (Complaint Count I, ¶ 4)[2]. Again while vague, it appears that Plaintiff believes that he should have suffered no repercussions for "standing." In any event, there is no such First Amendment "right" to stand in isolation. Thus this claim (assuming it is against the unidentified Bolingbrook Officer) must be dismissed.

Freedom of speech, while not absolute, is a paramount constitutional guarantee in our democracy. Although the First Amendment literally forbids the abridgement only of freedom of speech, its protection has long been recognized as reaching a wide variety of conduct that communicates an idea. *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2538, 105 L.Ed.2d 342 (1989). Governmental constraints on individuals' communication of ideas must be measured against substantial and compelling societal goals such as safety, decency, individual rights of other citizens, and the smooth functioning of government. *See, e.g., United States v. O'Brien,* 391 U.S. 367, 376-82, 88 S.Ct. 1673, 1678-82, 20 L.Ed.2d 672 (1968)

Public school students enjoy a degree of freedom of speech within the schoolhouse gates that is balanced against the added concern of the need to foster an educational atmosphere free from undue disruptions to appropriate discipline. *See Tinker v. Des Moines Indep. Community School Dist.,* 393 U.S. 503, 509, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969) (suspension of students who wore black arm bands to school to protest Vietnam War unconstitutionally restricted students' freedom of expression absent showing that conduct would materially and substantially interfere with requirements of appropriate discipline in operation of school or impinge on rights of other students).

However, the conduct still must be qualified as "speech" to be protected and not all conduct can be labeled speech deserving of any protection. *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). Not every defiant act by a high school student is constitutionally protected speech. Under *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), the flag burning case, a two part test must be met for non-verbal conduct to be "expressive conduct" and therefore speech protected under the First Amendment.

---

[2] Obviously a 12(b)(6) motion takes this as true. As a practical matter this is disputed.

First, the actor must intend to convey a particularized message, and, second, there must be a great likelihood that the message would be understood by those who observe the conduct as protected speech. *Id.* at 404, 109 S.Ct. at 2538.

In this case there is absolutely nothing in the Complaint that provides what was the message allegedly conveyed and how it would be observed to be a message concerning an idea. Plaintiff simply states in his Complaint that he got up from his seat. Plaintiff's Complaint is devoid of any allegations of what the "message" was or how it would be understood. There is thus insufficient notice or warning under *Bell Atlantic* to maintain this cause of action, so that the First Amendment claim as to the Bolingbrook Officer must be dismissed with prejudice.

D. **There is No Right to Absolute Movement for False Imprisonment under § 1983 in a School Setting, So Count II Must be Dismissed**

Plaintiff admits that he was in school on February 7, 2008 and that he was "summoned" to a location in the Bolingbrook school. He claims that he was thereafter "falsely imprisoned" in that location, presumably by the "unidentified police officer." (Complaint ¶ 11, pg. 6). Plaintiff's false imprisonment claim under § 1983 fails as a matter of law .

"False imprisonment is an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Meerbrey v. Marshall Field and Co.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1231 (Ill.1990). However, it is well established that "School personnel possess power over students, and school personnel are permitted a degree of supervision and control that cannot be exercised over free adults." *Bell v. Marseilles Elementary School,* No. 00-2553, 2001 WL 818897, at *5 n. 6 (Mar. 7, 2001)( *citing Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 655, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Thus, this claim fails as a matter of law.

This was the conclusion of Judge Murphy in a recent case in the Southern District of Illinois with facts similar to this case. In *Adams v. Cahokia School District,* 470 F. Supp.2d 897 (S.D. Ill. 2007), the student attempted to make a false arrest claim under Section 1983 because she was taken out of class by a school police resource officer and questioned about a claim she made that she was molested the pervious day. The court held in the context of a student in school being requested to come to the office, there was no false imprisonment as the student did not have right of complete mobility in the school. *Id.* at 914-915. Clearly, if a victim can be

detained in school for questioning and has no claim, certainly an alleged perpetrator can be detained while in school for questioning. Thus this claim fails as a matter of law.

**E. Count III and IV Must be Dismissed as there is no Causation, and Even if There Was Causation, there Were no Constitutional Violations of Plaintiff's Expulsion**

Counts 3 and 4 allege a violation of due process under the Federal Constitution and state law and the State Constitution. Plaintiff claims that "all Defendants engaged in actions to prevent Plaintiff from Due Process." (Count ¶¶ 3 , 4,15, pg. 7). Although not entirely clear, Plaintiff claims this lack of due process was because he had "no opportunity to prepare, gather witness, or confront accusers" (Complaint ¶ 12 pg. 4)). Plaintiff's claims as to the "unidentified Bolingbrook police officer" (assuming they are really made against him) fail as a matter of law.

**1. There is No "Personal Involvement" of the Officer In the Expulsion Or the Alleged Deprivation of Due Process**

In order to establish liability under 42 U.S.C. § 1983, a plaintiff must allege with clarity and prove by a preponderance of the evidence (1) that "the conduct complained of was committed by a person acting under color of state law, and (2) [that] this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

Thus to establish liability, however, the Plaintiff must also show that each Defendant "committed" the conduct of which she complains. The doctrine of *respondeat superior* does not apply; absent personal involvement in the alleged constitutional deprivation, no liability will attach. *Crowder v. Lash,* 687 F.2d 996 (7th Cir.1982)

In essence, this standard requires proof of causation, *i.e.* that the individual Defendant actually caused the Plaintiff's injury *through his own conduct* (or misconduct). In the Seventh Circuit, the causation element of § 1983 requires the plaintiff to establish that the deprivation of his constitutional rights would not have occurred " *but for* " the defendant's conduct. *Lossman v. Pekarske,* 707 F.2d 288, 291 (7th Cir.1983).

Here there is nothing in this Complaint alleging that the unidentified police officer "caused" the alleged failure of due process rights during Plaintiff's school expulsion hearing. Plaintiff does not allege that the officer testified or otherwise communicated anything to the hearing officer or otherwise forced the hearing officer not allow cross-examination or

presentation of witnesses (as Plaintiff claims he was not allowed to do) or was even at the hearing!!!

Although Plaintiff alleged the officer forced him to sign an alleged criminal "confession" (again for this purpose only, assuming that is true) that would still have nothing to do with the expulsion hearing concerning Plaintiff's claim that he was kicked out of school for "being in a gang," as he claims and not given a fair hearing. In a word, the Complaint is completely silent on causation of the expulsion as to the unidentified police officer. That is not surprising because School Administrators deal with expulsion from School, not Village Police. With a lack of a causation there can be no claim against the Unidentified Police Officer for Counts 3 and 4, so they must be dismissed.

2. **Even Assuming the Officer was "Somehow" Involved With the Expulsion, There is Still No Federal Due Process that was Violated**

Plaintiff alleges in his Complaint that he did receive a hearing that he attended with his parents (Complaint ¶ 12, pg. 4). So his complaint is that the hearing was presumably not "good enough." He complains that he allegedly did not have enough time to prepare, gather witnesses, or "confront his accusers. However, Plaintiff confuses the constitutional requirements in a criminal trial with a right to be heard invoked for a student facing expulsion. The two are completely different.

As a backdrop, "procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Children do, however, possess a property and liberty interest in attending public school. *Goss v. Lopez,* 419 U.S. 565, 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The state may not take away this right absent fundamentally fair procedures. *Id.* at 574, 95 S.Ct. 729. In *Goss,* the Supreme Court held that when a student risks being suspended for ten days or less, due process requires that the student be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his version." *Id.* at 581, 95 S.Ct. 729. The Court declined to adopt a rule that students have a right to secure counsel or cross-examine witnesses at suspension hearings, but left open the possibility that hearings involving more severe punishments "may require more formal procedures." *Id.* at 584, 95 S.Ct. 729.

In *Remer v. Burlington Area School Dist.*, 286 F.3d 1007 (7th Cir.2002), the Seventh Circuit upheld the four-year expulsion of a high school student and examined the due process procedures required at expulsion hearings. The Court held that a student facing an expulsion has a due process right to "notice of the charges against him, notice of the time of the hearing and a full opportunity to be heard." *Id.* at 1011-12. A student must be given a meaningful opportunity to be heard, but expulsion hearings need not "take the form of a judicial or quasi-judicial trial." *Id.* at 1010.

Here, it is clear from the Complaint that Plaintiff received notice of the charges against him; and showed up at the hearing with his parents. However, Plaintiff alleges that he was not given a fair hearing because he was not permitted to cross-examine the unnamed students who submitted witness statements.

The Seventh Circuit has not specifically decided whether there is a federal due process right to cross-examine witnesses at high school expulsion hearings. Numerous other courts have balanced the competing interests at stake and concluded that high school students do not possess a federal due process right to cross-examine witnesses at expulsion hearings. *See Newsome v. Batavia Local School Dist,* 842 F.3d 920 (6th Cir. 1988) (high school student threatened with expulsion based on statements of classmates did not have due process right to learn their identities); *B.S. ex rel. Schenider v. Bd. Of Sch. Trust, fort Wayne Comm. Sch,* 255 F.Supp.2d 891, 900 (N.D. Ind. 2003) (student did not have procedural due process right to obtain names and cross-examine student witnesses at expulsion hearing); *Caston v. Benton Pub. Schs.,* No. 00-215, 2002 WL 562638 (E.D. Ark. Apr. 11, 2002) (school did not violate student's due process rights by refusing to let him cross-examine adverse student witnesses at his expulsion hearing); *Witvoet v. Herscher Comm. Unit Sch. Dist. 2,* No. 97-2243, 1998 WL 1562916 (C.D. Ill. May 27, 1998) (student had no right under federal due process principles to confront or cross-examine his accuser at expulsion hearing); *L.Q.A. v. Eberhart,* 920 F. Supp. 1208, 1219 (M.D.Ala.1996) (no due process violation where school board considered written statements from student witnesses who were not subject to cross-examination at expulsion hearing), *aff'd,* 111 F.3d 897 (11th Cir.1997). Judge Castillo of this district recently came to this exact conclusion. *Brown v. Plainfield Comm. Cons. Dist.* 202, 522 F. Supp.2d 1068 (N.D. Ill. 2007).

### 3. Count IV fails as a matter of Law

Plaintiff claims a right to recover under 105 ILCS 5/10-22.6. Again, while the claim is vague, there is no right to relief as to the individuals in any event. For starters, alleging a violation of a state statute does not equate to a federal due process violation. In the words of the Seventh Circuit: "As we tirelessly but unavailingly remind counsel in this Court, a violation of state law ... is not a denial of due process, even if the state law confers a procedural right." *Osteen v. Henley* 13 F.3d 221, 225 (7th Cir 1993)

More importantly, if Plaintiff is proceeding against the individuals directly under the state statute (assuming but not admitting there even is a private right of action) there is explicitly no right against the individual, only against the school district itself. See 105 ILCS 5/10-22.6. "To expel pupils guilty of gross disobedience or misconduct, and *no action shall lie against them for such expulsion*."(emphasis added).

Likewise, any claim directly under Article X of the Illinois Constitution (again assuming, but not admitting, such right of relief and private action exists) Plaintiff's claim still comes up short. Article X merely indicates the people have a right to a "free" secondary education. Plaintiff specifically alleged he was allowed to continue his education at another institution (although he appears to not want to attend the institution). So he has pled himself out of court.

Moreover, in the unlikely event that Plaintiff claims some race protection under Article X, his claim is likewise deficient as "free" means money. *Aurora East Public School Dist. No. 131 v. Cronin,* 66 Ill.Dec. 85, 92 Ill.2d 313, 442 N.E.2d 511, 516 (1982) (In light of monetary sense of word "free" in this section providing free education through secondary level, legislature's delegation to Board of Education of duty to promulgate rules for establishing and maintaining free schools was intended to mean financially free schools and was not meant to encompass racial equality). Thus even if Count IV could possible be meant to include the Bolingbrook Police Officer it still must be dismissed with prejudice.

## F. Count V, the Title VI Claim Must be Dismissed as to the Unidentified Bolingbrook Police Officer and Village

Again Count V is incredibly unclear who Plaintiff is seeking redress against, however, since he seeks damages under this count against "all Defendants," it is assumed that includes

the police officer and the Village. But in any event, such a claim under Title VI cannot be made against individuals, and the Title VI claim is Plaintiff's only relief, not Section 1983.

42 U.S.C. § 1983 supplies a cause of action to a plaintiff when a person acting under the color of law deprives that plaintiff of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" However, "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In determining whether an act subsumes a section 1983 action, the court must determine whether Congress intended that act to supplant any remedy that would otherwise be available under section 1983. *Id.* at 21, 101 S.Ct. 2615. Such Congressional intent may be found directly in the statute creating the right or inferred when the statutory scheme is incompatible with individual enforcement under section 1983. *City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 125 S.Ct. 1453, 1458, 161 L.Ed.2d 316 (2005).

In the Seventh Circuit that answer is "yes" with respect to Title VI. See *Boulahanis v. Bd. of Regents,* 198 F.3d 633, 641 (7th Cir.1999)(proper means of asserting race discrimination claims in school setting was Title VI, thus precluding Section 1983 and 1985 claim). Thus, the only claim for race discrimination in a school setting is Title VI, not 1983.

Furthermore, a Title VI plaintiff can only seek recovery from the recipient of the federal funding. *Shotz v. City of Plantation,* 344 F.3d 1161, 1169-70 (11th Cir.2003). In other words, individuals may not be held liable under Title VI. *Id.* Thus, there can be no claim against the unidentified Police man.

**G. There Can Be No § 1985 claims**

Again Plaintiff's Complaint is incredibly vague on this point, but even if somehow one could assume a 42 U.S.C. 1985 and/or 1986 [3] claim was pled, it still fails as a matter of law. 42 U.S.C. 1985(3) states

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the

[3] Section 1986 is liability for failure to prevent a conspiracy under 1985.

conspirators.

Notwithstanding the conspiracy language, the courts have held that there is no claim under Section 1985 for conspiracy in general because it is clear those claims require "class based invidiously discriminatory animus" as a conspiracy. *Munson v. Friske*, 754 F.2d 683, 695 (7th Cir. 1985). But any such class based discrimination under § 1985 is displaced by Title VI as referenced above (and cannot be made against individuals). *Boulahanis*, 198 F.3d at 640-41. Thus, to the extent any claims are meant to be pled under § 1985, those must also fail.

**H. In the Alternative, the Unidentified Officer is Protected by Qualified <u>Immunity</u>**

Even if there was some question of the merits, of the claims, the unidentified officer is still protected under qualified immunity. Under the well-known qualified immunity defense, "government officials performing discretionary functions, are shielded from liability for civil damages insofar as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In ruling on an issue of qualified immunity, the United States Supreme Court outlines a two-step process. The first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation could be established, the question is whether the right was so clearly established in light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001);

The privilege is an immunity from suit rather than a mere defense to liability, and is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In light of that the Supreme Court has stressed "the importance of resolving immunity questions art the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

The burden of persuasion is on the <u>plaintiff</u> to prove (not for the defendant to disprove) the existence of a clearly established right. *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A plaintiff can meet this burden only by citing "closely analogous cases" decided prior to the defendants challenged actions which clearly and consistently recognize the right forming the basis of the cause of action. *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991). In determining whether a right is clearly established, the Supreme Court has admonished that "[t]he contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, in examining whether the official is entitled to qualified immunity, the court must determine "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir.1987).

The Supreme Court decision in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) requires a *higher level* of specificity of whether a right is "clearly established." More specifically, *Anderson* stated.

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow.
>
> * * *
>
> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularizes, and hence more relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Anderson v. Creighton*, 483 U.S. 635, 639-640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A plaintiff can meet this burden only by citing "closely analogous cases" decided prior to the defendants challenged actions which clearly and consistently recognize the right forming the basis of the cause of action. *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991).

In this case, there is no case on closely analogous facts giving First Amendment protection to simply "stand" as claimed by Plaintiff (Count I). Likewise, there is no case law demonstrating that detaining a student while in school in another room in the school is "false imprisonment (Count II). The cases, if anything, are contra. Moreover, there is no clearly established law (even assuming causation as referenced above) that Plaintiff had a right to cross examine his accusers as claimed at the school expulsion hearing (Count III). The law set forth above establishes the opposite. The clearly established law does not require a strict judicial

forum for school expulsion hearings. In sum, and in the alternative, qualified immunity is proper for Counts I, II, and III.

**V. Conclusion**

Counts I-V must be dismissed with prejudice as to the Unidentified Police Officer and the Village of Bolingbrook.

Respectfully submitted

By: s/Craig G. Penrose
One of His Attorneys

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, IL 60606
(312) 627-4000
(312) 627-1717 (facsimile)
cpenrose@tsmp.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 2, 2008, a copy of the foregoing document was served upon the counsel of record listed by:

- Electronically filing via court ECF system:

| **Counsel for Plaintiff** | **Counsel for Valleyview School District, Don Laverty, T. Gavin, and Steven Prodehl** |
|---|---|
| Christopher Cooper<br>P.O. Box 1225<br>Hammond, In 46325<br>(317) 536-3197<br>(708) 425-8197 (facsimile<br>cooper@sxu.edu | Brian Riordan<br>Clausen Miller<br>10 South LaSalle Street<br>Chicago, Il 60603-1098<br>(312) 855-1010<br>(312) 606-7777<br>briordan@clausen.com |

s/Craig G. Penrose
Craig G. Penrose

Craig Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, Illinois 60606-6308
(312) 627-4000