CGP/430818

6121-213

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER CORONADO, JR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 08 CV 1254 |
| VALLEY VIEW PUBLIC SCHOOL DIST., 365-U, | ) |
| | ) Judge St. Eve |
| ALAN HAMPTION, BOLINGBROOK POLICEMAN, (Official and individual Capacity), | ) |
| DON LAVERTY (Official and Individual Capacity), | ) |
| T. GAVIN (Official and Individual Capacity), | ) |
| STEVEN PRODEHL (Official and Individual Capacity), | ) |
| | |
| Defendants. | |

**MEMORANDUM OF DEFENDANT ALAN HAMPTON
IN HIS "INDIVIDUAL AND OFFICIAL CAPACITY"
IN SUPPORT OF PARTIAL DISMISSAL
OF PLAINTIFF'S AMENDED COMPLAINT**

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

**ATTORNEY FOR DEFENDANT ALAN HAMPTON**

I.  **Introduction**

On March 1, 2008, Roger Coronado, Jr, a 15-year-old minor, filed a six-count complaint against his school district, various school officials, and an "unidentified Village of Bolingbrook Policeman." On April 6, 2008, Plaintiff filed an Amended Complaint naming Defendant Alan Hampton as the police officer and adding nine additional counts against the various defendants. The Amended Complaint, however, does not contain a proper "next friend" as Plaintiff and should be dismissed on those grounds.

Even ignoring that flaw, all counts but Count 8 must be dismissed. It is clear that the Complaint raises no recognizable First Amendment claim, or at least the officer would have had qualified immunity even if some how he violated that "right" under Count I. Count II is a false imprisonment claim under § 1983, but that fails as a matter of law because the student was in school at the time, and there is no absolute "freedom of movement" about the school. Count III and IV concerning his expulsion fail because the officer had nothing to do with that process, and even if somehow he *could* have had some involvement, there are no recognized constitutional rights that were violated and that fact has already been decided in this case.

Count V is Title VI claim that cannot be made against an individual, so that fails against the officer, and displaces Section 1983 in that regard anyway. Count VI is a claim under Article X of the Illinois Constitution, but not such right exists based on race. Count VII claims to be a count under the Civil Rights Act of 1964 under 42 U.S.C. §1983, but no such right exists independently. Count IX is for "assault" under 42 U.S.C. § 1983, but no such right exists. Count X is claim for a right to counsel, but no such right exists under these circumstances. Count XI is a property claim but any such claim is duplicative. Count XII is a claim to remain silent, but no evidence was introduced in a criminal proceeding, so there is no claim. Count XIII is a defamation count but that is not recognizable under Illinois law. Count XIV is claim of defamation under Section 1983, but no such right exists. Count XV is a claim under 504 as through 42 U.S. C. 1983, but no such right exists.

Finally the Complaint vaguely claims "official capacity" claims (presumably as to all federal counts), but since the Complaint comes nowhere close to such type of *Monell* violation, those claims too must be dismissed. All but Count 8 (even assuming Plaintiff can make a proper plaintiff party) should be dismissed.

II. **Standard of Dismissal Under *Bell Atlantic***

Rule 8(a) of the *Federal Rules of Civil Procedure* requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough "'to give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). Rule 8(a) (2) requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. *Id.* at n. 3.

The Seventh Circuit noted that in *Bell Atlantic*, the Supreme Court "retooled the federal pleading standards, retiring the oft-quoted *Conley* formulation that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007)(citing *Bell Atlantic, 127 S.Ct. at 1969*(*Conley*'s "famous observation has earned its retirement.")(in turn quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The Seventh Circuit explained in *Bell Atlantic* that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* (quoting *Bell Atlantic*, 127 S.Ct. at 1964-65). Instead, the Court held, the factual allegations in the complaint "must be enough to raise the right to relief above the speculative level." *Id.* (quoting *Bell Atlantic*, at 1965)(and quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir.2007)). *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663 (7th Cir.2007).

III. **Summary of Plaintiff's Complaint**

Plaintiff's Complaint is considered true for motion to dismiss purposes only. *Sneed v. Rybicki*, 146 F.3d 478, 480 (7th Cir.1998). Plaintiff states he is a 15 year-old boy (Amended Complaint ¶ 2 pg. 3). Plaintiff states that on February 4, 2008, he was in the cafeteria at Bolingbrook High School (Complaint ¶ 7, pg. 4). He claims that when "gang members stood up from their chairs, so did he" (Complaint ¶ 9, pg. 4).

He claims three days latter he was summoned to a location in Bolingbrook High School and was "falsely imprisoned " by an "out of control Bolingbrook police officer and he allegedly

2

coerced the Plaintiff to make a 'confession'" (Amended Complaint ¶ 11, pg. 4). Plaintiff later attended a school expulsion hearing with his parents and was ultimately suspended from school for two semesters (Amended Complaint ¶ 19, pg .5). Plaintiff claims he was not give adequate due process in that he had no opportunity to "prepare, gather witnesses, or cross examine witnesses." (Amended Complaint ¶¶ 16-17, pg. 4). Even though he was expelled from Bolingbrook High School, Plaintiff admits that he was still allowed to attend a state alternative school in Joliet, Illinois, but he claims he does not want to go to that school (Amended Complaint ¶ 20, 23, pg. 5).

Plaintiff claims he was exercising his First Amendment right to "stand" when he stood up at the same time as the purported gang members, and thus should never have been expelled. (Amended Complaint ¶ 27, pg. 5). Plaintiff claims that he is not a member of a gang, but when he "stood up" he was described as a gang member by the Defendants. (Amended Complaint ¶ 29, pg. 6)

IV. **Argument**

　A. **The Entire Complaint Must be Dismissed because Plaintiff is a Minor With No "Next Friend" Plaintiff and thus an Improper Plaintiff**

Plaintiff's filing admits he is a 15-year-old minor and it is clear his Complaint has no "next friend" as a proper plaintiff. He thus lacks standing and this court must dismiss the entire lawsuit as there is no jurisdiction to continue. In every federal case, the party bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Consistent with these principles, standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, see *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-562, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); and prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction," *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Capacity to sue (i.e. jurisprudential standing) is determined by reference to the law of the individual's domicile. Fed.R.Civ.P. 17(b). A minor in Illinois cannot bring suit in his own name. *Severs v. Country Mutual Life Insurance Co.,* 89 Ill.2d 515, 520, 61 Ill.Dec. 137, 139, 434 N.E.2d 290, 292 (1982). A parent may sue on behalf of his or her minor child as a "next

friend" if the parent is represented by counsel and has no interests that conflict with those of the child. *See In re Chicago Rock I., & Pac., RR*, 788 F.2d 1280, 1282 (7th Cir.1986). This is not unique to either Seventh Circuit or Illinois law. *Gardner by Gardner v. Parson*, 874 F.2d 131, 137 n.10 (3d Cir.1989); (To maintain a suit in a federal court, a child or mental incompetent must be represented by a competent adult). See also 4 *Moore's Federal Practice* § 17.20[1], p. 17-87 (3d ed.1997).

Here, it is clear the <u>only</u> named Plaintiff in this action is 15 years old and has no next friend; there is thus no standing and this case cannot proceed as captioned, so it must be dismissed.

**B.** **The Alleged "Official Capacity" Claims must be Dismissed**

While again Plaintiff's Complaint is rather vague, he does make some sort of representation in the caption that the claims are against Officer Alan Hampton are in both an "individual" and "official" capacity. Because under *Bell Atlantic*, the pleading falls woefully short for the "official capacity" claim, it must be dismissed.

Stated "Official-capacity" suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). And an official capacity suit is construed identically as a claim against the municipality itself. *Hafer v. Melo*, 502 U.S.C 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

As the Supreme Court stated in *Monell v. New York City Dept. of Social Servs.*, 436 U.S., 658, 689, 98 S.Ct., 2018, 2035 (1978), although municipalities and other local governmental bodies are "persons" within the meaning of § 1983 that could be subject to liability, the Court also recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.

The plaintiff must demonstrate that, through the municipalities *deliberate* conduct of a policy or custom, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Board of County Commissioners of Bryan Country, Ok.*, 520 U.S. 520, 117 S.Ct. 1382 (1997).

4

There is **nothing** in the Amended Complaint to give fair notice under *Bell Atlantic* for any *Monell* basis for liability. There is no policy or custom alleged or any claim of any such policy or custom was violated. Moreover, there is nothing to demonstrate that such policy or custom, even if there was one, was the "moving force" behind the alleged actions. All official capacity claims, which are really claims against the Village of Bolingbrook, must be dismissed with prejudice.

    **C.    There Is No Recognized First Amendment Right to "Stand" As Claimed by Plaintiff So Count I Must be Dismissed**

Plaintiff claims a First Amendment right to "stand" in the cafeteria and according to the Amended Complaint he simply stood up when certain "gang members" did. Again while vague, it appears that Plaintiff believes that he should have suffered no repercussions for "standing." In any event, there is no such First Amendment "right" to stand in isolation. Thus this claim (assuming it is against the Bolingbrook Officer) must be dismissed.

Although the First Amendment literally forbids the abridgement only of freedom of speech, its protection has long been recognized as reaching a wide variety of conduct that communicates an idea. *Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 2538, 105 L.Ed.2d 342 (1989). Governmental constraints on individuals' communication of ideas must be measured against substantial and compelling societal goals such as safety, decency, individual rights of other citizens, and the smooth functioning of government. *See, e.g., United States v. O'Brien*, 391 U.S. 367, 376-82, 88 S.Ct. 1673, 1678-82, 20 L.Ed.2d 672 (1968)

Public school students enjoy a degree of freedom of speech within the schoolhouse gates that is balanced against the added concern of the need to foster an educational atmosphere free from undue disruptions to appropriate discipline. *See Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 509, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969)

However, the conduct still must be qualified as "speech" to be protected and not all conduct can be labeled "speech" deserving of any protection. *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). Moreover, not every defiant act by a high school student is constitutionally protected speech. Under *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), the flag burning case, a two part test must be met for non-verbal conduct to be "expressive conduct" and therefore speech protected under the First Amendment. First, the actor must intend to convey a particularized message, and, second, there

5

must be a great likelihood that the message would be understood by those who observe the conduct as protected speech. *Id.* at 404, 109 S.Ct. at 2538.

In this case there is absolutely nothing in the Amended Complaint that provides what was the message allegedly conveyed and how it would be observed to be a message concerning an idea when Plaintiff "stood." Plaintiff simply states in his Complaint that he got up from his seat. Plaintiff's Complaint is devoid of any allegations of what the "message" was or how it would be understood. There is thus insufficient notice or warning under *Bell Atlantic* to maintain this cause of action or arise above speculation, so that the First Amendment claim as to the Bolingbrook Officer must be dismissed with prejudice.

### D. There is No Right to Absolute Movement for False Imprisonment under § 1983 in a School Setting, So Count II Must be Dismissed

Plaintiff admits that he was in school on February 7, 2008 and that he was "summoned" to a location in the Bolingbrook school. He claims that he was thereafter "falsely imprisoned" in that location by Officer Hampton (Amended Complaint ¶ 9, pg. 8). Plaintiff's false imprisonment claim under § 1983 fails as a matter of law.

"False imprisonment is an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Meerbrey v. Marshall Field and Co.*, 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1231 (Ill.1990). However, it is well established that "School personnel possess power over students, and school personnel are permitted a degree of supervision and control that cannot be exercised over free adults." *Bell v. Marseilles Elementary School,* No. 00-2553, 2001 WL 818897, at *5 n. 6 (Mar. 7, 2001)( citing *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 655, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Thus, this claim fails as a matter of law.

This was the conclusion of Judge Murphy in a recent case in the Southern District of Illinois with facts similar to this case. In *Adams v. Cahokia School District,* 470 F. Supp.2d 897 (S.D. Ill. 2007), the student attempted to make a false arrest claim under Section 1983 because she was taken out of class by a school police resource officer and questioned about a claim she made that she was molested the pervious day. The court held in the context of a student in school being requested to come to the office, there was no false imprisonment as the student did not have right of complete mobility in the school. *Id.* at 914-915. Clearly, if a victim can be

6

detained in school for questioning and has no claim, certainly an alleged perpetrator can be detained while in school for questioning. Thus this claim fails as a matter of law.

### E. Count III and IV Must be Dismissed as there is no Causation, and Even if There Was Causation, there Were no Constitutional Violations of Plaintiff's Expulsion

Counts 3 and 4 allege a violation of due process under the Federal Constitution and state law and the State Constitution. Plaintiff claims that all Defendants engaged in actions to prevent Plaintiff from Due Process. (Count 3¶¶ 14,15, pg. 9). Although not entirely clear, Plaintiff claims this lack of due process was because he had "no opportunity to prepare, gather witness, or confront accusers" (Amended Complaint ¶ 16-17, pg. 5).

#### 1. There is No "Personal Involvement" of the Officer In the Expulsion Or the Alleged Deprivation of Due Process

In order to establish liability under 42 U.S.C. § 1983, a plaintiff must allege with clarity and prove by a preponderance of the evidence (1) that "the conduct complained of was committed by a person acting under color of state law, and (2) [that] this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

Thus to establish liability, however, the Plaintiff must also show that each Defendant "committed" the conduct of which she complains. The doctrine of *respondeat superior* does not apply; absent personal involvement in the alleged constitutional deprivation, no liability will attach. *Crowder v. Lash,* 687 F.2d 996 (7th Cir.1982)

In essence, this standard requires proof of causation, *i.e.* that the individual Defendant actually caused the Plaintiff's injury *through his own conduct* (or misconduct). In the Seventh Circuit, the causation element of § 1983 requires the plaintiff to establish that the deprivation of his constitutional rights would not have occurred " *but for* " the defendant's conduct. *Lossman v. Pekarske,* 707 F.2d 288, 291 (7th Cir.1983).

Here there is nothing in this Complaint alleging that the police officer "caused" the alleged failure of due process rights during Plaintiff's school expulsion hearing. Plaintiff does not allege that the officer testified or otherwise communicated anything to the hearing officer or otherwise forced the hearing officer not allow cross-examination or presentation of witnesses (as Plaintiff claims he was not allowed to do) or was even at the hearing!!!

Although Plaintiff alleged the officer forced him to sign an alleged criminal "confession" (again for this purpose only, assuming that is true) that would still have nothing to do with the expulsion hearing concerning Plaintiff's claim that he was kicked out of school for "being in a gang," as he claims and not given a fair hearing. In a word, the Amended Complaint is <u>completely silent</u> on causation of the expulsion as to the police officer. That is not really surprising, because School Administrators deal with expulsion from School, not Village Police. With a lack of a causation there can be no claim against the Police Officer for Counts 3 and 4, so they must be dismissed.

2. **Even Assuming the Officer was "Somehow" Involved With the Expulsion, There is Still No Federal Due Process that was Violated**

Plaintiff alleges in his Complaint that he did receive a hearing that he attended with his parents (Amended Complaint ¶ 14, pg. 4). So his complaint is that the hearing was presumably not "good enough." He complains that he allegedly did not have enough time to prepare, gather witnesses, or "confront his accusers. However, Plaintiff confuses the constitutional requirements in a criminal trial with a right to be heard invoked for a student facing expulsion. The two are completely different.

As a backdrop, "procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Children do, however, possess a property and liberty interest in attending public school. *Goss v. Lopez*, 419 U.S. 565, 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The state may not take away this right absent fundamentally fair procedures. *Id.* at 574, 95 S.Ct. 729. In *Goss*, the Supreme Court held that when a student risks being suspended for ten days or less, due process requires that the student be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his version." *Id.* at 581, 95 S.Ct. 729. The Court declined to adopt a rule that students have a right to secure counsel or cross-examine witnesses at suspension hearings, but left open the possibility that hearings involving more severe punishments "may require more formal procedures." *Id.* at 584, 95 S.Ct. 729.

In *Remer v. Burlington Area School Dist.*, 286 F.3d 1007 (7th Cir.2002), the Seventh Circuit upheld the four-year expulsion of a high school student and examined the due process

8

procedures required at expulsion hearings. The Court held that a student facing an expulsion has a due process right to "notice of the charges against him, notice of the time of the hearing and a full opportunity to be heard." *Id.* at 1011-12. A student must be given a meaningful opportunity to be heard, but expulsion hearings need not "take the form of a judicial or quasi-judicial trial." *Id.* at 1010.

Here, it is clear from the Amended Complaint that Plaintiff received notice of the charges against him; and showed up at the hearing with his parents. However, Plaintiff alleges that he was not given a fair hearing because he was not permitted to cross-examine.

Numerous courts have balanced the competing interests at stake and concluded that high school students do not possess a federal due process right to cross-examine witnesses at expulsion hearings. *See Newsome v. Batavia Local School Dist*, 842 F.3d 920 (6th Cir. 1988) (high school student threatened with expulsion based on statements of classmates did not have due process right to learn their identities); *B.S. ex rel. Schenider v. Bd. Of Sch. Trust, fort Wayne Comm. Sch*, 255 F.Supp.2d 891, 900 (N.D. Ind. 2003) (student did not have procedural due process right to obtain names and cross-examine student witnesses at expulsion hearing); *Caston v. Benton Pub. Schs.*, No. 00-215, 2002 WL 562638 (E.D. Ark. Apr. 11, 2002) (school did not violate student's due process rights by refusing to let him cross-examine adverse student witnesses at his expulsion hearing); *Witvoet v. Herscher Comm. Unit Sch. Dist. 2*, No. 97-2243, 1998 WL 1562916 (C.D. Ill. May 27, 1998) (student had no right under federal due process principles to confront or cross-examine his accuser at expulsion hearing); *L.Q.A. v. Eberhart*, 920 F. Supp. 1208, 1219 (M.D.Ala.1996) (no due process violation where school board considered written statements from student witnesses who were not subject to cross-examination at expulsion hearing), *aff'd,* 111 F.3d 897 (11th Cir.1997). Judge Castillo of this district recently came to this exact conclusion. *Brown v. Plainfield Comm. Cons. Dist.* 202, 522 F. Supp.2d 1068 (N.D. Ill. 2007).

Finally, this point has already been decided and Plaintiff is now estopped from claiming otherwise under the law of the case doctrine. On April 3, 2008, Judge Darrah ruled that "Plaintiff has not shown any violation of his due process rights" (Docket # 43, pg. 5). This was a hearing under Fed. R. Civ. P. 65, with full presentation of evidence (Plaintiff and his parents testified). It is thus binding. *Commodity Futures Trading Comm'n*, 701 F.2d 653, 657-58 (7th Cir. 1983)

### 3. Count IV fails as a matter of Law

Plaintiff claims a right to recover under 105 ILCS 5/10-22.6. Again, while the claim is vague, there is no right to relief as to the individuals in any event. For starters, alleging a violation of a state statute does not equate to a federal due process violation. In the words of the Seventh Circuit: "As we tirelessly but unavailingly remind counsel in this Court, a violation of state law ... is not a denial of due process, even if the state law confers a procedural right." *Osteen v. Henley* 13 F.3d 221, 225 (7th Cir 1993).

More importantly, if Plaintiff is proceeding against the individuals directly under the state statute (assuming but not admitting there even is a private right of action) there is explicitly no right against the individual, only against the school district itself. See 105 ILCS 5/10-22.6. "To expel pupils guilty of gross disobedience or misconduct, and *no action shall lie against them for such expulsion.*"(emphasis added).

Likewise, any claim directly under Article X of the Illinois Constitution (again assuming, but not admitting, such right of relief and private action exists) Plaintiff's claim still comes up short. Article X merely indicates the people have a right to a "free" secondary education. Plaintiff specifically alleged he <u>was</u> allowed to continue his education at another institution (although he appears to not want to attend the institution). So he has pled himself out of court.

### F. **Count V, the "Title VI" Claim Must be Dismissed**

Again Count V is incredibly unclear whom Plaintiff is seeking redress against. Although he claims it is against the School District, he seeks damages admittedly against "all Defendants." But in any event, such a claim under Title VI cannot be made against individuals, and the Title VI claim itself is Plaintiff's only relief, not Section 1983.

42 U.S.C. § 1983 supplies a cause of action to a plaintiff when a person acting under the color of law deprives that plaintiff of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" However, "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In determining whether an act subsumes a section 1983 action, the court must determine whether Congress intended that act to supplant any remedy that would otherwise be

available under section 1983. *Id.* at 21, 101 S.Ct. 2615. Such Congressional intent may be found directly in the statute creating the right or inferred when the statutory scheme is incompatible with individual enforcement under section 1983. *City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 125 S.Ct. 1453, 1458, 161 L.Ed.2d 316 (2005).

In the Seventh Circuit that answer is "yes" with respect to Title VI. See *Boulahanis v. Bd. of Regents,* 198 F.3d 633, 641 (7th Cir.1999)(proper means of asserting race discrimination claims in school setting was Title VI, thus precluding Section 1983 and 1985 claim). Thus, the only claim for race discrimination in a school setting is Title VI, not 1983.

Furthermore, a Title VI plaintiff can only seek recovery <u>from</u> the recipient of the federal funding. *Shotz v. City of Plantation,* 344 F.3d 1161, 1169-70 (11th Cir.2003). In other words, individuals may not be held liable under Title VI. *Id.*

### G. Count VI For Race Discrimination Under Article X of the Illinois Constitution Must Be Dismissed

This claim has no basis as Article X does not mean race, but "free" as in money. *Aurora East Public School Dist. No. 131 v. Cronin,* 66 Ill. Dec. 85, 92 Ill.2d 313, 442 N.E.2d 511, 516 (1982) (In light of monetary sense of word "free" in this section providing free education through secondary level, legislature's delegation to Board of Education of duty to promulgate rules for establishing and maintaining free schools was intended to mean financially free schools and was not meant to encompass racial equality).

### H. Count VII Is Duplicative of Count V and Must Be Dismissed

It is unclear how Count V differs from Count VII, so they must both be dismissed. Although Plaintiff seems to be making the argument that he has a claim under Title VI <u>and</u> 1983 the discussion above demonstrates just the opposite. At least as to Officer Hampton, Count V and VII must be dismissed.

### I. There is No Assault Claim under § 1983 so Count IX Must Be Dismissed

Count IX has no basis in law and is reckless. As referenced above, it is beyond dispute that Section 1983 actions are based on federal rights, not state laws. *White v. Olig,* 56 F.3d 817, 820 (7th Cir. 1995). Count IX is clearly based on a state common law and must be dismissed.

### J. There is No Sixth Amendment Right to Counsel Prior to Arraignment, And Any "Statement" Was Not Used Anyway So Count X Must Be Dismissed

Count X has no basis in law and the claim is reckless. It is well established that the Sixth Amendment right to counsel does not attach until arraignment. *Kirby v. Illinois,* 406 U.S. 682,

92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Plaintiff claims no arraignment etc., here (which is because there never was such "arraignment"), so there can be no Section 1983 claim.

Assuming, *arguendo,* Plaintiff may also be referring to a Fifth Amendment right to counsel as in self incrimination, in *Chavez v. Martinez* , 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.22d 984 (2003), the Supreme Court explicitly stated there <u>was no</u> § 1983 claim if the statement us <u>not</u> used in a criminal proceeding and there is no 1983 action for failure to give *Miranda* warnings. Plaintiff claims no criminal procedure against him where these rights could have been implicated. This claim must be dismissed.

### K. Count XI must be Dismissed

Again this count is incredibly vague but seems to imply Section 504 or Title II of the ADA. If that is the case there is no claim (see discussion of Count XV *infra*). If plaintiff is claiming a property right such right is subject to due process and cannot be maintained as discussed in Counts 3 and 4 above.

### L. Count XII must be Dismissed Because No "Statement" Was Used in A Criminal Proceeding

As referenced above, there is no Fifth Amendment Right (through the Fourteenth) to enforce through 1983, whether for counsel or to preclude self-incrimination, when no statement has been introduced in a criminal proceeding. This claim is baseless and reckless.

### M. The Claim for State Law Defamation under Count XIII Must Be Dismissed

Again ignoring the factual accuracy of the statements under this Count for the moment, no claim for common law defamation can be made as a matter of law against Officer Hampton. This is so because of the absolute immunity privilege accorded to government officials in this type of situation. The absolute privilege doctrine originated as a defense against civil damages suits for defamation and "kindred torts." *Barr v. Matteo* 360 U.S. 564, 569, 79 S.Ct. 1335, 1338, 3 L.Ed.2d 1434, 1440 (1959). In *Barr,* the Court held that the defendant, the acting director of the United States Office of Rent Stabilization, was immune from defamation liability for statements he made in a press release explaining why he suspended the plaintiffs from their employment. *Id.* 360 U.S. at 574-75, 79 S.C.t at 341.

The Illinois Supreme Court recognized this doctrine in *Blair v. Walker,* 64 Ill.2d 1, 349 N.E.2d 385(1976), and held that the Governor of Illinois was immune from liability for making

statements "which are legitimately related to matters committed to his responsibility." ( *Blair,* 64 Ill.2d at 10, 349 N.E.2d 385.,

The justification for the privilege is the need to ensure that government officials are

> free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties-suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government."

*Barr,* 360 U.S. at 571, 79 S.Ct. at 1339, 3 L.Ed.2d at 1441.

Again assuming, *arguendo,* that Officer Hampton made statements that Plaintiff "was in a gang to third parties" such statements are in the course of his official duties and are thus absolutely privileged.

### N. Count XIV Has No Basis and Must Be Dismissed

Count XIV has no basis in law and is reckless. It is beyond dispute that Section 1983 actions are based on federal rights, not state laws. *White v. Olig,* 56 F.3d 817, 820 (7th Cir. 1995). Count XIV as a claim for "defamation" under 1983 must be dismissed.

### O.   Count XV Must be Dismissed

Again this count is unclear but seems to be making a claim under Section 504, 29 U.S.C. § 794, or Title II of the ADA based on some alleged disability of Plaintiff as through Section 1983. Of course Plaintiff alleges nothing on causation as to Officer Hampton, so this count must be dismissed as to him. But even if he could, it appears that Plaintiff is really seeking an IEP (Individual Education program). But Section 1983 cannot be used to avoid the claim that a student does not have proper IEP. *Diaz-Fonseca v. Puerto Rico,* 451 F.3d 13 (1st Cir. 2006).

And if Plaintiff's claim in this count is really just handicap discrimination and not IEP, he fares no better. In *Alexander v. Chicago Park Dist.,* 773 F.3d 850 (7th Cir. 1985), the Seventh Circuit held that Title VI precludes a claim under 1983. And in turn Section 505 of the Rehabilitation Act states that remedies under 504 <u>are the same</u> as Title VI. Thus, there is no 1983 action to enforce Section 504 of the Rehabilitation Act. See *Vinson v. Thomas,* 288F.3d 1145, 1156 (9th Cir. 2002); *Grey v. Wilburn,* 270 F.3d 607 (8th Cir.2001); *Alsbrook v. City of Maumelle, Arkansas,* 184 F.3d 999 (8th Cir.1999); *Holbrook v. City of Alpharetta, Georgia,* 112 F.3d 1522 (11th Cir.1997)

P.   **There Can Be No § 1985 claims**

Again Plaintiff's Complaint is incredibly vague on this point, but even if somehow one could assume a 42 U.S.C. § 1985 and/or 1986[1] claim was pled, it still fails as a matter of law. 42 U.S.C. 1985(3) states in relevant part

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Notwithstanding the conspiracy language, the courts have held that there is no claim under Section 1985 for conspiracy in general because it is clear those claims require "class based invidiously discriminatory animus" as a conspiracy. *Munson v. Friske*, 754 F.2d 683, 695 (7th Cir. 1985). But any such class-based discrimination under § 1985 is displaced by Title VI as referenced above (and cannot be made against individuals). *Boulahanis*, 198 F.3d at 640-41. Thus, to the extent any claims are meant to be pled under § 1985, those must also fail.

Q.   **In the Alternative, Officer Hampton is Protected by Qualified Immunity**

Even if there was some question of the merits of the claims, Officer Hampton is still protected under qualified immunity for all federal claims (Counts I-II, V, VII, IX-XII, XIV-XV). Under the well-known qualified immunity defense, "government officials performing discretionary functions, are shielded from liability for civil damages insofar as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In ruling on an issue of qualified immunity, the United States Supreme Court outlines a two-step process. The first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation could be established, the question is whether the right was so clearly established in light of the specific context of the case. Saucier v. Katz, 533 U.S. 194, 201 (2001);

The burden of persuasion is on the <u>plaintiff</u> to prove (not for the defendant to disprove) the existence of a clearly established right. *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). In determining whether a right is clearly established, the Supreme Court

---

[1] Section 1986 is liability for failure to prevent a conspiracy under 1985.

14

has admonished that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, in examining whether the official is entitled to qualified immunity, the court must determine "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987).

The Supreme Court decision in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) requires a *higher level* of specificity of whether a right is "clearly established." More specifically, *Anderson* stated.

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow.
>
> \* \* \*
>
> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularizes, and hence more relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Anderson v. Creighton*, 483 U.S. 635, 639-640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A plaintiff can meet this burden only by citing "closely analogous cases" decided prior to the defendants challenged actions which clearly and consistently recognize the right forming the basis of the cause of action. *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991).

In this case, there is no case on closely analogous facts on any of the federal claims and Plaintiff will be unable to avoid qualified immunity.

V.     **Conclusion**

Counts I-VII and IX-XV must be dismissed with prejudice as to Officer Hampton and the Village of Bolingbrook.

Respectfully submitted


By: s/Craig G. Penrose
One of His Attorneys

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, IL  60606
(312) 627-4000
(312) 627-1717 (facsimile)
cpenrose@tsmp.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 22, 2008, a copy of the foregoing document was served upon the counsel of record listed by:

- Electronically filing via court ECF system:

| Counsel for Plaintiff | Counsel for Valleyview School District, Don Laverty, T. Gavin, and Steven Prodehl |
|---|---|
| Christopher Cooper<br>P.O. Box 1225<br>Hammond, In 46325<br>(317) 536-3197<br>(708) 425-8197 (facsimile<br>cooper@sxu.edu | Brian Riordan<br>Anthony Ulm<br>Clausen Miller<br>10 South LaSalle Street<br>Chicago, Il 60603-1098<br>(312) 855-1010<br>(312) 606-7777<br>briordan@clausen.com |

s/Craig G. Penrose
Craig G. Penrose

Craig Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, Illinois 60606-6308
(312) 627-4000

17