NO. 08-1850

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

**ROGER CORONADO JR.**
Plaintiff-Appellant,

v.

**VALLEY VIEWPUBLIC SCHOOL DISTRICT, 365-U
ALAN HAMPTON, BOLLINGBROOK POLICEMAN
DON LAVERTY
TIMOTHY J. GAVIN
STEVEN PRODEHL**
Defendants-Appellees.

BRIEF AND REQUIRED SHORT APPENDIX OF
APPELLANT ROGER CORONADO JR.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
CASE NO. 08cv1254
THE HONORABLE AMY ST. EVE, PRESIDING

MAY 12, 2008

LAW OFFICE OF
CHRISTOPHER C. COOPER, ESQ.,PHD
MAILING ADDRESS:
DR. CHRISTOPHER C. COOPER,
3700 WEST 103RD STREET
CHICAGO, Illinois 60655
(312) 371-6752 (telephone)
(866) 334-7458 (facsimile)
E-MAIL: cooperlaw3234@gmail.com

*Attorney for Plaintiff-Appellant*
CHRISTOPHER C. COOPER

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 08-1850

Short Caption: CORONADO V. VALLEY VIEW SCHOOL DISTRICT, ET. AL.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

ROGER CORONADO JR., PLAINTIFF (not a corporation)

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

LAW OFFICE OF CHRISTOPHER COOPER

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N\A

Attorney's Signature: _____  Date: 12 MAY 2008

Attorney's Printed Name: CHRISTOPHER C. COOPER

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [X]  No [ ]

Address: MAILING: 3700 W. 103RD ST., CHICAGO, IL 60655 OR PO BOX 1225, HAMMOND, IN 46325

Phone Number: 312 371 6752  Fax Number: 866 334 7458

E-Mail Address: cooperlaw3234@gmail.com

rev. 01/08 AK

## TABLE OF CONTENTS

Disclosure Statement................................................................. I
Table of Contents.................................................................... II
Table of Authorities ............................................................. II


JURISDICTIONAL STATEMENT                                          1
ISSUES PRESENTED FOR REVIEW                                       1
STATEMENT OF CASE                                                 2
STATEMENT OF FACTS                                                4
SUMMARY OF ARGUMENT                                               8
ARGUMENT                                                          12
CONCLUSION                                                        41
CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)             43
PROOF OF SERVICE                                                  44
CIRCUIT RULE 30(d) STATEMENT                                      45
ATTACHED REQUIRED SHORT APPENDIX                                  46

## Table of Authorities

### Cases

Brown v. Board of Education, 347 U.S. 483 (1954)...................................24
Chicago v. Morales, 177 Ill. 2d 440; 687 N.E.2d 53 (1997)...............10,38,42
Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985)...........................................................................................12,40
Colquitt v. Rich Township High School District, 298 Ill. App. 3d 856; 699 N.E.2d 1109;(1998)...........................................3,11,12,13,14,20,22-26,29,35
Coronado v. Valley View School District 08cv1254 (2008), at Doc. 43, Opinion & Order..............................................4,9,10,11,13,20,23,30,35,41
Ebay Inc. v Mercexchange,L.L.C., 547 U.S. 388; 126 S. Ct. 1837; 164 L. Ed. 2d 641 (2006)..............................................................................8,35,38
In Re Gault 387 U.S. 1; 87 S. Ct. 1428; 18 L. Ed. 2d 527 (1967)...............  18
G.O., 191 Ill. 2d 37; 727 N.E.2d 1003 (2000)...........................................18
Goldberg v. Kelly, 397 U.S. 254 (1970)........................... 12,13,19,20,23,30,41
Golden Egg Club, Inc. v. Illinois Liquor Control Commission, 124 Ill. App. 2d 241, 260 N.E.2d 329 (1970)...................................................................22
Goss v. Lopez, 419 U.S. 565; 95 S. Ct. 729; 42 L. Ed. 2d 725 (1975)...........................................................3,13,14,23,,31,32,33,35,37
Griffin v. Illinois, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956)............26

Hecht Company v. Bowles, 321 U.S. 321; 64 S. Ct. 587; 88 L. Ed. 754 (1944)................................................................................................9,29

Joint Anti-Fascist Refugee Committee v. McGrath. 341 U.S. 123,168, 95 L. Ed. 817, 71 S. Ct. 624 (1951).....................................................14,20,30,35

Mahonie v. Edgar, 131 Ill. App. 3d 175, 476 N.E.2d 474, 87 Ill. (1985)......  22

Mathews v. Eldridge Test, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)........................................ .1,9,10,11,12,13,19,20,23,30,32,36,42

People v. Hopping, 60 Ill. 2d 246,326 N.E.2d 395 (1975).......................... 26

Santosky v. Kramer, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S.Ct. 1388 (1982)..13

Stratton v.Wenona Community Unit District No. 1, 133 Ill. 2d 413 (1990)   13

United States v. Morgan, 313 U.S. 409, 85 L. Ed. 1429, 61 S.Ct. 999 (1941).26

Weinberger v. Romero-Barcelo, 456 U.S. 305; 102 S.Ct.1798; 72 L.Ed. 2d 91 (1982)................................................................................. 8,9,12,35

Yakus v. United States, 321 U.S. 414, (1944)....................................9,28,29

## Statutes, Acts and Rules

1st Amendment...............................................................................3

4th Amendment...............................................................................3

5th Amendment...........................................................................3,17,30

14 Amendment...........................................................................  3,30

34 CFR 104.4 & 104.33.......................................... ..12,30,37,39

105 ILCS 5\10-22.6..........................................................................4, 29

28 USC 1367...........................................................................  20

42 USC 1983,1985...............................................................................3

720 ILCS 5/25-1(a)(2); and 720 ILCS 5/26-1....................................3,6,33,34

ADA...................................................................... 3,16, 30

Rehabilitation Act of 1973...............................................................29,30

Title VI of the Civil rights Act of 1964................................................. 3,4

State of Illinois Constitution, Article X........................................................4

## APPENDIX TABLE OF CONTENTS

A.1: Memorandum Opinion and Order, Document 43

A.2: ECF 42, Minute Order (Denies Motion)

A.3: 34 CFR 104.4 & 104.33 (3 pages)

A.4: 720 ILCS 5/25-1(a)(2): Mob Action & 720 ILCS 5/26-1: Disorderly Conduct.

A.5: 105 ILCS 5\10-22.6

NOW COMES Attorney Christopher C. Cooper, on behalf of Plaintiff-Appellant Roger Coronado Jr. and states as follows:

## JURISDICTIONAL STATEMENT

Jurisdiction over this appeal is based on 28 U.S.C. § 1291, as the appeal involves a final decision of the District Court, specifically, the Court's April 8, 2008 denial (Documents 42 and 43) of plaintiffs' Motion for injunctive relief.  On April 8, 2008, plaintiff, through counsel, filed a Notice of Appeal (Doc. 44). Plaintiff is appealing Document 43, the Opinion and Order of the District Court.

## ISSUES FOR REVIEW

UMBRELLA ISSUE:  Did the District Court abuse its Discretion in denying plaintiff Injunctive Relief?

1.    Did the District Court improperly apply the 4-part test for injunctive relief?

2.    Should the District Court have used the Mathews v. Eldridge Test or equivalent to decide if due process had been afforded to plaintiff? (The larger issue: Where a school district seeks to expel a K-12 student for one year or more, must the student be afforded the full panoply of due process rights?).

3.    Was it proper for the District Court to rule that Due Process does not require that plaintiff has a right to confront and cross-examine his accusers?

4.    Was it proper for the District Court to deny plaintiff injunctive relief where the defendant school board and hearing officer used as a basis for expulsion, Hearsay and a confession coerced from the plaintiff by the police? (Plaintiff was deprived of due process in the expulsion process as a result).

1

5.    Was it proper for the District Court to deny plaintiff injunctive relief where the only record of the expulsion hearing is a hearing officer's report littered with inaccuracies and lacking in sufficient detail to enable a district court to conduct a review? (Plaintiff was deprived of due process in the expulsion process as a result of the hearing officer's report.)

6.    Was it proper for the District Court to deny plaintiff injunctive relief where defendants were unable to show that plaintiff committed a rule violation or violation of Illinois law?

7.    Was it proper for the District Court to deny plaintiff injunctive relief where the plaintiff was not given Notice of fighting and mob action charges?

8.    Was it proper for the District Court to deny plaintiff injunctive relief where the underlying Policy (Posturing) for which he was expelled violated plaintiff's substantive and procedural due process rights and that the policy disserves the public interest?

9.    Was it proper for the District Court to hold that plaintiff's parents did not need an interpreter? (Plaintiff was deprived of "meaningful" due process in the expulsion process as a result of his parents not having had an interpreter to translate English to Spanish and vice versa.).

### STATEMENT OF THE CASE

On March 1, 2008, plaintiff, a fifteen year-old Mexican American child filed a Complaint (Doc. 1) in the U.S. District Court for Northern Illinois challenging a two-semester (1 year) expulsion from Bollingbrook [Public] High School. Included

in the complaint were two related actions. One for injunctive[1] and declaratory relief and the second for monetary damages.

Plaintiff (referred to as Roger in many places within this brief due to his age) was suspended/expelled from Bollingbrook [Public] High School February 7, 2008 for 2 semesters (one year) accused by defendants of violating a school policy prohibiting "Posturing"; and accused of having violated the criminal laws of Illinois, namely 720 ILCS 5/25-1(a)(2) (Mob Action); and 720 ILCS 5/26-1 (Disorderly Conduct). Plaintiff contends in his lawsuit that he was expelled without "meaningful" due process in violation of the U.S. and State of Illinois Constitution as well as in violation of the holdings in *Colquitt v. Rich Township High School District, 298 Ill. App. 3d 856 at 863; 699 N.E.2d 1109; 1998 Ill. App. LEXIS 566; 232 Ill. Dec. 924 (1998); and Goss v. Lopez, 419 U.S. 565; 95 S. Ct. 729; 42 L. Ed. 2d 725 (1975).*

Plaintiff's action for monetary damages continues[2] and alleges that in subjecting the plaintiff to the unlawful suspension/expulsion process, the defendants intentionally violated the Americans with Disabilities Act, 42 U.S.C. 12111 et seq ["ADA"]; intentionally violated plaintiff's [U.S.] First Amendment, Fourth Amendment, Fifth Amendment and Fourteenth Amendment rights; violation of 42 USC sections 1983 & 1985; violation of Title VI of the Civil rights Act

---

[1] A Motion for Injunctive and Declaratory Relief immediately followed the filing of the original complaint.

[2] The Complaint having been amended, in particular, to add the name of the unidentified Bollingbrook Policeman and to add a "Next Friend" for plaintiff.

of 1964; violation of the State of Illinois Constitution, Article X; and violation of 105 ILCS 5/10-22.6(a).

By way of motion (Doc. 5,6 & 7), plaintiff asked the District Court to enjoin (by way of injunction) Defendant Valley View School District from enforcing the the 2 semester-1year expulsion imposed on him. By order (Doc. 8) of the Honorable Judge St. Eve, the presiding judge in the above captioned matter, Judge Darrah addressed the matter of injunctive relief. He convened a hearing on March 13, 2008. Judge Darrah ordered closing arguments filed in writing (Doc. 19 & 23) and that counsel for each party complied timely. On April 8, 2008, Judge Darrah issued the Opinion & Order of the Court (Doc. 43) denying plaintiff's motion for a preliminary injunction. On April 8, 2008, plaintiff through counsel, filed an appeal of Judge Darrah's order.

STATEMENT OF FACTS

On Monday, February 4, 2008, plaintiff, a ninth grader, was inside of the Bollingbrook, Illinois High School Cafeteria eating lunch during his scheduled lunch hour (Dist. Ct. Trans. 42:14). There were individuals in the cafeteria, not friends or acquaintances of the plaintiff (Dist. Ct. Trans. 63:18-19;*77:1-2;*94:19-22). These Other individuals were not authorized to be inside of the cafeteria, since it was not their scheduled lunch hour. (Dist. Ct. Trans. 42:18). The Other students (who were not at their assigned lunch period), stood-up from a sitting to a standing position. Plaintiff moved from a sitting to a standing position to get out of the way of the standing students so to avoid what appeared to him to be

4

a brewing confrontation brewing between two groups of students. (Dist. Ct. Trans. 63:1*77:16-25;*78:1-5). Three days later on February 7, 2008, the expulsion process for which injunctive relief was sought, commenced when plaintiff was taken by school security from his first period class to the police sub/liaison station located within the high school (Dist. Ct. Trans. 63: 23-25;*64:1-3)and handed over to police, accused by Defendant-School Security Guard Gavin of Posturing (see DF. Exh. 4).

Inside of the police sub-station, Bollingbrook, Illinois Policeman Alan Hampton, a man who described himself for the District Court as "250" pounds and "6'6" inches in height (Dist. Ct. Trans. 126:1-4) assaulted and falsely imprisoned the child-plaintiff. (Dist. Ct. Trans. 64:7-11;*65:6-25*67: 1-25*67: 1-25*68: 1-25*70: 1-25;*83: 22-25; *84: 1-7). The District Court took judicial notice that the child-plaintiff is approximately 5'5 to 5'6, 140 to 150 pounds. (Ibid. ; Dist. Ct. Trans. 126:16-20).

The officer shouted hysterically, assaulting plaintiff with violent gestures (Dist. Ct. Trans. 70:9-12;*65:6-11;*67:21-25l*68:1-10) and that the officer slammed a door against the chair in which student Michael Clinton sat (Ibid., at 67:23) because Michael would not sign a document. Plaintiff believed that defendant-officer would strike him next. (Dist. Ct. Trans. 68:8-10). By threat of violence, the officer coerced the plaintiff to sign a "referral-complaint (a witness statement prepared in part by Defendant Gavin, see DF. Exh. 4, and labeled as PF. Exh. 3),

and that on the document was Defendant Gavin's accusation that plaintiff had engaged in Posturing. (Ibid.).

Shortly thereafter, the defendant-officer coerced plaintiff to handwrite a confession admitting to Posturing, see DF. Exh. 3 and Dist. Ct. Trans. 67:3-15;* 70:11-12;* 83: 22-25;*84:1-7. Defendant-Officer denies the allegation. He claims that the confession was written when he received it from Mr. Dettman (a person who was not an eyewitness to alleged events on February 4, 2008) (Dist Ct. Trans. 58: 2-25*59: 1-11).[3] And, that based upon the confession, Officer Hampton testified that he cited Roger for violations of Illinois Criminal laws (Ibid., 68:10-18;*57:10-25;*58:1-3).

Defendant-Officer testified (Ibid., 57:20-25;*58:1-25;* 59:8-11) that he had Probable Cause to cite plaintiff for violations of criminal law based on the handwritten confession (Ibid.; DF. Exh. 3) allegedly given to him by Mr. Dettman. Defendant, Bollingbrook Policeman Hampton, cited Roger for two crimes: Mob Action, 720 ILCS 5/25-1(a)(2); and Disorderly Conduct, 720 ILCS 5/26-1. (Dist. Ct.

---

[3] Strange and unbelievable best describes Officer Hampton's testimony. By example, the officer claimed that he did not telephone and speak with plaintiff's parents (Dist. Ct. Trans. 70: 22-25); however, Roger and his mother testified that Mr. Hampton did call Mr. and Mrs. Coronado. (Ibid., 118:11-19). Roger has never met Mr. Dettman. (Ibid., 71:1-4:*96:24-25). Defendant Hampton claims that Roger was with Dean Dettman on the early morning of February 7, 2008. (Ibid., 57: 2-9). This would have been physically impossible. Roger was escorted (he did not walk of his own free will) directly to the police sub-station shortly after 8:10AM (Ibid., 61: 10-17). There was not a stop at Mr. Dettman's office. (Ibid., 71:1-4;*61: 10-17;*63: 24-45;*64: 1-2). The confession is dated January 7, 2008. It is sensible to assume that the writer intended February 7, 2008. If the defendant officer did not provide the 15 year-old plaintiff with the Valley View letterhead confession form, then who did and how did they get the form to Roger before February 7, 2008(?) Remember, Roger was taken from his first period class, early in the morning, shortly after 8:10AM on the 7th of February. (Ibid., 61: 10-17).

Trans. 65: 10-11; DF. Exh. 5).  Plaintiff was told by Officer Hampton that he was

suspended from the public high school for "Posturing" (Dist. Ct. Trans. 65:10-

11;*66:3-25;*67:1-15;*67:13; DF Exh. 4), a violation of school policy.[4]  Plaintiff was

instructed to leave the school property and did leave the school property.

(Partial support of the latter is found at Dist. Ct. Trans. pp. 22-23 and at the

bottom of DF. Exh. 4).

Plaintiff received Notice for "one" offense, not two, from the Valley View

District School Board, through the U.S. Mail, dated February 11, 2008. (Df. Exh. 2).

The Notice stated that plaintiff was being charged with one offense, "Subversive

Organizations/Gangs/Hate Groups," and that a hearing would occur on

February 19, 2008.  On February 19, 2008, at the hearing, plaintiff learned that he

was being charged with two offenses, no longer one.  The second offense was:

Fighting and Mob Action (see DF. Exh. 6, p. 4).

On February 19, 2008, Plaintiff's suspension/expulsion was made official.

(See DF. Exh. 6; p.4). Plaintiff was found guilty of "Subversive

Organizations/Gangs/Hate Groups"; and  "Mob Action" of the larger category

labeled "Fighting" (Ibid.); although, plaintiff had not been given Notice (in the

February 11, 2008 correspondence-- DF. Exh. 2--of Fighting and Mob Action.

The plaintiff told Defendant Hampton, Defendant Prodehl (at the February

---

[4] Plaintiff's counsel asserts that the application by the Bollingbrook Police Department of
the School District policy on Posturing, violates the U.S. Supreme Court's holding in
*Chicago v. Morales, 177 Ill. 2d 440; 687 N.E.2d 53 (1997).*

19th expulsion hearing) and the District Court that he is innocent of he

allegations against him (Dist. Ct. Tran. 89:19-25;*90:1-2;*77:1-23;*78:3;*83:18-

25;*85:23-35;*86:1-23;*87:1-2;*88:8-13;*89:1-25); and that he was not a party to

alleged destructive conduct by other students; rather, plaintiff was an innocent

bystander. None of the defendants testified before the District Court that

plaintiff did a specific act; therefore, from the perspective of plaintiff's counsel,

there is not evidence in the Court record indicating the official basis for plaintiff's

expulsion (Dist Ct. Trans. 35: 1-25*36: 1-25; 37: 1-25; 38:1-13;*44:8-25;*45:1-

12;*46:12-17;*151: 8-25;*152:1-17) or for [the] citations [one citation, two offenses)

against plaintiff for violations of Illinois criminal statutes. (See DF. Exh. 5: Citation).

The lack of identification of alleged actions by plaintiff that constitute a crime(s)

or policy violation(s) by the plaintiff, suggest that the District Court's denial of a

permanent or preliminary injunction was an abuse of the Court's discretion.

### SUMMARY OF ARGUMENT

"The decision to grant or deny permanent injunctive relief is an act of

equitable discretion by the district court, reviewable on appeal for abuse of

discretion." *Ebay Inc. v Mercexchange, L.L.C., 547 U.S. 388 at 391; 126 S. Ct.*

*1837; 164 L. Ed. 2d 641 (2006); Weinberger v. Romero-Barcelo, 456 U.S. 305 at*

*312; 102 S. Ct. 1798; 72 L. Ed. 2d 91 (1982).* The District Court in deciding

whether or not to grant Plaintiff Roger Coronado's permanent injunctiuon

abused its discretion.

"Where plaintiff and defendant present competing claims of injury, the traditional function of equity has been to arrive at a "nice adjustment and reconciliation" between the competing claims." *Weinberger v. Romero-Barcelo* at 312; *Hecht Company v. Bowles, 321 U.S. 321 at 329; 64 S. Ct. 587; 88 L. Ed. 754 (1944)*. The District Court opted not to make for a nice adjustment or reconcilliation. The District Court was suppose to (but did not) balance "the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction. " *Yakus v. United States, 321 U.S. 414, 440 (1944)*. The decision (Doc. 43) not to enjoin defendant school district from enforcing a two semester-one year expulsion failed to consider the possible injuries to plaintiff as well as the 15 year-old plaintiff's protected [constitutional] interests of entitlement to a public education and due process.

When a school District takes away a "public" education from a child, it seems reasonable to require that the school district show that the student was found guilty of a wrongful act. Plaintiff's prosecution by the School Board has as a basis [that] plaintiff "Postured." (see DF. Exh. 4). In this regard, Plaintiff was entitled to a legal analysis by the Court that considered the degree to which the public would be disserved (especially, children who appear to school secuirty to "look" like gang members or appear to be of Mexican heritage) if an expulsion based on Posturing was upheld. The Posturing policy, as applied by the School District and the Bollingbrook, Illinois Police, offends the holding in *Chicago v.*

9

*Morales, 177 Ill. 2d 440; 687 N.E.2d 53 (1997)* and deprived plaintiff of substantive

and procedural due process. The subsequent 2 criminal charges (citation)[5]

against plaintiff were born from the allegation of Posturing. Considering the

vagueness of the offense Posturing, there is a legitimate need to question if the

police had or lacked probable cause with which to cite Roger with violations of

Illinois criminal law.   The District Court failed to consider or analyze the foregoing

in arriving at a decision to deny Roger injunctive relief.

The District Court was wrong in holding (at Doc. 43, p.2 ,2nd full para.) that

plaintiff was not entitled to more than an informal expulsion/suspension process

with limited due process safeguards. The District Court should have applied the

*Mathews v. Eldridge Test*[6] or equivalent, contemporaneous with court holdings-

decisions that dictate,—that, the extent to which due process is afforded to a

receipient depends on the severity of codemnation that could occur.  The

condemnation for which the 15 year-old plaintiff was to suffer [and as a result of

the District Court's ruling is now suffering] includes a significant interruption of his

K-12 education; a societal stigma of being labeled part of a criminal gang

(when he has never been a gang member, see Dist. Ct. Trans. 88: 9;*76:20-21);

and an accusation by the Bollingbrook Police that he committed the crimes of

Disorderly Conduct and Mob Action. (DF. Exh. 2). The District Court's lacking

analysis had as a result, the Court's erroneous conclusion (Doc. 43, p4, 1st full

---

[5] For Disorderly Conduct and Mob Action. DF. Exh. 5.
[6] *Mathews v. Eldridge, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).*

para.) that the hearing officer's report (written summary, see DF. Exh. 6 & PF. Exh 1) of the expulsion hearing, replete with inaccuracies, was sufficient as a record of the expulsion hearing.

The denial [by defendants] to allow Roger to confront and cross-examine his accussers was wrongly justified by the defendants, through Defendants Valley View School District's, and its hearing officer's use of expansive accusatory Hearsay in deciding to expel Roger. (Cf. *Colquitt at 866*[7]; and see statements within DF. Exh. 6). The District Court was suppose to find that the School District was in violation of Illinois law because it denied plaintiff an opportunity to confront and cross-examine his accusers. *Colquitt v. Rich Township at 866*, holds that plaintiff had a right to cross-examine his accusers. The Court did did not apply the holding from Colquitt v. Rich Township High School (see Doc. 43, p.3, 1st para.). The devasting result was a District Court opinion and order [Doc. 43] that can be interpreted as condoning the defendant school district having admitted into evidence, Hearsay and a coerced confession, both of which were violative of Roger's due process rights.

Roger's parents do not speak fluent English. The repeated denials by defendants (to requests by plaintiff and his father) to provide a translator-interpretor to Roger's parents represents that Roger was denied meaningful due

---

[7] at *298 Ill. App. 3d 856; 699 N.E.2d 1109 (1998).*

11

process as defined by the *Colquitt*[8] Court at 863. (See denials at Dist Ct. Trans. 65:1-5;*74: 3-8;*81:18-25;*105: 25;*106:1-4;*119:6-14).

Plaintiff's learning disability (Dist. Ct. Trans. 100: 15-25*101: 1-25) should have been addressed by the Court as a "protected interest" as well as a "competing claim" as defined in *Weinberger v. Romero-Barcelo at 312* . Plaintiff has been wrongly told by defendants, that he can go to Premier Academy located in Joliet, Illinois. The school caters to students who are physically dangerous to others. (Ibid.,159:6-7). Plaintiff cannot be legally[9] placed at Premier Academy in Joliet because of his learning disability. Support for this position is found at 34 C.F.R. Part 104: 104.4 and 104-33 (contained in appendix). Additionally, the sheer long distance of the school from Bollingbrook, coupled with a lack of transportation to Joliet, make it impossible for plaintiff to attend Premier Academy.

In deciding to deny plaintiff's motion for injunctive relief the District Court failed to hold that plaintiff was denied due process, since he was not given Notice of charges for Fighting and Mob Action. (DF. Exh. 2). "The immutable minimum requisites of due process' ... 'are notice and a meaningful opportunity to be heard." See *Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985); Goldberg v. Kelly, 397 U.S. 254, 267-68, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970).*

---

[8] Colquitt v. Rich Township (1998).

[9] Title 34 C.F.R.Part 104 mandates the appropriate education for students with learning disabilities. Based upon reasonable information and belief, Premier Academy does not cater to children with learning disabilities.

12

ARGUMENT

**I.: The District Court erred by not conducting a Mathews-Eldridge analysis or eqiuvilent analysis in arriving at its decision to deny plaintiff's motion for injunctive relief.  This was an abuse of discretion.**

Standard of Review:  "To determine the nature of the proceedings and the particular [due process] procedural safeguards which need apply requires analysis of the following factors: (1) the significance of the private interest which will be affected; (2) the risk of the erroneous deprivation of that interest through the procedures used; and (3) the significance of fiscal and administrative burdens that the additional or substitute procedural safeguards would entail." Colquitt at 862;  See *Mathews v. Eldridge, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).; Santosky v. Kramer, 455 U.S. 745, 754, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982); and Stratton v. Wenona Comm. School Dist. 133 Ill. 2d 433 (1990).*[10]

The District Court's interpretation of the case law suggests that it felt that Roger was not deserving of a process affording the highest level of due process (short of a complete judicial process) to an accused.  (Doc. 43, p.2, final para). An analysis of each of the Mathew-Eldridge criteria leads to the conclusuion that the District Court was wrong.  Roger Coronado Jr. was entitled to the full panoply of due process rights, due to the gravity of what could happen to him

---

[10] Due process is a malleable phenomenon determined by the nature of the interest affected and the context in which the alleged deprivation occurs. See *Mathews v. Eldridge at 334.* The flexibility of due process is found in the type of notice which must be provided and the formality and fairness of the hearing which provides the opportunity to be heard." *Goss v. Lopez at 419 U.S. 565 at 579 (1975).*

and what did happen to him. 'The extent to which procedural due process must be afforded the receipient is influenced by the extent to which he may be 'condemned to suffer grievous loss[]'." *Goldberg v. Kelly, 397 U.S. at 262-63 (1970) quoting Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 95 L. Ed. 817, 71 S. Ct. 624 (1951).* Roger Coronado Jr. faced: punishment for violations of Illinois criminal law (Disordely Conduct and Mob action): a one year expulsion from school (interrupting his education permanently); and the stigma for his life-time, [that he would be] labeled as a criminal gang member (when he has never been a gang member [Dist. Ct. Trans. 88:9;*76:20-21]).

Had the District Court applied the Mathews-Eldridge Test in conjunction with adherence to holdings in (a). *Goldberg v. Kelly;* (b). *Joint Anti-Fascist Refugee Committee v. McGrath;* (c). *Goss v. Lopez; and* (d). *Colquitt v. Rich Township,* among other cases, the District Court would have arrived at a conclusion that it was proper to grant of plaintiff's (Roger's) motion for an injunction so to enjoin Valley View School District from enforcing the expulsion.

**The significance of the private interest which will be affected.**

There is no question that 15 year-old Roger Coronado Jr. possesses a significant interest in the uninterrupted continuation of his education. Roger has not been to school since February 7, 2008. This fact means that he is in

14

jeopardy of repeating the 9th grade.[11]  Additionally, Roger testified that he wants to become a lawyer (Dist. Ct. Trans. 77: 4-7). He stated: "...that's my dream...". His "Interest" in not having to go through life stigmatized, labeled as a criminal gang member because of Defendant Gavin's allegations (DF. Exh. 4) is rationally based and a tantamount issue.

**The risk of the erroneous deprivation of that interest through the procedures used.**

In dispute is whether the risk of erroneous deprivation of the uninterrupted continuation of Roger's education as well as his entitlement to go through life without being mislabeled and stigmatized as a criminal gang member, would have been significantly reduced by four things  having happened in his expulsion process.

A.   Roger, not having been coerced to write a confession and to sign a complaint referral (verses if he had been given Miranda rights to include an opportunity for counsel);

B.   Roger, having had an opprtunity to confront and cross-examine his accusers, Officers' Hampton and Gavin and that [if] Hearsay was held to have been inadmissible in the expulsion hearing.

---

[11] The Goss Court focused on short suspensions. It suggested that "longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." Goss, 419 U.S. at 584.

C.   Roger, not having been deprived of representation by his Spanish-speaking parents (rather, that his parents were provided an interpreter).

D.   [If] there had been an accurate (verses inaccurate) expulsion hearing record or hearing officer's report. (The existing report (DF. Exh. 6 & PF Exh. 1) is littered with inaccuracies.)

E.   [If] Roger's learning disability requiring ADA protection was recognized and attended to by Defendant Valley View School District.

**What follows is a discussion and argument as to each of the five foregoing Mathew-Eldridge factors:**

(a)   Roger not having been coerced to write a confession and to sign a complaint-referral (as to the latter:  also called a referral-complaint or Gavin's witness statement as has been identified by defendants, see DF. Exh. 4).

The District Court was tasked with determing whether or not to enjoin defendants from enforcing plaintiff's two-semester-one year expulsion from a public high school. In order to make the decision to grant or deny the injunction, the District Court had to determine whether or not plaintiff had been afforded due process in the expulsion process (not soley the expulsion hearing).[12] The confession--and Officer Hampton, represent two extremely

---

[12] Plaintiff's counsel makes a distinction between the expulsion process and the expulsion hearing. While the hearing is confined only to the actions of Valley View School District and Hearing Officer Prodehl, the hearing process encompasses the hearing and all actions taken by defendants to accomplish a one year expulsion for plaintiff. In this regard, Defendant-Officer Hampton was acting on behalf of the Valleyview School District as evinced by his possession of the complaint-referral (Dist. Ct. Trans. 66:3-25); his demand that Roger sign it as well as handwrite a confession; and that both the complaint-referral

significant variables requiring consideration by a district court in making a decision to grant or deny an injunction request.

Defendant-Hearing Officer Prodehl testified that the confession (Dist. Ct. Trans. 23:20-25*24:1-5) was used as evidence against plaintiff in deciding whether or not to expel plaintiff for one year. (Ibid.). Mr. Prodehl wrote that he used the confession in arriving at a decision to expel Roger (see DF. Exh. 6, p.2, sec. VII, labeled as "*District Hearing Officer's Findings of Fact At The Hearing for Expulsion*"). Determining whether or not plaintiff was entitled to injunctive relief, required of the District Court to have held [that] unless the confession was legally obtained and properly used as evidence against plaintiff in the expulsion hearing, there was a deprivation of plaintiff's due process rights.

Plaintiff's counsel states that where a confession was admitted into evidence and used as a basis for expulsion, as was the case in *Coronado v. Valley View School District* (the instant case), then the confession [obtained by a policeman not a school administrator] became an integral component of the due process analysis to be conducted by the District Court in deciding whether or not to grant or deny an injunction.

Standard of Review: Fundamental fairness and the Fifth Amendment demand that an illegally obtained confession is inadmissible in a school expulsion hearing where the confession can inculpate the child for a crime and

---

and confession were used as evidence against Roger in his expulsion hearing. The pleadings by plaintiff, through counsel coupled with the Court record, plainly show that plaintiff's request for injunctive relief applied to the expulsion process (not solely the expulsion hearing).

that both the police and school district intend use of the confession to deprive a child of his property right to a public education guaranteed by the U.S. Constitution and the laws of the State of Illinois. (Support for this position is found in "In" re Gault 387 U.S. 1 at 47-49; 87 S. Ct. 1428; 18 L. Ed. 2d 527 (1967)).

The District Court should have determined if Roger's confession was made [to the police] willingly, knowingly and voluntarily. Cf., G.O., 191 Ill. 2d 37 at 54; 727 N.E.2d 1003 (2000). At a minimum, in the instant case, a district Court should want to know if the confession occurred after the student was administered his Constitutional right to remain silent and a right to counsel. The Coronado Court record is devoid of any such event.

Roger was removed from his first period class on February 7, 2008 (Dist. Ct. Trans. 63: 24-25;*64 1-3) by school security and handed over to the Bollingbrook Police (Ibid.), namely, Defendant-Officer Alan Hampton. Within the high school is a police sub-station (Dist. Ct. Trans. 56: 16). There, plaintiff was imprisoned, belittled, and threatened with violence by Defendant Hampton (Dist. Ct. Trans. 67: 11-12*68:1-25*69:1-25*70: 1-12). It is necessary to note that Officer Hampton denies (Dist. CT. Trans. 58: 2-25; *59:1-11) ever having received the referral-complaint/statement (identified as DF. Exh. 4). Rather, Mr. Hampton testified that he had in his possession, a confession by Roger. (Dist. CT. Trans. 58: 2-25; *59:11).

Although Officer Hampton is not employed by the Defendant School District, he did have in his possession, suspension paperwork (plural). These were

18

a blank confession document and a referral-complaint [DF. Exh 4] filled out in part by Defendant Gavin (PF. Exh. 3; Dist. Court Trans. 65:10-11*66: 3-25*67: 1-15) and that the document alleged that (Ibid., 70: 2-21) Roger had Postured and thrown gang signs (see DF. Exh. 4).

Defendant Hampton ordered Roger to sign the referral-complaint-witness statement prepared in part by Mr. Gavin. (Dist. Ct. Trans. 66: 9-14*67: 9-15). Roger signed it. Ibid., 66:13). Then, in Roger's presence, when student Michael Clinton refused Officer Hampton's orders to sign a document, the officer shouted loudly and slammed a door onto the chair in which student Michael Clinton was sitting. (Dist. Ct. Trans. 67: 17-25*68: 1-10). Defendant Hampton then turned to Roger shouting uncontrollably and ordered Roger to write a confession. (Dist. Ct. Trans. 68: 7-25*69:14-25*70: 1-12). Roger complied. When Roger was asked at the District Court hearing what he thought would happen to him if he did not comply with Mr. Hampton's orders, Roger stated: "Probably get hit or get slammed by the door or arrested or—I don't know what would happen on that day." (Ibid. at 70:11-12).

Officer Hampton lacked Probable Cause to seize plaintiff and to ultimately cite him with violations of two Illinois laws on a basis of defendant's Exhibit No. 4, a referral-complaint of Defendant Gavin written three days earlier and that the document describes Posturing (Dist. Ct. Trans. 66: 9-25;*65:1-13).

**The risk of the erroneous deprivation interests through the procedures used [continued]:**

(b) Had Roger had the opprtunity to confront and cross-examine his accusers, Officers' Hampton and Gavin, and that [if] Hearsay had been held inadmissible in the expulsion hearing.

The holding in *Colquitt v. Rich Township (1998)*, although, not a federal case, is controlling of Coronado v. Valleyview School District. A state may give more [U.S.] Constitutional protection not less than what is required by the federal constitution. The District Court erred (Doc. 43, p. 3, 2nd line, 1st para.) in not giving deference to the state court holding [in Colquitt]. The District Court, pursuant to 28 USC 1367, had the authority to apply Illinois law, yet it did not.

The District Court wrongly held that Roger did  not have a right to cross examine his accusers (see Doc. 43, p.3, para. 1)—the Court's ruling (Doc. 43) suggests that the Court wrongly decided that the seriousness of the codemnation that would occur was not of a high degree (cf. *Colquitt v. Rich Twp.; Mathews v. Eldridge; Goldberg v. Kelly; and Joint Anti-Facist v. McGrath*). In this regard, the District Court erred.  The United States Supreme Court has held that " the extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss[]'." *Goldberg  v. Kelly, 262-63, quoting Joint Anti-Fascist Refugee Committee v. McGrath, (1951)*.  Coupling the latter cases with *Mathews v.*

*Eldridge (1976)*, Roger was about to be condemned, to suffer grevious losses; therfore, 15 year-old Roger Coronado Jr. was entitled to confront his accussers.

Roger did not and could not confront his accussers because they never showed to the expulsion hearing (Dist. Ct. Trans. 47: 13-18*6:19-21). The fact that Mr. Dettman, Officers' Gavin and Hampton were not even in the hallway(e.g., waiting outside of the hearing room), shows that Defendant Valley View School District and Mr. Prodehl never intended to involve the accusers in the hearing. By example, at the District Court hearing, Defendant Prodehl testified that he admitted into evidence, the referral-complaint(DF. Exh. 4). By illustration: *Q. [to Mr. Prodehl]l: Who is Mr. Gavin? A.   Mr. Gavin is a security officer. Q. When did you talk with him? A. I did not talk with him at the hearing. There was a written report from him* (at p.22: 1-6). Moving to page 23, lines 20-25 and page 26, lines 1-5 , showing plaintiff's counsel asking Mr. Prodehl about Mr. Gavin's referral-complaint: *Q. Do you recognize this document Mr. Prodehl—or the documents? A. Yes. Q. What are they?. A. One is the referral, student referral, in regards to Roger Coronado, and the other is a copy of the statement written by Roger Coronado. Q. Did you use either of those pieces of paper in coming to a decision as to Roger's expulsion? A. Yes, I did. Q. Both? A. I used everything that comes before me.*

Mr. Gavin was asked by plaintiff's counsel: *Q. Why didn't you go to Roger Coronado's expulsion hearing? A. There was no need to. Q.  Why not? A. Because the system is in place as it is, so we do not have to have—so this does*

21

not need to—I'm not needed to be there. Q. Okay. A. The only thing that's needed to be there is my testimony on what I saw them do…. (Dist Ct. Trans. 47:10-18).

The undersigned, Roger Coronado Jr.'s counsel, cites the *Colquitt's* Court response to similar testimony. Writing at 865: "… the admission of hearsay accusatory statements which also are bolstered by a school official's testimony that the proponent is 'reliable,' as occurred with Assistant Principal Martin's testimony, is a particularly egregious departure from the adversarial standard." *Colquitt v. Rich Twp. (1998).* Counsel for Roger states that actions of defendants in denying plaintff an opportunity to cross-examine Mr. Gavin (in particular) is a particularly egregious departure from the adversarial standard. The District Court erred and abused its discretion in not recognizing this departure.

"[A] basic tenet of our jurisprudence is that a person should receive a fair and impartial hearing, with an opportunity to offer evidence and cross-examine witnesses." *Golden Egg Club, Inc. v. Illinois Liquor Control Commission, 124 Ill. App. 2d 241, 244 (1970).* Fundamental concepts of a fair hearing include "the opportunity to be heard, the right to cross-examine adverse witnesses and to impartiality in rulings upon evidence." *Mahonie v. Edgar, 131 Ill. App. 3d 175, 179(1985).* Defendants Prodehl and Valleyview School District cannot excuse noncompliance with principles of due process.

22

In an expulsion process, "the private interest is commanding; the risk of error from the lack of adversarial testing of witnesses through cross-examination is substantial; and the countervailing governmental interest favoring the admission of hearsay statements is comparatively outweighed." See *Eldridge at 334*. Evaluation of the three Eldridge factors, therefore, compels the conclusion that the denial of plaintiff (Roger) to confront his accusers and the expansive use of accusatory hearsay in the expulsion hearing was (is) inconsistent with and violative of due process.[13] This conclusuion dictates that the District Court should have granted the plaintiff's motion for injunctive relief.

**The risk of the erroneous deprivation interests through the procedures used [continued]:**

(c) Had Roger not been deprived of representation by his Spanish speaking parents. (e.g.. if his parents had been provided an interpreter).

The District Court erred when it held that Roger's parents did not need an interpreter. (Doc. 43, p.3 final para.).

Standard of Review: "Exclusion from the educational process for more than a trivial period, and certainly if the suspension is for one year is a serious event in the life of the suspended child." *Goss v. Lopez at 736*. "An education is perhaps the most important function of state and local

---

[13] Where the accusers including the officer who obtained the confession fail to appear at the hearing, at which the confession and a complaint (Defendants' Exh. 3 & 4: Dist Ct. Trans. 11:7-14;*12: 1-3*DF. Exh. 6, page 2 sec. VII) are used against the student and that these documents form the basis of the student's expulsion in any substantial degree, then the district court must find that student was not afforded due process. Cf. *Colquitt at 865*.

governments," *Brown v. Board of Education, 347 U.S. 483, 493 (1954)* and should not be taken away without meaningful due process afforded to the accused student.  Cf. Colquitt v. Rich Twp. at 863.

Therefore, Due Process required that in order for Roger to have had a meaningful hearing (Ibid.), his parents should have been provided an interpreter who could translate English to Spanish and vice versa.

Plainly, the Mathews-Eldridge Test coupled with Goldberg show that because of the gravity of the allegations; the citation (DF. Exh. 5) for alleged criminal activity and the possible outcome of an expulsion hearing, Roger would have been best served by a lawyer fluent in English or parents fluent in English.  Conversational English or minimally fluent English describes the English speaking ability of plaintiff's parents.  (Dist. Ct. Trans. 110: 16-19;* 120: 23-25).

The repeated denials to provide a translator and interpretor to Roger's parents violated plaintiff's right to due process. There were three occassions—three distinct points (not just one) at which due process was denied to Roger as a result of his parents not able to speak fluent English. As follows: 1. Officer Hampton was asked to provide a Spanish speaking person and refused (Dist. Ct. Trans. 65:1-5);  2. Plaintiff and his father called the hearing officer in an effort to obtain an interpreter before the hearing (Dist Ct. Trans. 81:18-25); and 3. that Roger's father asked for an interpreter at the hearing (Ibid., 74: 3-8;*105: 25;*106:1-4;*119:6-14).  Roger Coronado Sr. (father), Blanca Coronado (mother) and Roger Coronado Jr.. (three people)

testified on March 13, 2008 that Defendant Prodehl not only denied Roger's parents an interpreter, but told them that they did not need an interpreter and [that] their "son" (plaintiff) was "there" if they needed an interpreter. (Ibid.). Roger does not even speak fluent Spanish (Ibid., 109: 20-22; *110: 1-5) as was testified to by his father under cross examination by defendant's counsel, Mr. Riordan. (Ibid.).

Plaintiff is a child. Because of his youth, a boy of 15, he was unable to represent himself at a hearing (conducted by Defendant-Attorney Prodehl) on a matter so grave as his continued education. Plaintiff testified that his parents do not speak sufficient English. (Dist. Ct. Trans. 74: 20-22). The parents testified before the District Court through a Spanish Speaking interpreter that they do not speak sufficient English. (Dist. Ct. Trans. 110: 16-19; 120: 23-25).

Additionally, the District Court should not have relied on Mr. Prodehl's hearsay[14] in deciding the interpreter issue and in denying plaintiff injunctive relief.

**The risk of the erroneous deprivation of interests through the procedures used [continued]:**

(d) The existence of an expulsion hearing record. (The alternative report was not sufficiently detailed, hence the District Court erred in denying injunctive relief).

---

[14] Court's reference to Mr. Prodehl having said that Mr. Lathrop said, he (Lathrop) inquired as to an interpreter, see Opinion & Order, Doc. 43, p. 3, final para.

25

Standard of Review: A hearing officer's report of an expulsion hearing must be "sufficiently detailed" in order to provide a district court a means for adequate and effective review. (CF. *Colquitt at 862*).

"The absence of a court reporter, in and of itself, is neither a denial of due process nor a denial of equal protection; there is no requirement to provide a stenographer's transcript in every case as long as there is some other means to allow for adequate and effective review." See *Griffin v. Illinois, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956); People v. Hopping, 60 Ill. 2d 246, 252-52, 326 N.E.2d 395 (1975)*." It is necessary to quote the Scott and Morgan courts (plaintiff's counsel recognizes that the use of the word men innapropraitely leaves out women): "State administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *Scott, 84 Ill. 2d at 55, quoting United States v. Morgan, 313 U.S. 409, 421, 85 L. Ed. 1429, 61 S. Ct. 999 (1941)*. In *Colquitt v. Rich Twp.*, the Court rightly held that the hearing officer's report was "sufficiently detailed to provide for adequate and effective review." *Colquitt at 862*. The District Court erred in not granting an injunction in the face of [the] many inaccuracies in Mr. Podehl's generic report (DF. Exh. 6 and PF. Exh. 1). The inaccuracies are so numerous that it was not possible for an effective review of the report. The judgment of the hearing officer (Mr. Prodehl) is in question, unlike in Colquitt. The inaccuracies in his genric report (DF. Exh. 6 & PF. Exh. 1) are as follows:

26

*(1)* Defendant Prodehl wrongly lists plaintiff as a "repeat offender," see PF. Exh. 1, p.1 which is suppose to be part of DF Exh. 6; see Dist Ct. Trans 19:4-11. The generic form-report (in particular, PF. Exh. 1, p1) has not been corrected and will not be corrected unless this Honorable Court overturns the Order of the District Court. When asked under direct examination by the undersigned attorney why he listed Roger as a "repeat offender" (when he is not a repeat offender), Mr. Prodehl's explanation was incredulous. By illustration at p. 19:4-11: *Q. Do you see the words First Time Offender Recommendation? A. Yes. Q. What is your response? A. The response is no. Q. What was Roger's first offense? A. This is a **generic** form that I use. The first time offender is used—is recommended sometimes by the school in situations where there is possession for drugs….*

Consider, Roger's teachers describe him as a respectful student; no behavior problems. (Dist. Ct. Trans. 76: 6-9).

(2) The 6-page generic report--DF. Exh. 6-- at page 2, Section IX contains words (by Defendant Valley View School District and Mr. Prodehl) that tell the reader that Roger's accusers were at the hearing. The testimony of the accusers and Mr. Prodehl show that the accusers were not present. (Dist. Ct. Trans. 47: 13-18*6:19-21).

(3) On page 3 at sec. XIX of the generic report, the statement written by Mr. Prodehl states the opportunity to be heard by the school board was on February 22, 2008, however, Mr. Prodehl made the expulsion decision on

27

February 19, 2008, directly to the plaintiff and his parents at the hearing. (See DF Exh. 6, p.4). It was Mr. Prodehl who informed Roger that he was expelled for one year. The two dates make for a confusing record. A February 25th letter from the school board to plaintiff is a mere confirmation of the February 19 decision.

(4)   At page 2, sec. X and XII of DF. Exh. 6, Mr. Prodehl wrongly wrote that Roger admitted to the charges (membership in a subversive organization; fighting; and mob action) and stated that he was lending support to friends and did a stupid thing.  Roger never made any such statement to Prodehl. Roger did not make admissions to Mr. Prodehl. (Dist. Ct. Trans. 83:22-25; *84:1-7).  Rather, Mr. Prodehl relied on the illegally coerced confession.  (Dist. Ct. Trans. 23:20-25*24:1-5).

As an illustration of the haphazard, sloppy and Constitutionally violative expulsion process, consider the inappropriate statement by Mr. Prodehl to 15 year-old Roger: "...if I' [Roger] 'hang around with pigs, I'll be full of mud." (Dist. Ct. Trans. 76: 2-5).

The District Court erred in not holding that the lack of a sufficient, accurate record (DF. Exh. 6 joined by PF. Exh. 1) for [court] review, was a violation of due process. The District Court was suppose to (but did not) balance "the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction " *Yakus v. United States, 321 U.S. 414, 440 (1944);* if the Court had

28

relied on Yakus v. U.S., the highly deficient record of the expulsion hearing would have made for a grant of Plaintiff Coronado's motion for a permanent or preliminary injunction. 'The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Hecht Co. v. Bowles at 329.*

In *Colquitt v. Rich Twp.*, there was a hearing summary. It represented sufficient evidence upon which the circuit court and appeals court could weigh whether or not the plaintiff had been afforded due process. Colquitt at 862, 863. In *Coronadov. Valley View School District, et. al.*, there is no such equivalent, rather, a standardized form that the hearing examiner by his own words calls "generic. (Dist. Ct. Trans. 19:4-11).

Plaintiff's cousnel asks the Court of Appeals that if necessary, to carve out new law--- holding that within an industrialized society, its inhabitants at a peak in use of technological processes such as computers, audio and video, requires a declaration that there is not an absolute rule that filled-out generic forms are sufficient records to enable due process in an expulsion process [where the proposed codemnation for the receipient is a loss of a public education and a life-time stigma of criminal gang association].

The purpose of 105 ILCS 5\10-22.6 is neither to prompt or cause the creation of hearing records nor to substitute as transcripts. Mr. Prodehl stated that a transcript did not exist (Dist. Ct. Trans. 23: 2-3). The District Court asserts

(Doc. 43, page 4 first full para) that the Plaintiff would need to offer support

that a more extensive record was required. Hence the plaintiff through

counsel does just that [when] he states that the holdings in *Mathews v.*

*Eldridge, Goldberg v. Kelly, and Joint Anti-Fascist Refugee Committee v.*

*McGrath* compelled the Valley View School District (because of the severity

of the condemnation that could have and did occur to plaintiff) to provide

Roger with the highest degree of due process. A filled out generic,

standardized form that was and is incomplete and inaccurate does not

sastify even the lowest serving of due process or enable for a District Court to

conduct a sufficient review of the hearing.[15]

**The risk of the erroneous deprivation of interests through the procedures**
**used [continued]:**

(e) If Roger did not have a learning disability requiring ADA protection.

(Roger does have a learning disability).

Roger has a learning disability (Dist. Ct. Trans. 100: 15-25*101: 1-25) that

requires ADA attention. The Rehabilitation Act of 1973, through 34 C.F.R., parts

104.4 and 104.33 (see appendix of this brief), requires the Defendant School

District to provide plaintiff an appropriate education including the

establishment of Individualized Lesson Plan (IEP). Plaintiff has yet to receive an

IEP from Defendant School District. Defendant school District is aware of the

---

[15] Plaintiff's counsel's interpretation of *Goss v. Lopez*, the Fifth Amendment and Fourteenth
Amendment is that when a child is in jeopardy of serious loss, a quasi-judicial process with
an inflexible application of the Due Process is insufficient.

disability. If the Defendant School District recognized plaintiff's learning disability, Roger would not have been slated for Premier Academy, rather, placed in a Special Education program. Plaintiff was diagnosed by medical doctor, long before the start of the 2007-08 school year, with a learning disability and that he was placed on medication for the disability.

The District Court record is lacking in information as to plaintiff's learning disability. Plaintiff's lawyer attempted, in questioning of Dr. Capetta in the District Court hearing, to illicit the necessary information from plaintiff's tutor, Dr. Cappetta. (Dist. Ct. Trans. pp.94-103).

Final prong of the Mathews-Eldridge test: **The significance of fiscal and administrative burdens that the additional or substitute procedural safeguards would entail."**

It goes without saying that the defendants could have used a mere tape recorder to record Roger's expulsion hearing. The Mathews v. Eldridge Test when applied to the facts in the instant case implies that a mere tape recorder or equivalent means by which to record the proceedings of a grave event as an expulsion hearing, would not be an imposition or a burden on a school district. By comparison, the Goss Court wrote: "...we have imposed requirements which are, if anything, less than a fair-minded school principal would impose upon himself in order to avoid unfair suspensions." *Goss at 583.*

## II. Due Process requires Indentification of a Wrongful Act

31

In the opinion of the plaintiff's counsel, based upon the District Court transcript, Roger and the District Court have not been told what Roger did wrong verses what a group of students allegedly did wrong.[16],[17]

Standard of Review: In determining whether or not Roger had been afforded Due Process, the District Court had an obligation to make sure that the defendants were able to identify the wrong that plaintiff allegedly committed. (Cf. Goss v. Lopez at 80, FN 9).

The Goss Court wrote, "...the student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences." Goss at 579. " The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair. Unfortunately, that is not the case, and no one suggests that it is. Disciplinarians, although proceeding in utmost good faith, frequently act on

---

[16] The District Court judge, at several points in the Court's hearing, asked plaintiff's counsel to move on or that the Court sustained defense attorney's objections, where plaintiff's counsel pressed plaintiff's accusers, Hampton and Gavin, as well as Defendant Prodehl and the high school's Principal, Mr. Mitchem, to state what rule or law Roger had violated that represented he committed Posturing, Mob Action, Fighting or that he belonged to a subversive organization/hate group.

[17] Roger has been expelled for 1 year for having been in a fight however, the Principal, Mr. Mitchem testified:  A. "I never said he was in a fight. I said he was engaged in a mob action.  Q. Describe the mob action, please? A. A mob action involving him. A. That was described previously. The Court: Counsel, we have been around this— Witness, A. That was described. I was not at the mob action..... A. So what did he do? A. And again, I guess that it is open for interpretation because what I am hearing are two different things. I'm hearing my staff say one thing and I'm hearing Roger Coronado say another thing. I'm hearing you say that he stood up and exercised his First Amendment right to get out of the way. I am hearing my staff say that he was a willing paticipant who chose to engage in a mob action, and as a result was disciplined for that. So I guess it's for the Court to decide, in fact, whether or not he was a willing particpant or whether he was not.  (151: 8-25;*152:1-17).

the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process." Goss v. Lopez at 579, 580.

Roger's chief accusers, Defendants Gavin and Officer Hampton have not been able to offer any testimony that Roger violated a school policy or that he violated 720 ILCS 5/25-1(a)(2) and 720 ILCS 5/26-1(Dist Ct. Trans. 35: 1-25*36: 1-25; 37: 1-25; 38:1-13; 151:8-25;*152:1-17 ); yet Roger was seized by the Bollingbrook Police, cited by the police for the aforementioned crimes and then expelled from school for two semesters-one year.

By example, consider questions to Defendant Prodehl:   Q.  Describe the aggressive behavior, sir. A. There were gang signs being flashed, there were gang slogans being shouted, there were threats being shouted—Q. Please show me the gang signs. A Huh? Q. Please show me the gang signs. A. I did not see them. Mr. Riordan: Objection. By Mr. Cooper: Q. Who saw them?  A. The Security officer.  Q. Why wasn't he at the hearing. (38: 1-13).  Mr. Prodehl was asked at page 36, line 2 to name the hate group that Roger was allegedly a part.

Roger was charged and expelled for being a part of a Subversive Organization/Gang/Hate Group in addition to fighting and Mob Action (Dist. Ct. Trans., 35: 7-13; DF. Exh. 6, p4). To explain the charge of Posturing, Mr. Prodehl testified at page 36, lines 17-19: "From the information that I received, he rose

33

from the table and he stood behind a group of students that were engaged in activity towards another group."

On page 44, plaintiff's counsel asked Mr. Gavin to state what Roger Coronado did: Q.[by Mr. Cooper] What incident? A. It was a verbal altercation between Hispanic males and black males. It started to get heated. Other black males went directly towards ---behind the black males in an attempt to back them up. Q. So show me the gang signs you saw him[Roger] throw? A. I saw many gang signs. Q. I want to see the gang signs that he threw. To line 25 then over to page 45, 1-4 : Q. Please show me the gang signs that my client threw in your presence. A. I witnessed many gang signs. I don't know which one relates to which group.

The contents of the coerced handwritten confession (DF. Exh. 3) do not inculpate a person for a crime under Illinois law; therefore, Officer Hampton did not have a legal basis to cite plaintiff for crimes (namely, 720 ILCS 5/25-1(a)(2) and 720 ILCS 5/26-1).

### III. The District Court Misapplied the Requisite Variables in deciding whether or not an injunction should issue:

Standard of Review: In order for a grant of injunction, the plaintiff must show: 1) That there is a substantial likelihood of success on the merits of the case; 2)that plaintiff faces a substantial threat of *irreparable damage or injury* if the injunction is not granted; 3) there is not an adequate remedy at law (considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted); and 4)the grant of an injunction would not disserve the public interest. Cf. *Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-313, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982); Ebay Inc. v. Mercexchange, L.L.C., 547 U.S. 388 at 39 (2006).*

Success on the Merits

The District Court wrote that plaintiff (Roger) is not likely to suceed on the merits (Doc. 43. p.2). The plaintiff asserts that he can suceed on the merits since the holdings in *Colquitt, Goss, Mathews, and Joint Anti-Facist Refugee Committee* enable him to show that he was not afforded "meaningful" due process in the expulsion process.

Roger does have a likelihood of succeeding on the merits for the following reasons [found in the District Court record]: a. Roger is not a gang member and has never been a gang member (Dist. Ct. Trans. 88:9;*76:20); b. there was a witness who saw the illegal behavior by Officer Hampton toward plaintiff (Dist. Ct. Trans. 67:17); c. Roger had not had an interaction with the police until the awful and debilitating encounter with Bollingbrok Policeman Alan Hampton; d. that Roger has never had a formal disciplinary action against him until this incident (Dist. Ct. Trans. 9:19); Roger's teacher's wrote that he is a "respectful student" and "not a discipline" problem (DF. Exh 6., contents of sec.XVI); Mr. Prodehl had to concede that the allegation by him on page 5 of his report (DF. Exh. 6 and that PF. Exh. 1 should be a part of DF. Exh. 6) that Roger had

offended before, was grossly wrong, see(Dist. Ct. Trans. 19: 4-11); and; e.that there is film footage of the cafeteria helpful to plaintiff (Ibid., 160: 1-5).

The footage will show that plaintiff did not violate school policies or laws. Mr. Mitchem was aksed if he reviewed the film footage (Ibid., 160: 4) He answered: "Yes I did" at line 5; however, at pages 151 and 152, Mr. Mitchem stated that he does know what Roger did, because he, Mr. Mitchem, was not there; although, he claims that he has reviewed the film footage. (Ibid., 160:4-5). A motion for dismissal based on what could be overwhelming video proof has not been filed by the defendants. It seems reasonable to ask: Why didn't defense Attorney Riordan bring the video to the March 13, 2008 hearing in order that the District Court could adequately decide if a grant of an injunction would disserve the public interest(?).

Irreperable Harm

The Court erred in not finding that plaintiff will suffer irreparable damage or injury if the injuncton is not granted. Plaintiff has suffered irreparble injury: He has not attended school since February 7, 2008 and has been unable to gain needed credit hours. (Efforts are being made by plaintiff's counsel and parents to get plaintiff enrolled in an outside educational program.) Plaintiff might not graduate to the 10th grade because of the expulsion. Plaintiff's education has been interrupted based on an eroneous allegation (DF. Exh. 4) by a security guard, plaintiff was Posturing.

The District Court erred in its analysis of Irreperable harm. In deciding that

irreperable harm would not occur to plaintiff, the court relied on the opinion

(Ibid., 141:3) testimony of Mr. Mitchem[18] (Ibid., 141:1-7).

Placement of plaintiff, a non-gang member, into Premier Academy, an

"Alternative" school that caters to gang members (Ibid.,159:6-7) disserves the

public and is a violation of Roger's Constitutional rights and Goss v. *Lopez, 419*

*U.S. 566 (1975),* as well as 34 C.F.R. 104.4 and 104.33.[19] Dr. Capetta testified that

plaintiff has a learning disability. (Dist. Ct. Trans. 100: 15-25*101: 1-25).  Plaintiff is

ineligible for Premier Academy based on his learning disability as per  34 C.F.R.

104.4 and 104.33.

No Adequate Remedy at Law

Plaintiff is required by law to attend school. Plaintiff's parents are not

finacially situated to send Roger to a private school for as long as two semesters.

Public Disservice and Balancing

The District Court failed to balance the hardships between the plaintiff and

defendant.

---

[18] By comparison, the defense objection to the question to Dr. Cappetta as to whether he (Cappetta) knew Roger to be a gang member was not admitted into evidence—the Court holding that it was an opinion as to whether someone is a member of a gang. (Dist. Ct. Trans. 103: 4-10). Dr. Cappetta's testimony, in general, goes to irreparable injury. His testimony adequately showed the District Court that the plaintiff has significant problems when it comes to learning. (100:16-25; 101:1-12 & 19-25). Considering, Roger's academic needs in this regard, Roger has a protected interest to attend a school that will address his specific academic needs.

[19] The alternative School, Premier, is not a mainstream institution. (Dist. Ct. Trans. 159:17-22;*157:18-25;*158:20-25;*159:6-7). The school is not appropraite, adequate or equal to the education that plaintiff can receive at Bollingbrook High School. (Ibid.,159:6-7).

Standard of Review: A disciplinary policy had by a[n] [Public] Educational entity that fails to distinguish between innocent conduct and conduct threatening harm and that the policy by its vagueness enables school security guards and police to arbitrarirly restrict personal liberty and to deprive a student of a public education by way of expulsion for violation of the [vague] policy, violates substantive and procedural due process. Cf. *Chicago v. Morales, 177 Ill. 2d 440; 687 N.E.2d 53 (1997).*

Whether or not to grant or deny an injunction, a District Court must consider if the public interest will be served or disserved. *Ebay Inc. v. Mercexchange, L.L.C., 547 U.S. 388 at 39 (2006).* The District Court erred (and abused its discretion) when it denied plaintiff's motion for injunctive relief. By upholding the expulsion, the District Court condoned Valley View School District's policy prohibiting Posturing. (See DF. Exh. 4). The policy is a violation of the holding in *Chicago v. Morales.* The Valley View School District policy of Posturing is an arbitrary restriction on personal liberty and, thus, violates substantive and procedural due process. (cf. at 461).

Mr. Mitchem's testimony before the District Court is best described as speculative and uninformed. The Court's Opinion and Order (Doc 43, p.4, final para.) holds that there is clear interest in detering students "from lending support to students who are threatening or preparing to fight." (Ibid.) The District was supposed to, but did not consider Roger's protected interests. By example, Roger's interest not to be mislabeled as a criminal gang member;

38

and Roger's interest to receive a "special education" pursuant to 34 C.F.R. 104 because of his learning disability.

Roger was expelled for allegedly standing behind "friends and associates ...contained in 'this' large group." (Dist. Ct. Trans. 46: 11-17)  Mr. Gavin wrote that the plaintiff Postured. (DF. Exh. 4). It was impromper for the Bollingbrook, Illinois Police to cite Roger on February 7, 2008 (see DF. Exh. 2: and conviction document created February 19, 2008 found in DF. Exh. 6, p.4) for violations of Illinois criminal law for Roger allegedly having stood behind "friends and associates ...contained in a large group." (Dist. Ct. Trans. 46: 11-17). It was a disservice to the public for the District Court to deny plaintiff's injunctiuon and that the denial can be interpreted as holding that it was (is) legal for Roger (and other students) to be expelled from school for 1 year for having stood behind "friends and associates ...contained in a large group."[20]

In deciding for or against injunctive relief a district court must consider the balance of hardships between the plaintiff and defendant; as well as whether the public will be disserved.  Unfortunately, what has occurred by the denial of an injunction to plaintiff is that the public is disserved by a school policy supported by the Bollingbrook Police as evined by citing plaintiff for violations of Illinois compiled statutes (DF. Exh. 5), and that the criminal citations were based

---

[20]The bottom half of the complaint-referral form (DF. Exh. 4) expounds on the nature of the charges against Roger and was filled out by Dean Dettman after Mr. Gavin had filled out the top half (Dist. Ct. Trans. 46:6-9;*46:23-25).  Mr. Dettman was not an eyewitness to alleged wrongful behavior.

on a document, DF. Exh. 4, accusing Roger of Posturing—And that, the

Posturing policy, as applied, is vague and fails to distinguish between innocent

conduct and conduct threatening harm.  Plaintiff testified at nauseum that he

is not a gang member and did not commit violations of school policy or of the

Illinois Compiled statutes.  (Dist. Ct. Tran. 89:19-25;*90:1-2;*77:1-23;*78:3;*83:18-

25;*85:23-35;*86:1-23;*87:1-2;*88:8-13;*89:1-25).

### IV: Notice of charges.

The District Court should have granted plaintiff's motion for injunctive relief,

since Plaintiff was not given adequate Notice.  In deciding to deny plaintiff's

motion for injunctive relief the District Court failed to hold that plaintiff was

denied due process because he was not given Notice of charges for Fighting

and Mob Action (DF. Exh. 2).

Standard of Review:  An immutable minimum requisite of due process is

notice.  See *Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546, 84 L.

Ed. 2d 494, 105 S. Ct. 1487 (1985); Goldberg v. Kelly, 397 U.S. 254, 267-68, 25 L.

Ed. 2d 287, 90 S. Ct. 1011 (1970).*

Plaintiff was written-up by school security for Posturing (DF. Ex. 4). Plaintiff

received Notice (DF. Exh. 2) of a hearing that said that he was being tried for

membership in a Subversive Organization. (Ibid.). The Notice did not say that he

would be heard as to particpating in a Mob Action and Fighting.  When plaintiff

arrived at the hearing, he was accused and expelled for a Mob Action, Fighting,

and Subversive Organizations/Hate Groups. (DF. Exh. 6, p.4; PF. Exh. 1) The

prosecution had as a basis, the act of "Posturing" (see DF. Exh. 4). Plaintiff was deprived of his due process and opprtunity to adquately prepare to defend himself for charges of fighting and mob action.

## CONCLUSION

The District Court misapplied the requisite variables for deciding whether or not an injunction should be granted or denied; wrongly held that plaintiff was not entitled to cross examine his accusesrs; and that his Spanish speaking parents were not entitled to an interprter in order that plaintiff could be represented by his parents, therefore, afforderd meaningful due process. The decision (Doc. 43) not to enjoin defendant school district from enforcing a two semester-one year expulsion failed to consider the 15 year-old plaintiff's protected [constitutional] interests to a public education and [that he was entitled] to more than a informal expulsion/suspension process with limited due process safeguards.

The District Court decision that upholds Roger's expulsion disserves the public interest and lends support to the unconstitutional and vague Posturing policy (whether written or unwritten) of the Valley View School District. The policy enables for a far too broad interpretation of a "Mob Action" while making way for capricious and arbitrary law enforcement by school security and police (especially as physical characteristics fit the profile of a gang member).

41

Because of Defendant-Security Guard Gavin's allegation that plaintiff "Postured," an awful an un-American process was commenced in which plaintiff was subjected to the wrath of a police officer and [public] high school officials. His punishment includes that he is wrongly stigmatized for the rest of his life, with the label of criminal gang member. Yet, there was not testimony presented before the U.S. District Court that paintiff, by standing in place in which there were groups of black and Mexican students, violated a school policy of Posturing or the laws of the state of Ilinois, namely Disorderly Conduct and Mob Action (the crimes for which he was cited by Bollingbrook Poice). The Valley View School District policy of Posturing and its application by the Bollingbrook Police offends the holding in *Chicago v. Morales*[21] and deprived plaintiff of substantive and procedural due process.

WHEREFORE, Plaintiff respectfully asks this Court to reverse the decision of the U.S. District Court's denial of plaintiffs' motion for injunctive relief.

RESPECTFULLY SUBMITTED, 12 May 2008, By

s\Christopher C. Cooper, ESQ., PhD., Counsel for Plaintiff-Appellant
PO Box 1225, Hammond, IN 46325 or
3700 W. 103rd Street, Chicago, IL 60655
Tel: 312 371 6752 or 219 228 4396  FAX: 866 334 7458;
E-Mail: cooperlaw3234@gmail.com

---

[21] *177 Ill. 2d 440; 687 N.E.2d 53 (1997)*