## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)

The undersigned, counsel of record for the Plaintiff-Appellant, furnishes the following in compliance with F.R.A.P Rule 32(a)(7): I hereby certify that to the best of my ability and average computer knowledge, this brief conforms to the rules contained for a brief produced with a proportionally spaced font. The length of this brief is approximately 10396 words not including the Proof of Service, 32(a) and 30(d) statements combined with the brief. Counsel has not counted words of documents compromising the short appendix under category A.

Dated:  12 May, 2008.


s\CHRISTOPHER C. COOPER
MAILING ADDRESS:
DR. CHRISTOPHER C. COOPER,
3700 WEST 103RD STREET
CHICAGO, Illinois 60655


Attorney for Plaintiff-Appellant
s\CHRISTOPHER C. COOPER




(312) 371-6752 (telephone)
(866) 334-7458 (facsimile)
E-MAIL: cooperlaw3234@gmail.com

PROOF OF SERVICE

-

The undersigned, counsel for the Plaintiff-Appellant hereby certifies that on May 12, 2008 the foregoing brief was filed on ECF and all defendants are registered E-filers. Hard copies will be placed into the mail on or before May 13, 2008 addressed to Defendants' attorneys, Mr. Penrose and Mr. Riordan.

-

Dated: 12 May, 2008.


s\CHRISTOPHER C. COOPER
MAILING ADDRESS:
DR. CHRISTOPHER C. COOPER,
3700 WEST 103RD STREET
CHICAGO, Illinois 60655


Attorney for Plaintiff-Appellant
s\CHRISTOPHER C. COOPER




(312) 371-6752 (telephone)
(866) 334-7458 (facsimile)
E-MAIL: cooperlaw3234@gmail.com

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that he reasonably believes that he has complied with Circuit Rule 30(a) and (b).

s\Christopher Cooper, 12 May 2008

# APPENDIX

A.1: Memorandum Opinion and Order, Document 43

A.2: ECF 42, Minute Order (Denies Motion)

A.3: 34 CFR 104.4 & 104.33 (3 pages)

A.4: 720 ILCS 5/25-1(a)(2): Mob Action & 720 ILCS 5/26-1: Disorderly Conduct.

A.5: 105 ILCS 5\10-22.6 (3 pages)



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ROGER CORONADO, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 1254 |
| v. ) | |
| ) | Judge John W. Darrah |
| VALLEYVIEW PUBLIC SCHOOL ) | |
| DISTRICT, 365-U; UNIDENTIFIED ) | |
| BOLINGBROOK POLICEMAN; ) | |
| DON LAVERTY; T. GAVIN; and ) | |
| STEVEN PRODEHL, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Currently pending is Plaintiff Roger Coronado Jr.'s motion for injunctive relief. Plaintiff

was expelled from Bolingbrook High School after a hearing, based on his participation in a

confrontation between several black and Hispanic male students in the school cafeteria during a

lunch period. Plaintiff seeks a Court Order requiring Defendant Valleyview Public School

District to convene a second hearing regarding Plaintiff's expulsion and to lift the expulsion

order until that hearing takes place. On March 13, 2008, the parties appeared before this Court at

an evidentiary hearing, at which Plaintiff and Defendants called several witnesses who testified

regarding the events leading up to Plaintiff's expulsion. Both sides have submitted written

closing arguments.

A party seeking a preliminary injunction must show: "(1) they are reasonably likely to

succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm

which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the

injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village*

*of Washington Park*, 378 F.3d 613, 619 (7th Cir. 2004). Here, Plaintiff's motion for injunctive relief must be denied because (1) Plaintiff can show no reasonable likelihood of success on the merits and (2) the injunction would harm the public interest.

The pre-expulsion hearing was conducted by the board before an independent hearing officer. The Plaintiff and his parents were present, and the written charges forming the basis for the expulsion were presented to the Plaintiff and his parents. Plaintiff argues that Defendants violated his due process right to an expulsion hearing in that he was not permitted to confront his accusers, no interpreter was provided for his parents – who Plaintiff claims speak limited English – and Defendants did not keep an adequate record of the hearing.

The Seventh Circuit addressed the due process requirements for expelling a student in *Remer v. Burlington Area School District*, 286 F.3d 1007 (7th Cir. 2002) (*Remer*). In *Remer*, the court summarized the due process requirements for expulsion procedures: "To comport with due process, expulsion procedures must provide students with an opportunity to be heard." *Remer*, 286 F.3d at 1010 (citing *Linwood v. Board of Educ. of the City of Peoria*, 463 F.2d 763 (7th Cir. 1972) (*Linwood*)). However, the proceedings need not "take the form of a judicial or quasi-judicial trial." *Remer*, 286 F.3d at 1010 (quoting *Linwood*, 463 F.3d 770). "As long as the student is given notice of the charges against him, notice of the time of the hearing and a full opportunity to be heard, the expulsion procedures do not offend due process requirements." *Remer*, 286 F.3d at 1010-11 (citing *Betts v. Board of Educ. of the City of Chicago*, 466 F.2d 629 (7th Cir. 1972) (*Betts*)).

2

Plaintiff first argues that Defendants were required to afford him the opportunity to confront his accusers at the expulsion hearing. Plaintiff cites *Colquitt v. Rich Township High School District*, 1998 WL 476734 (Ill. App. 1st Dist. 1998), in support of his contention. However, the overwhelming majority of courts that have addressed the question have held that a student facing expulsion does not have such a right. *See e.g. Witvoet v. Hersher Community Unit School Dist. No. 2*, 1998 WL 156916 (C.D. Ill. 1998); *Wagner v. Fort Wayne Community Schools*, 255 F.Supp.2d 915, 926 (N.D. Ind. 2003); *B.S. v. Board of Trustees, Fort Wayne Community Schools*, 255 F.Supp.2d 891, 900 (N.D. Ind. 2003). Furthermore, the evidence presented by Defendants at the evidentiary hearing shows that, during the hearing, Plaintiff did not dispute that he had engaged in the alleged conduct. Steven Prodehl, the hearing officer, testified that Plaintiff admitted to the alleged conduct. Prodehl's written report also indicates that Plaintiff admitted to the alleged conduct. Where the student admits the conduct with which he or she is charged, "the function of procedural protections in insuring a fair and reliable determination of the retrospective factual question . . . is not essential." *Betts*, 466 F.2d at 633. Thus, there was no violation of due process on account of any lack of opportunity to cross-examine.

Plaintiff next argues that Defendants should have provided an interpreter for his parents, who he claims speak limited English. However, the evidence in this case shows that an interpreter was not needed. Prodehl testified that, at the hearing, Rob Lathrope, Dean of Bolingbrook High School, asked Plaintiff's parents if they needed an interpreter and that Plaintiff's father said that they did not. Prodehl also testified that Plaintiff's parents asked questions at the hearing. Furthermore, Prodehl's report indicates that Plaintiff's father made a

3

statement at the hearing regarding Plaintiff's education, activities and future plans as well as his own views of the school's efforts to combat gang activity. Thus, the Court finds that an interpreter was not necessary in this case.

Finally, Plaintiff argues that Defendants did not keep adequate records of the hearing. Illinois law requires that the hearing officer "report to the board a written summary of the evidence heard at the meeting." 105 ILCS 5/10 - 22.6. Here, Prodehl created a six-page report summarizing the events at the hearing. Plaintiff has not offered any support for his view that a more extensive written record was required.

The injunction Plaintiff seeks would harm the public interest. Defendants have a clear interest in protecting the ability to maintain order in the school through the use of suspensions and expulsions. James Mitchell, the principal of Bolingbrook High School, testified that there are presently 3,700 students in the school, that approximately one third is black, one third is Hispanic and one third is white, and that there are between seven to nine street gangs active in the school. Mitchell related the danger to students posed by altercations between large numbers of students and the importance of preventing small-scale confrontations between students from growing into these more serious events. Because of this, Mitchell testified, it is necessary to deter students from backing or lending support to students who are threatening or preparing to fight. Considering Mitchell's testimony, it is clear that Defendants require the authority to punish conduct such as that of Plaintiff if they are to provide a safe school environment. To order Defendants to readmit Plaintiff would diminish that authority and could threaten the safety of students.

4

For the reasons stated above, Plaintiff has not shown any violation of his due process rights and has, therefore, failed to show any reasonable likelihood of success on the merits. Furthermore, Defendants have shown that granting Plaintiff's motion for injunctive relief would harm the public interest. Therefore, Plaintiff's motion for injunctive relief is denied.

Dated: April 3, 2008

JOHN W. DARRAH
United States District Court Judge

5

A.2: ECF 42, Minute Order
(Denies Motion)

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | John W. Darrah |
|---|---|---|---|
| **CASE NUMBER** | 08 C 1254 | **DATE** | 4/3/2008 |
| **CASE TITLE** | Roger Coronado, Jr. vs. Valleyview Public School District, et. al. | | |

## DOCKET ENTRY TEXT

For the reasons stated in the attached memorandum opinion and order, plaintiff has not shown any violation of his due process, rights and has, therefore, failed to show any reasonable likelihood of success on the merits. Furthermore, defendants have shown that granting plaintiff's motion for injunctive relief would harm the public interest. Therefore, plaintiff's motion for injunctive relief is denied [5]. Enter Memorandum Opinion and Order.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

| | Courtroom Deputy Initials: | MF |
|---|---|---|

08C1254 Roger Coronado, Jr. vs. Valleyview Public School District, et. al.

Page 1 of 1

A.3: 34 CFR 104.4 & 104.33
(3 pages)

### TITLE 34 EDUCATION

SUBTITLE B REGULATIONS OF THE OFFICES OF THE DEPARTMENT OF EDUCATION
CHAPTER I -- OFFICE FOR CIVIL RIGHTS, DEPARTMENT OF EDUCATION
PART 104 -- NONDISCRIMINATION ON THE BASIS OF HANDICAP IN PROGRAMS OR
ACTIVITIES RECEIVING FEDERAL FINANCIAL ASSISTANCE

104.4 Discrimination prohibited.

(a) *General.* No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance.

(b) *Discriminatory actions prohibited.* (1) A recipient, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:

(i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others;

(iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others;

(v) Aid or perpetuate discrimination against a qualified handicapped person by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the recipients program or activity;

(vi) Deny a qualified handicapped person the opportunity to participate as a member of planning or advisory boards; or

(vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

(2) For purposes of this part, aids, benefits, and services, to be equally effective, are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs.

(3) Despite the existence of separate or different aid, benefits, or services provided in accordance with this part, a recipient may not deny a qualified handicapped person the opportunity to participate in such aid, benefits, or services that are not separate or different.

(4) A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

(5) In determining the site or location of a facility, an applicant for assistance or a recipient may not make selections (i) that have the effect of excluding handicapped persons from, denying them the benefits of, or otherwise subjecting them to discrimination under any program or activity that receives Federal financial assistance or (ii) that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the program or activity with respect to handicapped persons.

(6) As used in this section, the aid, benefit, or service provided under a program or activity receiving Federal financial assistance includes any aid, benefit, or service provided in or through a facility that has been constructed, expanded, altered, leased or rented, or otherwise acquired, in whole or in part, with Federal financial assistance.

(c) *Aid, benefits or services limited by Federal law.* The exclusion of nonhandicapped persons from aid, benefits, or services limited by Federal statute or executive order to handicapped persons or the exclusion of a specific class of handicapped persons from aid, benefits, or services limited by Federal statute or executive order to a different class of handicapped persons is not prohibited by this part.

104.33 Free appropriate public education.

(a) *General.* A recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

(b) *Appropriate education.* (1) For the purpose of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of 104.34, 104.35, and 104.36.

(2) Implementation of an Individualized Education Program developed in accordance with the Education of the Handicapped Act is one means of meeting the standard established in paragraph (b)(1)(i) of this section.

(3) A recipient may place a handicapped person or refer such a person for aid, benefits, or services other than those that it operates or provides as its means of carrying out the requirements of this subpart. If so, the recipient remains responsible for ensuring that the requirements of this subpart are met with respect to any handicapped person so placed or referred.

(c) *Free education* -- (1) *General.* For the purpose of this section, the provision of a free education is the provision of educational and related services without cost to the handicapped person or to his or her parents or guardian, except for those fees that are imposed on non-handicapped persons or their parents or guardian. It may consist either of the provision of free services or, if a recipient places a handicapped person or refers such person for aid, benefits, or services not operated or provided by the recipient as its means of carrying out the requirements of this subpart, of payment for the costs of the aid, benefits, or services. Funds available from any public or private agency may be used to meet the requirements of this subpart. Nothing in this section shall be construed to relieve an insurer or similar third party from an otherwise valid obligation to provide or pay for services provided to a handicapped person.

(2) *Transportation.* If a recipient places a handicapped person or refers such person for aid, benefits, or services not operated or provided by the recipient as its means of carrying out the requirements of this subpart, the recipient shall ensure that adequate transportation to and from the aid, benefits, or services is provided at no greater cost than would be incurred by the person or his or her parents or guardian if the person were placed in the aid, benefits, or services operated by the recipient.

(3) *Residential placement.* If a public or private residential placement is necessary to provide a free appropriate public education to a handicapped person because of his or her handicap, the placement, including non-medical care and room and board, shall be provided at no cost to the person or his or her parents or guardian.

(4) *Placement of handicapped persons by parents.* If a recipient has made available, in conformance with the requirements of this section and 104.34, a free appropriate public education to a handicapped person and the person's parents or guardian choose to place the person in a private school, the recipient is not required to pay for the person's education in the private school. Disagreements between a parent or guardian and a recipient regarding whether the recipient has made a free appropriate public education available or otherwise regarding the question of financial responsibility are subject to the due process procedures of 104.36.

(d) *Compliance.* A recipient may not exclude any qualified handicapped person from a public elementary or secondary education after the effective date of this part. A recipient that is not, on the effective date of this regulation, in full compliance with the other requirements of the preceding paragraphs of this section shall meet such requirements at the earliest practicable time and in no event later than September 1, 1978.

3

A.4:
720 ILCS 5/25-1(a)(2): Mob
Action

720 ILCS 5/26-1: Disorderly
Conduct.

## ARTICLE 25. MOB ACTION AND RELATED OFFENSES

(720 ILCS 5/25-1) (from Ch. 38, par. 25-1)

Sec. 25-1. Mob action.

(a) Mob action consists of any of the following:

(1) The use of force or violence disturbing the

public peace by 2 or more persons acting together and without authority of law; or

(2) The assembly of 2 or more persons to do an

unlawful act; or

(3) The assembly of 2 or more persons, without

authority of law, for the purpose of doing violence to the person or property of any one supposed to have been guilty of a violation of the law, or for the purpose of exercising correctional powers or regulative powers over any person by violence.

(b) Mob action as defined in paragraph (1) of subsection (a) is a Class 4 felony.

(c) Mob action as defined in paragraphs (2) and (3) of subsection (a) is a Class C misdemeanor.

(d) Any participant in a mob action which shall by violence inflict injury to the person or property of another commits a Class 4 felony.

(e) Any participant in a mob action who does not withdraw on being commanded to do so by any peace officer commits a Class A misdemeanor.

(f) In addition to any other sentence that may be imposed, a court shall order any person convicted of mob action to perform community service for not less than 30 and not more than 120 hours, if community service is available in the jurisdiction and is funded and approved by the county board of the county where the offense was committed. In addition, whenever any person is placed on supervision for an alleged offense under this Section, the supervision shall be conditioned upon the performance of the community service.

This subsection does not apply when the court imposes a sentence of incarceration.

(Source: P.A. 88-558, eff. 1-1-95; 89-8, eff. 3-21-95.)

(720 ILCS 5/Art. 26 heading)

## ARTICLE 26. DISORDERLY CONDUCT

(720 ILCS 5/26-1) (from Ch. 38, par. 26-1)

Sec. 26-1. Elements of the Offense.

(a) A person commits disorderly conduct when he knowingly:

(1) Does any act in such unreasonable manner as to

alarm or disturb another and to provoke a breach of the peace; or...

Source: http://www.ilga.gov/legislation/ilcs/ilcs, May 12, 2008

# A.5: 105 ILCS 5\10-22.6

(3 PAGES)

(105 ILCS 5/10-22.6) (from Ch. 122, par. 10-22.6)

Sec. 10-22.6. Suspension or expulsion of pupils; school searches.

(a) To expel pupils guilty of gross disobedience or misconduct, and no action shall lie against them for such expulsion. Expulsion shall take place only after the parents have been requested to appear at a meeting of the board, or with a hearing officer appointed by it, to discuss their child's behavior. Such request shall be made by registered or certified mail and shall state the time, place and purpose of the meeting. The board, or a hearing officer appointed by it, at such meeting shall state the reasons for dismissal and the date on which the expulsion is to become effective. If a hearing officer is appointed by the board he shall report to the board a written summary of the evidence heard at the meeting and the board may take such action thereon as it finds appropriate.

(b) To suspend or by regulation to authorize the superintendent of the district or the principal, assistant principal, or dean of students of any school to suspend pupils guilty of gross disobedience or misconduct, or to suspend pupils guilty of gross disobedience or misconduct on the school bus from riding the school bus, and no action shall lie against them for such suspension. The board may by regulation authorize the superintendent of the district or the principal, assistant principal, or dean of students of any school to suspend pupils guilty of such acts for a period not to exceed 10 school days. If a pupil is suspended due to gross disobedience or misconduct on a school bus, the board may suspend the pupil in excess of 10 school days for safety reasons. Any suspension shall be reported immediately to the parents or guardian of such pupil along with a full statement of the reasons for such suspension and a notice of their right to a review, a copy of which shall be given to the school board. Upon request of the parents or guardian the school board or a hearing officer appointed by it shall review such action of the superintendent or principal, assistant principal, or dean of students. At such review the parents or guardian of the pupil may appear and discuss the suspension with the board or its hearing officer. If a hearing officer is appointed by the board he shall report to the board a written summary of the evidence heard at the meeting. After its hearing or upon receipt of the written report of its hearing officer, the board may take such action as it finds appropriate.

(c) The Department of Human Services shall be invited to send a representative to consult with the board at such meeting whenever there is evidence that mental illness may be the cause for expulsion or suspension.

(d) The board may expel a student for a definite period of time not to exceed 2 calendar years, as determined on a case by case basis. A student who is determined to have brought a weapon to school, any school-sponsored activity or event, or any activity or event which bears a reasonable relationship to

school shall be expelled for a period of not less than one year, except that the expulsion period may be modified by the superintendent, and the superintendent's determination may be modified by the board on a case by case basis. For the purpose of this Section, the term "weapon" means (1) possession, use, control, or transfer of any gun, rifle, shotgun, weapon as defined by Section 921 of Title 18, United States Code, firearm as defined in Section 1.1 of the Firearm Owners Identification Act, or use of a weapon as defined in Section 24-1 of the Criminal Code, (2) any other object if used or attempted to be used to cause bodily harm, including but not limited to, knives, brass knuckles, or billy clubs, or (3) "look alikes" of any weapon as defined in this Section. Expulsion or suspension shall be construed in a manner consistent with the Federal Individuals with Disabilities Education Act. A student who is subject to suspension or expulsion as provided in this Section may be eligible for a transfer to an alternative school program in accordance with Article 13A of the School Code. The provisions of this subsection (d) apply in all school districts, including special charter districts and districts organized under Article 34.

(e) To maintain order and security in the schools, school authorities may inspect and search places and areas such as lockers, desks, parking lots, and other school property and equipment owned or controlled by the school, as well as personal effects left in those places and areas by students, without notice to or the consent of the student, and without a search warrant. As a matter of public policy, the General Assembly finds that students have no reasonable expectation of privacy in these places and areas or in their personal effects left in these places and areas. School authorities may request the assistance of law enforcement officials for the purpose of conducting inspections and searches of lockers, desks, parking lots, and other school property and equipment owned or controlled by the school for illegal drugs, weapons, or other illegal or dangerous substances or materials, including searches conducted through the use of specially trained dogs. If a search conducted in accordance with this Section produces evidence that the student has violated or is violating either the law, local ordinance, or the school's policies or rules, such evidence may be seized by school authorities, and disciplinary action may be taken. School authorities may also turn over such evidence to law enforcement authorities. The provisions of this subsection (e) apply in all school districts, including special charter districts and districts organized under Article 34.

(f) Suspension or expulsion may include suspension or expulsion from school and all school activities and a prohibition from being present on school grounds.

(g) A school district may adopt a policy providing that if a student is suspended or expelled for any reason from any public or private school in this or any other state, the student must complete the entire term of the suspension or expulsion before being admitted into the school district. This

policy may allow placement of the student in an alternative
school program established under Article 13A of this Code, if
available, for the remainder of the suspension or expulsion.
This subsection (g) applies to all school districts, including
special charter districts and districts organized under
Article 34 of this Code.
(Source: P.A. 92-64, eff. 7-12-01.)

Source: http://www.ilga.gov/legislation/ilcs, May 12, 2008