IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Coronado, Roger Jr. by and through his next friend, Shelley Gilbert<br>　　　Plaintiff,<br>v.<br>Valleyview Public School District, 365-U<br>Alan Hampton, Bollingbrook Police, Ind.-Off Cap.<br>Don Laverty, Off.-Indiv. Capacities<br>Timothy Gavin, Off.-Indiv. Capacities<br>Steven Prodehl, Off.-Indiv. Capacities<br>　　　Defendants. | )<br>)<br>)Civil Action: 08cv1254<br>)Judge St. Eve<br>)Magistrate Judge Schenkier<br>)<br>)<br>)<br>)<br>) |

<u>PLAINTIFF'S RESPONSE TO MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ALAN HAMPTON IN HIS INDIVIDUAL AND OFFICIAL CAPACITY FOR PARTIAL DISMISSAL OF PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

　　　NOW COMES Plaintiff Roger Coronado Jr., by and with his Next Friend, Shelley Gilbert, both through Counsel, Christopher C. Cooper. They respond to Defendant Alan Hampton's motion and memorandum of law (Doc. 68 & 69) for partial dismissal of plaintiff's second amended complaint. Through counsel (and because of Roger's infancy he is referred to as Roger at many times in this pleading), they state as follows:

<u>In response to the defendant's Motion</u>

1.  **RESPONSE TO Def.'s para. 1-5**: Plaintiff filed a Complaint on March 1, 2008. An Amended Complaint on April 6, 2008 and a Second Amended Complaint on April 26, 2008. The Amended Complaint included additional counts. By Order of the Court, the Second Amended Complaint was for the purpose of adding a "Next Friend." Substantive Changes were not authorized by the court. The undersigned did as instructed therefore, he did not add counts. Plaintiff believes that the Second Amended properly pleads issues.

2.  **RESPONSE TO Def.'s para. 6:** Dispute

3.  **RESPONSE TO Def.'s para. 6:** Dispute

<u>In response to the defendant's Memorandum of Law</u>

1.  **RESPONSE TO Def.'s Introduction, para.1-3 p.2**: Please see response to plaintiff's Paragraph 1 under Response to Defendant's Motion.

2.  **RESPONSE TO PARAGRAPH 4, p.2**: Relevant Count, No. I. Plaintiff's lawsuit does raise a recognizable First Amendment issue. When Roger stood up, he had a message to convey and that such message is protected speech as defined by <u>Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105</u>

1

L.Ed.2d 342 (1989). Officer Hampton is wrong when he argues that a police officer is absolved of liability for assaulting a child if the assault occurred in a high school building. As to plaintiff's count of False Imprisonment, Wallace by Wallace v. Batavia School District 101, 68 F.3d 1010 (7th Cir. 1995) holds that in the context of a public school… a seizure in violation of the Fourth Amendment occurs when the restriction of liberty is unreasonable under the circumstances then existing and apparent." Id. at 1014. In the instant lawsuit, Officer Hampton is sued in his individual capacities. Mr. Hampton is not entitled to qualified immunity that he testified that he participated in plaintiff's expulsion process (Dist. Ct. Trans. 124: 2-7; 125: 11-13; 125: 22-25; 57: 10-25; 58: 1-25; 108: 14-19); and that telephone records will show that Officer Hampton called Roger's mother and then his father (Dist Ct. Trans. 64: 14-25; 108: 14-19).

3.   **RESPONSE TO PARAGRAPH 5, p.2**:  Counts V and VI do not apply to Officer Hampton. As to Count VI, Plaintiff is permitted to bring a cause of action under Ill. Const. 1970, art. X, §1 with a basis in race. The holding in Aurora East v. Cronin (1982) does not prohibit a plaintiff from using Article X to assert racial discrimination. Count VII satisfies FRCP 8(d)(2): "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Count IX is properly plead. There is not a prohibition against a count of assault under color of law (42 USC 1983) against a policeman in his individual capacities.[1]

 Counts X, and XII are properly plead. Plaintiff had a right to counsel and to remain silent. In re Gault 387 U.S. 1 at 47-49; 87 S. Ct. 1428; 18 L. Ed. 2d 527 (1967). Plaintiff had these rights since there was intent by all defendants to inculpate the child-plaintiff (especially by way of confession coerced by Officer Hampton) for crimes 720 ILCS 5/25-1(a)(2) (Mob Action); and 720 ILCS 5/26-1 (Disorderly Conduct). (Ibid.) and  G.O., 191 Ill. 2d 37; 727 N.E.2d 1003 (2000). Plaintiff should have been adminsitered Fifth Amendment Rights by Officer Hampton:  "…. the availability of the privilege' –Fifth Amendment—'does not turn upon the type of proceeding' (as Defendant Hampton's counsel wrongly instructs the Court in his paragraph 5 under Intro.) 'in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." In re Gault at 49.

---

[1] By violence on another student and threats of violence to Roger, Officer Hampton coerced a confession from the 15 year-old plaintiff. Dist. Ct. Trans. 70:9-12;*65:6-11;*67:21-25l*68:1-10.

"The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory." (Ibid.).[2]

Count XIII for Defamation under Illinois law was plead properly. Officer Hampton is not an "official" as defined in Barr v. Mateo 360 U.S. 564, 578, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) and in Blair v. Walker, 64 Ill.2d 1, 10, 349 N.E.2d 385 (1976); and Officer Hampton made statements that are not legitimately related to matters committed to his responsibility (e.g., statements as to Roger's level of intellect). Count XIV is withdrawn by plaintiff. Count XV applies to the School District not Officer Hampton. Lewis v. Spagnolo, 186 Ill. 2d 198; 710 N.E.2d 798; 1999 Ill. LEXIS 666; 238 (1999) stands for the proposition that an individual can bring a race-based Title X action.

4.  **RESPONSE TO Def.'s Sec. II, para 1-3, p.3**: In the named paragraphs, defendant provides his interpretation of the standard of dismissal under Bell Atlantic. Plaintiff respectfully disagrees with some parts of the explanation and that plaintiff shows in his responses to defendant's paragraphs that follow, that he [plaintiff] has satisfied FRCP 12(b)(6) an FRCP 8(a)(2) in his Complaint.

5.  **RESPONSE TO PARAGRAPH Def.'s Sec. III, para 1, p.4**: No Dispute.

6.  **RESPONSE TO PARAGRAPH 2, p.4**: Plaintiff has a learning disability (Dist. Ct. Trans. 100: 15-25*101: 1-25). Plaintiff has been wrongly told by defendants, that he can go to Premier Academy located in Joliet, Illinois. The school caters to students who are physically dangerous to others. (Ibid.,159:6-7). Plaintiff cannot be legally[3] placed at Premier Academy in Joliet because of his learning disability. Support for this position is found at 34 C.F.R. Part 104: 104.4 and 104-33. Additionally, the sheer long distance of the school from Bollingbrook, coupled with a lack of transportation to Joliet, make it impossible for plaintiff to attend Premier Academy. Thirty-four CFR 104.6 (Remedial action, voluntary action, and self-evaluation) permits Roger to file a private action for a violation of the ADA (34 C.F.R. 104). Please note sub-section (b): "V*oluntary action.* A recipient may take steps, in addition to any action that is required by this part, to overcome the effects of conditions that resulted in limited participation in the recipient's program or activity by qualified handicapped persons."

7.  **RESPONSE TO PARAGRAPH 3, p.4:** For having exercised his First Amendment right, plaintiff asserts that he should not have been charged-cited for crimes by the police; and that he should not

---

[2] A grant of a motion to dismiss at this juncture in litigation would take away Roger's opportunity to prove that his confession was not made [to the police] willingly, knowingly and voluntarily. Cf., *G.O., 191 Ill. 2d 37 at 54; 727 N.E.2d 1003 (2000).*

[3] Title 34 C.F.R.Part 104 mandates the appropriate education for students with learning disabilities. Based upon reasonable information and belief, Premier Academy does not cater to children with learning disabilities.

3

have been assaulted and threatened by Officer Hampton under color of law (and that Officer Hampton intended to deprive Roger of rights and privileges guaranteed by the U.S. Constitution).

8. **RESPONSE TO PARAGRAPHS Def.'s IV, Argument, para A.1-5, p.3:** Issue: Official Capacity. Without Discovery, plaintiff does not know if Monell issues will arise.

9. **RESPONSE TO Def.'s B, para. 1-5, pp.4-5:** Relevant Count, Count I: DEPRIVATION OF PLAINTIFF'S 1st AMEND. RIGHT TO FREE SPEECH VIOLATED UNDER COLOR OF LAW, 42 USC Sec.'s 1983 & 1985, 1988. Plaintiff's lawsuit does raise a recognizable First Amendment issue. When Roger stood up, he had a message to convey and that such message is protected speech as defined by <u>Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989)</u>.[4] In Discovery, plaintiff will show that Bollingbrook H.S. is place at which Mexican students endure ongoing harassment from school officials and Bollingbrook Police as a result of their (students) ethnicity and race. Roger and other Mexican students had [had] enough of the stereotypical based harassment on February 4, 2008. Not only did Roger intend to get out of the way of two groups of students. Roger stood up to convey to school officials that in a public school cafeteria, he, as a Mexican American, had a right to stand and not to be <u>assumed</u> or accused of being a gang member based on his appearance or ethnicity. This message was clearly understood by Defendant Gavin (he was there, Dist. Ct. Trans. 46:11-13). In the police substation, Roger's verbal and non-verbal actions represented expressions to defendants (Ibid., 65:6-25;*67:1-15) that it was a violation of his civil rights for Officer Hampton to accuse him of being a gang member based on his non-white appearance and ethnicity; and further it was a violation of his civil rights for Officer Hampton to force him under threat of violence to write a confession.

   Plaintiff has a right of freedom of association. He exercised his right of freedom of movement within the [public school] cafeteria pursuant to his constitutional right (a property right) to a public education. Plaintiff knew that Defendant Gavin knew that plaintiff was of Mexican descent. Plaintiff and other Mexican Americans stood up to convey to Defendant Gavin that they were not gang members. Defendant Gavin by causing plaintiff to be taken into police custody, deprived plaintiff of his liberty. And that plaintiff's liberty was taken because plaintiff exercised his right to stand among other Mexican people and not be defined as a gang member.

10. **RESPONSE TO Def.'s C, para 1-3, p.6:** Relevant Count: COUNT II: DEPRIVATION OF PLAINTIFF'S 4th AMENDMENT RIGHT TO FREE FROM UNREASONABLE SEARCH AND SEIZURE,

---

[4] Roger expressed his right to stand and protest his right [as a brown skin, Mexican American] to stand in a public place "even" when people of Mexican descent believed to be gang members, are standing. Defendants were aware of plaintiff's message.

4

UNDER COLOR OF LAW, 42 USC Sec.'s 1983 & 1985, 1988.  False Imprisonment was properly plead. "It is axiomatic that "[s]tudents in the public schools do not 'shed their constitutional rights . . . at the schoolhouse gate,'" Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1988) (quoting Tinker v. Des Moines Indep. Cmty Sch. Dist., 393 U.S. 503, 506, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969)

There are two Adams v. Cahokia School District et. al. opinions. Neither is a Seventh Circuit Court of Appeals decision.  Both are district court decisions. The Seventh Circuit has not visited this issue. (Cf. "… the Seventh Circuit Court of Appeals has not spoken to the issue…". Bell at 910[5]). The decision by Judge Reagan favors Roger Coronado Jr. The decision by Judge Murphy does not favor Roger.

Judge Reagan ruled that teacher Phyliss Jackson could not defeat Summary Judgment by a position that  42 USC 1983 is inapplicable to a school setting. (See, Wilson, N\F of Teniesha Adams v. Cahokia School District, et. al. U.S. Dist. LEXIS 43848 (2007).  The issue before Judge Reagan was false imprisonment as a seizure in violation of reasonableness as set forth in the Fourth Amendment. Quoting "In" Wallace by Wallace v. Batavia School District 101, 68 F.3d 1010 (7th Cir. 1995), Justice Reagan wrote at page 7:

". . . in the context of a public school, a teacher or administrator who seizes a
student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." Id. at 1014.  "…The Court must construe all facts in a light most favorable to non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. FED. R. CIV. P. 56; Sallenger, 473 F.3d at 739 (citing Leaf, 400 F.3d at 1078)." Adams at 9. "Adhering to that standard, the Court finds that Plaintiffs have made a showing sufficient to establish that issues of fact remain such that the Court cannot grant summary judgment in favor of Jackson." (Ibid.).

It is important to note that in the instant case Roger Coronado Jr. was seized by a poilicemen in a police sub-station verses a classroom for example.  Defendant's attorney cites Adams; however, he fails to tell this Court the distinguishing differences between Roger's situation and the situation involving Adams. Adams' testimony justifiably caused Judge Murphy to realize that Adams had not been falsely imprisoned.  By example, Adams testified that she "was aware, during the interview, that she was not under suspicion of any disciplinary infraction or criminal wrongdoing."  Adams at 911. The inverse, Roger Coronado Jr. was under suspicion and that he was brought to the police liason

---

[5] Bell v. Marseilles Elementary School, 160 F. Supp. 2d 883 (2001).

station. The crucial variable---SUSPICION--- gave Roger a legal right to remain silent and the right to counsel. (In Re Gault at 49 and G.O., 191 Ill. 2d 37; 727 N.E.2d 1003 (2000)).  Since Roger had these two fundamental rights, Roger is permitted to allege flase imprisonment under 42 USC 1983.

    The position of the Judge Murphy in Adams v. Cahokia School District[6] was that a search of a student on school grounds by a school resource officer at the request of school officials should be deemed a search by a school employee for Fourth Amendment purposes and thus is subject to the reasonableness standard, not the probable cause standard. Roger Coronado's situation must be distinguished from that of Teneshia Adams. The Discovery process in the instant case should yield an answer as to whether or not Defendant Hampton seized Roger Coronado Jr. at the **request** of Valley View School District Officials. Second, Roger and Defendant Hampton testified that they were in police liasion station-office (Dist. Ct. Trans. 56:16;*64:1). That the search and seizure occurred in a police sub-station and not in a place NOT associated with the police represents that Roger was in police custody, hence entitled to Fourth Amendment protection.

    The holding in In re Gault (1967) as to Fifth Amendment rights guaranteed, must be understood as presuming the existence of 4th Amendment rights available to a child in police custody regardless of if the event it occurs in a police substation located in a school, or in a location far away from the school property.  ".... the availability of the privilege' –Fifth Amendment—'does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." In re Gault at 49. "The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory." (Ibid.).[7]

    For the Foregoing reasons, Roger's search ane seizure should be analyzed by way of the Fourth Amendment not under the T.L.O. reasonableness standard State v. N.G.B., 806 So. 2d 567, 568-69 (Fla. Dist. Ct. App. (2002).  After all, Roger was not detained for questioning. Roger was imprisoned pursuant to an expulsion process underway by time he had been seized by Officer Hampton. Officer

---

[6] Adams v. Cahokia School District, 470 F. Supp.2d 897 (S.D. Ill. 2007).

[7] Against the application of the right to silence, defendant's counsel argues that Roger's proceeding was "civil" and not "criminal," ---it was not. "It is true that the statement of the privilege in the Fifth Amendment, which is applicable to the States by reason of the Fourteenth Amendment, is that no person shall be compelled in any criminal case to be a witness against himself. However, it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory." In re Gault at 49.

Hampton lacked probable cause to detain Roger. Although the Fifth Amendment does not explicitly guarantee a right to counsel, the United States Supreme Court declared in Miranda v. Arizona that the Fifth Amendment's privilege against self-incrimination includes an implied right to counsel once a suspect is subject to "custodial interrogation" - meaning that the suspect is questioned by police in a restricted environment.

Defendant's Counsel having cited the Bell Court is confusing. In Bell,[8] Officer Long was denied immunity (Judge Conlon wrote at 891-892: "In contrast, no reasonable jury could find Officer Long's search to be reasonable, after considering all the circumstances [*891] of the search") and the officer's motion for summary judgment was denied; instead---the students' motion for summary judgment was granted. Ibid at 886, 887.  Plaintiff's counsel wants this Court to agree with Judge Reagan and the holding Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1988) (quoting Tinker v. Des Moines Indep. Cmty Sch. Dist., 393 U.S. 503, 506, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969) that there can be Fourth Amendment seizures in K-12 institutions.

11.  **RESPONSE TO Def.'s D, para. 1-6, pp.6-7**: Relevant Counts: COUNT 3: DEPRIVATION OF PLAINTIFF'S 14th & 5th AMEND.  RIGHTS (Due Process & Equal Protection); UNDER COLOR OF LAW, 42 USC Sec.'s 1983, 1985, 1988; and COUNT 4: DEPRIVATION OF PLAINTIFF'S DUE PROCESS RIGHTS AFFORDED BY  105 ILCS 5/10-22.6(a) & (b) & Article X, IL Constitution.

Defendant Hampton, under color of law, deprived Roger Coronado Jr. of Civil Rights and privileges (guaranteed to Roger by the U.S. Constitution).[9]  Bollingbrook Police Officer Hampton was directly involved in the Expulsion of Roger Coronado Jr. Defendant Hampton admitted his involvement at the March 13, 2008 hearing before Judge Darrah.[10]

While in police custody, Plaintiff had rights guaranteed by the Constitution (especially, since there was intent by all defendants [in particular, Defendant Hampton] to inculpate the child-plaintiff for crimes 720 ILCS 5/25-1(a)(2) (Mob Action) and 720 ILCS 5/26-1 (Disorderly Conduct) and that by the end of the encounter with the officer, Roger was charged-cited with the crimes.  In re Gault at  47-49  and

---

[8] Bell v. Marseilles Elementary School (2001).

[9] Defendant's motion wrongly argues that the Court should determine which side has the preponderance of evidence. Plaintiff's counsel asserts that such a determination is not called for at this stage in the litigation.

[10] Although Officer Hampton is not employed by the Defendant School District, he did have in his possession, suspension paperwork (plural). These were a blank confession document and a referral-complaint [DF. Exh 4] filled out in part by Defendant Gavin (PF. Exh. 3; Dist. Court Trans. 65:10-11*66: 3-25*67: 1-15) and that the document alleged that (Ibid., 70: 2-21) Roger had Postured and thrown gang signs (see DF. Exh. 4).

G.O., (2000) support the position that the plaintiff should have been adminsitered Fifth Amendment Rights. "…. the availability of the privilege' -–Fifth Amendment—'does not turn upon the type of proceeding' (as Defendant Hampton wrongly instructs the Court in his paragraph 8) 'in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." The nature of the statement and admissions by Roger represented exposure that clearly invited conviction of crimes and that a criminal process commenced with the service on Roger by Defendant Hampton of citations charging and accusing Roger with violations of [crimes] 720 ILCS 5/25-1(a)(2) and 720 ILCS 5/26-1; and that Roger had a court date before a member of the judiciary in a courthouse and that Roger was scheduled to be confronted by a prosecutor.[11]

Roger was handed over to the police (Alan Hampton) and the defendant school district intended and did use the confession of plaintiff to deprive him of his property right to a public education guaranteed by the U.S. Constitution and the laws of the State of Illinois. Defendant-Hearing Officer Prodehl testified that the confession obtained by Officer Hampton (Dist. Ct. Trans. 23:20-25*24:1-5) was used as evidence against plaintiff in deciding whether or not to expel plaintiff for one year. (Ibid. & DF. Exh. 6, p.2, sec. VII, labeled as "*District Hearing Officer's Findings of Fact At The Hearing for Expulsion*").

Alan Hampton assaulted plaintiff under color of law with intent to deprive him of his liberty, his right to a lawyer, his right to remain silent and his right to a public education (as to the latter for arguments sake, 42 USC 1983 is not limited, it clearly announces, literally, that **Privileges** are covered by the statute). By threat of violence, the officer coerced the plaintiff to sign a "referral-complaint (a witness statement prepared in part by Defendant Gavin, see DF. Exh. 4, and labeled as PF. Exh. 3), and that on the document was Defendant Gavin's accusation that plaintiff had engaged in Posturing. (Ibid.). Shortly thereafter, the defendant-officer coerced plaintiff to handwrite a confession, see DF. Exh. 3 and Dist. Ct. Trans. 67:3-15;* 70:11-12;* 83: 22-25;*84:1-7. And, that based upon the confession, Officer Hampton testified that he had probable cause, therefore, cited-charged Roger for violations of Illinois Criminal laws (Ibid., 68:10-18;*57:10-25;*58:1-3;*57:20-25;*58:1-25;* 59:8-11), Mob Action, 720 ILCS

---

[11] The expulsion process initiated by Defendant Hampton invited grave consequences. Therefore, Roger was entitled to more than an informal expulsion/suspension process with limited due process safeguards. See *Mathews v. Eldridge, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).*; *Santosky v. Kramer, 455 U.S. 745, 754, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982)*; *and Stratton v. Wenona Comm. School Dist. 133 Ill. 2d 433* (1990). *Goldberg* v. Kelly, 397 U.S. at 262-63 (1970) quoting *Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 95 L. Ed. 817, 71 S. Ct. 624 (1951)*.

5/25-1(a)(2); and Disorderly Conduct, 720 ILCS 5/26-1. (Dist. Ct. Trans. 65: 10-11; DF. Exh. 5). [Officer Hampton was a part of the expulsion process]. Plaintiff was told by Officer Hampton that he was suspended from the public high school for "Posturing" (Dist. Ct. Trans. 65:10-11;*66:3-25;*67:1-15;*67:13; DF Exh. 4).[12]

12. **RESPONSE TO Def.'s labeled as Sec. 2, para. 1-6, pp.8-9:** DUE PROCESS ISSUES: To determine the nature of the proceedings and the particular [due process] procedural safeguards which need apply requires analysis of the following factors: (1) the significance of the private interest which will be affected; (2) the risk of the erroneous deprivation of that interest through the procedures used; and (3) the significance of fiscal and administrative burdens that the additional or substitute procedural safeguards would entail." Colquitt at 862; See *Mathews v. Eldridge, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).*; *Santosky v. Kramer, 455 U.S. 745, 754, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982);* and *Stratton v. Wenona Comm. School Dist. 133 Ill. 2d 433* (1990).

Plaintiff was entitled to more than an informal expulsion/suspension process with limited due process safeguards. The condemnation for which the 15 year-old plaintiff was to suffer [and as a result of the District Court's ruling is now suffering] includes a significant interruption of his K-12 education; a societal stigma of being labeled part of a criminal gang (when he has never been a gang member, see Dist. Ct. Trans. 88: 9;*76:20-21); and an accusation by the Bollingbrook Police that he committed the crimes of Disorderly Conduct and Mob Action. (DF. Exh. 2). The defendant hearing officer's report (written summary, see DF. Exh. 6 & PF. Exh 1) of the expulsion hearing, is replete with inaccuracies, therefore not a sufficient record of the expulsion hearing.

The United States Supreme Court has held that " the extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss'." *Goldberg v. Kelly, 262-63*, quoting *Joint Anti-Fascist Refugee Committee v. McGrath, (1951)*. Coupling the latter cases with *Mathews v. Eldridge (1976)*, Roger was about to be condemned, to suffer grievous losses; therfore, 15 year-old Roger Coronado Jr. was entitled to confront his accussers.

In an expulsion process, "the private interest is commanding; the risk of error from the lack of adversarial testing of witnesses through cross-examination is substantial; and the countervailing

---

[12] Plaintiff's counsel asserts that the application by the Bollingbrook Police Department of the School District policy on Posturing, violates the U.S. Supreme Court's holding in *Chicago v. Morales, 177 Ill. 2d 440; 687 N.E.2d 53 (1997)*.

9

governmental interest favoring the admission of hearsay statements is comparatively outweighed." The denial [by defendants] to allow Roger to confront and cross-examine his accusers was wrongly justified by the defendants, through Defendants Valley View School District's, and its hearing officer's use of expansive accusatory Hearsay in deciding to expel Roger. (Cf. *Colquitt at 866*[13]; and see statements within DF. Exh. 6).

Roger's parents do not speak fluent English. "Exclusion from the educational process for more than a trivial period, and certainly if the suspension is for one year is a serious event in the life of the suspended child." *Goss v. Lopez at 736.* "An education is perhaps the most important function of state and local governments," *Brown v. Board of Education, 347 U.S. 483, 493 (1954)* and should not be taken away without meaningful due process afforded to the accused student. Cf. Colquitt v. Rich Twp. at 863. Therefore, Due Process required that in order for Roger to have had a meaningful hearing, his parents should have been provided an interpreter who could translate English to Spanish and vice versa. The repeated denials by defendants (to requests by plaintiff and his father) to provide a translator-interpretor to Roger's parents, represents that Roger was denied meaningful due process as defined by the *Colquitt*[14] Court at 863. (See denials at Dist Ct. Trans. 65:1-5;*74: 3-8;*81:18-25;*105: 25;*106:1-4;*119:6-14). There were three occassions—three distinct points (not just one) at which due process was denied to Roger as a result of his parents not able to speak fluent English. One of them involved Mr. Hampton: Officer Hampton was asked to provide a Spanish speaking person and he refused (Dist. Ct. Trans. 65:1-5).

Plaintiff received Notice (DF. Exh. 2) of a hearing that said that he was being tried for membership in a Subversive Organization. (Ibid.). The Notice did not say that he would be heard as to particpating in a Mob Action and Fighting. When plaintiff arrived at the hearing, he was accused and expelled for a Mob Action, Fighting, and Subversive Organizations/Hate Groups. (DF. Exh. 6, p.4; PF. Exh. 1).

13. **RESPONSE TO Def.'s 3, para. 1-3, pp.9-10:** Plaintiff does have a right to recover where he has been denied due process as required by 105 ILCS 5\10-22.6 and where the claim-count is that his due process rights under the statute were violated. Nothing in the statute denies plaintiff a private right of action where the basis is a denial of due process as mandated by statute.

14. **RESPONSE TO Def.'s. E, para.1-4, p.10:** Count V does not apply to Defendant Hampton.

---

[13] at *298 Ill. App. 3d 856; 699 N.E.2d 1109 (1998)*.
[14] Colquitt v. Rich Township (1998).

15. **RESPONSE TO Def.'s. F, p.10:** Relevant Count: Count VI. Plaintiff is permitted to bring a cause of action under Ill. Const. 1970, art. X, §1 with a basis in race. The holding in Aurora East v. Cronin (1982) does not prohibit a plaintiff from using Article X to assert racial discrimination. Defendant Hampton's motion implies that Article X is wholly unrelated to race. Aurora East v. Cronin (1982) holds that the passing of the Moore Amendment represents that policy decisions to achieve desegregation are decisions to be made by the school districts not school boards. Aurora at 324. The Court spoke to the issue of a School Board that ignored provisions (not of Article X) limiting its rulemaking authority--- the school board was not allowed to adopt rules incorporating its own methods for dealing with perceived segregation. Aurora at 329.

Cronin v. Lindberg, 66 Ill. 2d 47, 56; 360 N.E.2d 360 supports Plaintiff Roger Coronado's use of Article X to assert racial discrimination. An individual or an entity may prosecute an action. In Lewis v. Spagnolo[15] the plaintiffs were a putative class of school-age children residing in East St. Louis School District 189, acting through their parents and guardians. Spagnolo at 202. The Lewis v. Spagnolo facts are similar to facts in Coronado v. Valleyview School District, since the plaintiffs were individuals, not a school district or school board. The demise of the plaintiffs' Title X action in Spagnolo was not the result of an erroneous conclusion that Article X does not include race.

The Cronin holding allows Roger or a school board to assert a race based claim under Artilce X. As to the latter (the board), of course the board or its members would need to show that it (board) or they (members) are a member of a class being discriminated against ( Board of Education v. Bakalis (1973), 54 Ill. 2d 448, 467; see also City of Carbondale v. Van Natta (1975), 61 Ill. 2d 483, 488; Leno v. St. Joseph Hospital (1973), 55 Ill. 2d 114, 121). The board in issue did not have standing to protest alleged racial discrimination, since it was not a member of the protected class of pupils. Cronin at 56. ( Board of Education v. Bakalis (1973), 54 Ill. 2d 448, 467). The Board superintendent could have used Article X to assert racial discrimination if he there had been an injurious effect upon himself. Cronin at 56. (Cf. Hamer v. Board of Education (1970), 47 Ill. 2d 480, 483). Because the state superintendent and school boards in general often lack standing as to race discrimination, it is for the Attorney General to file suit when a state superintendent or school board calls attention to discriminatory practices. In the instant case, Roger Coronado Jr. is a member is a member of the protected class of pupils. Cronin v. Lindberg (1976), 66 Ill. 2d 47, 56, citing Board of Education v. Bakalis (1973), 54 Ill. 2d 448, 467. As a member of a protected class (as to race and ethnicity) Roger Coronado has standing to bring his own

---

[15] Lewis v. Spagnolo, 186 Ill. 2d 198; 710 N.E.2d 798; 1999 Ill. LEXIS 666; 238 (1999)

action. Nothing (as in no language) in Title X prohibits a private claim of race discrimination. Individuals can bring suit via Title X.

Pre-empting an argument that may appear in defendant's reply--- that determinations of what constitutes race discrimination are left to a legislature, plaintiff's counsel states that Lewis v. Spagnolo, (1999) did not stand for prohibition against a private, race-based complaint, rather, the Supreme Court of Illinois held that the quality of public education is not judicial matter but a legislative matter (Ibid., at 201).[16] There is not a state supreme court decision holding: that race is not encompassed or included in Article X; or that a race claim under Article X is prohibited; or that suit can only be bought by the attorney general.

**16.   RESPONSE TO Def.'s G, p.11**: Counts 5 and 7 are distinguishable. Count 5 applies only to the Valley View School District and Count 7 applies to all of the defendants.

**17.   RESPONSE TO Def.'s H, p.11**: Relevant Count, No. 9. Roger properly plead Assault under 42 USC 1983. Defendant Hampton, under color of law, with intent to deprive Roger of rights and privileges under the U.S. Constitution, caused Roger imminent apprehension that he was about be physically battered by Alan Hampton. (Dist. Ct. Trans. 70:9-12;*65:6-11;*67:21-25l*68:1-10). When Roger was asked at the District Court hearing what he thought would happen to him if he did not comply with Mr. Hampton's order to write a confession, Roger stated: "Probably get hit or get slammed by the door or arrested or—I don't know what would happen on that day." (Ibid. at 70:11-12; 68:8-10).[17]

**18.   RESPONSE TO Def.'s I and K, pp.11-12:** Relevant Count: COUNT 10: DEPRIVATION OF RIGHT TO COUNSEL UNDER COLOR OF LAW, 42 USC SECTIONS 1983, 1985; and COUNT 12: (AS TO DEFENDANT HAMPTON) DEPRIVATION OF 5th & 14th AMEND. RIGHT TO REMAIN SILENT & NOT TO INCRIMINATE ONES-SELF, UNDER COLOR OF LAW, 42 USC SEC. 1983, 1985, 1988.

Issue 1:   a. Roger was entitled to counsel; and b. Roger was entitled not to incriminate himself.
Issue 2: Mr. Penrose was present at the hearing when Defendant-Hearing Officer Prodehl testified that

---

[16] Cf. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1 (1996)
[17] Officer shouted hysterically, assaulting plaintiff with violent gestures (Ibid.). Defendant Hampton ordered Roger to sign the referral-complaint-witness statement prepared in part by Mr. Gavin. (Dist. Ct. Trans. 66: 9-14*67: 9-15). Roger signed it. (Ibid., 66:13). Then, in Roger's presence, when student Michael Clinton (67:23) refused Officer Hampton's orders to sign a document, the officer shouted loudly and slammed a door onto the chair in which student Michael Clinton was sitting. (Dist. Ct. Trans. 67: 17-25*68: 1-10). Defendant Hampton then turned to Roger shouting uncontrollably and ordered Roger to write a confession. (Dist. Ct. Trans. 68: 7-25*69:14-25*70: 1-12). Roger complied.

the confession (Dist. Ct. Trans. 23:20-25*24:1-5)[18] was used as evidence against plaintiff in deciding whether or not to expel plaintiff for one year. (Ibid.). Roger was charged-cited with crimes (see citation at Def. Exh. 5). Defendant Hampton admitted that he cited Roger for crimes based upon the confession, Officer Hampton testified that he cited Roger for violations of Illinois Criminal laws (Ibid., 68:10-18;*57:10-25;*58:1-3); therefore, it is startling that Mr. Penrose has written at Paragraph I: "…Any statement was not used anyway…".  Yet, he was there—in court—he heard what his own client said and what Hearing-Officer Prodehl said.

Plaintiff should have been adminsitered Fifth Amendment Rights by Officer Hampton:  "…. the availability of the privilege' –Fifth Amendment—'does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." In re Gault at 49; G.O. (2000). "The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory." (Ibid.). Plaintiffs' mention of the 6th Amendment is merely generic. The right referred to is the Fifth Amendmnet right to counsel.

**19. RESPONSE TO Def'.'s J, p.12**: Count XI represents that Plaintiff has a U.S. Constitutional right to a public education. 42 USC 1983, 1985, 1986 violations represent infringement of rights and "Privileges." Firstly, the defendants, by denying the plaintiff due process in an expulsion process denied plaintiff his 5th and 14th Amendment "Property" right to a Public Education. Then there is the denial of a Special Education to which he is entitled to receive pursuant to the ADA-Rehabilitation Act of 1973, through 34 C.F.R., parts 104.4 and 104.33.[19] **This denial came before and after the expulsion.** Plaintiff is not alleging that he was discriminated against because of his diasbility, hence there is not an issue of a Title VI bar. Plaintiff has alleged in his Complaint that he has been denied an "appropraite" (Special) education to include not being given an IEP. The federal circuits are divided as to whether a 42 USC 1983 action without exhasution is permissible. The Seventh Circuit Court of Appeals has not addressed the issue. (Compare cases that support Plaintiff Roger Coronado's pleading: *Covington v. Knox County Sch. Sys., 205 F.3d 912, 917 (6th Cir. 2000); Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999); W.B. v. Matula, 67 F.3d 484, 495-96 (3d Cir. 1995)*.

---

[18] Additionally, Mr. Prodehl wrote that he used the confession in arriving at a decision to expel Roger (see DF. Exh. 6, p.2, sec. VII, labeled as "*District Hearing Officer's Findings of Fact At The Hearing for Expulsion*").
[19] Count: Number XI.  First, plaintiff has a proerty right to an education and that under color of law, all defendants deprived Roger of his civil rights and privelages under the U.S. Constitution, namely his property right to an education (a privilege).  Second, plaintiff has a learning disability (Dist. Ct. Trans. 100: 15-25*101: 1-25) that entitles him to rights and privileges under the Constitution.

Count III is a due process claim that could incorporate Count 11 (arguably, but for the ADA claim). Count III is an omnibus count alleging deprivation of procedural due process while Count XI is a "specific" allegation of deprivation of the [specific] property right to a public education guaranteed by the Fifth and Fourteenth Amendments. It is plausible that Count XI has been plead in Count 3.

**20. RESPONSE TO Def.'s K:** response provided in Plaintiff's previous Paragraphs, 3, 10, and 18.

**21. RESPONSE TO Def.'s L, para.1-3, pp.12-13:** COUNT 13: DEFAMATION (Illinois Law). Officer Hampton is not entitled to absolute immunity: (1) Officer Hampton is not an "official" as defined in Barr v. Mateo 360 U.S. 564, 578, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) and in Blair v. Walker, 64 Ill.2d 1, 10, 349 N.E.2d 385 (1976); and (2). Officer Hampton made statements that are Not legitimately related to matters committed to his responsibility (e.g., statements as to Roger's level of intellect).

Defendant's motion does not present a accurate description of the holding in Blair v. Walker (1976). In order to find that the Governor was entitled to absolute immunity, the Court had to first hold that the Governor was acting within the scope of this privilege when issuing the press releases relating to the plaintiffs. Ibid., at 8 and 10. Defendant Hampton, not an executive and having made statements Not legitimately related to matters committed to his responsibility is not entitled to absolute immunity.

**22. RESPONSE TO Def.'s M, p.13:** Plaintiff, through plaintiff's counsel voulnatrily dismisses Count XIV. The defamatory statements made under Color of Law were made with the intent of depriving Plaintiff of his First Amendment rights and his Fifth Amendment and Fourteenth Amendment property right to a public education. This claim is all ready plead XI, XIII and Count III.

**23. RESPONSE TO Def.'s N, p.13:** Count XV applies to the Valley View School District and not Defendant Hampton.

**24. RESPONSE TO Def's O, para.1-2, p.14:** Plaintiff Roger Coronado has satisfied FRCP 12(b)(6) and FRCP 8(a). His allegations coupled with his Race and Ethnicity qualify as race discrimination.[20] He alleges that he was the subject to class-based, invidious discriminatory animus [underlying] the conspirators' action," as is required under Griffin v. Breckenridge, 403 U.S. 88, 102-03, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971). Defendant's motion wrongly holds that plaintiff is disallowed from bringing

---

[20] Plaintiff has claimed that the behavior and actions of the defendants in their individual capacities reflects an animus against brown skinned, and Mexican persons. Plaintiff's Complaint shows that he believes that defendants "aimed at interfering with rights" that are "protected against private, as well as official, encroachment."

14

a 42 USC 1985 action. Forty-Two USC 1985 claims represent allegations by plaintiff that the individual defendants collectively acted to deprive Roger of the equal protection of laws and of **privileges.** By example, the Due Process rights to which Roger was entitled in the Expulsion process (not just in the expulsion hearing).

25. **RESPONSE TO Def.'s P, pp. 14-15**: Issue: Qualified Immunity.

Police officers may be entitled to Qualified Immunity-- NOT absolute immunity as Defendant Hampton implies in his motion--- if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Eversole v. Steele, 59 F.3d 710, 717 (7th Cir.1995). In the probable cause context, that means that an officer is entitled to qualified immunity if a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.  Wollin v. Gondert, 192 F.3d 616, 621 (7th Cir.1999).  Defendant Hampton's conduct was "so patently violative of Roger's constitutional rights that a reasonable police officer would have known that he was violating the law without guidance from the courts." Burns v. Reed, 44 F.3d 524, 526 (7th Cir.1995). Qualified immunity protects a government official from liability in a 42 USC 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Pagels v. Morrison,* 335 F.3d 736, 739-40 (8th Cir. 2003). *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Wilson v. Lawrence County, Mo.,* 260 F.3d 946, 951 (8th Cir.2001) (citing *Tlamka v. Serrell,* 244 F.3d 628, 632 (8th Cir.2001)).

WHEREFORE, Plaintiff respectfully asks this Honorable Court to deny defendant's motion.

RESPECTFULLY SUBMITTED, 26 May 2008

s\Christopher C. Cooper, ESQ., PhD., Counsel for Plaintiff-Appellant
PO Box 1225, Hammond, IN 46325 or
3700 W. 103rd Street, Chicago, IL 60655
Tel: 312 371 6752 or 219 228 4396  FAX: 866 334 7458;
E-Mail: cooperlaw3234@gmail.com

CERTIFICATE OF SERVICE

Undersigned Attorney swears that he filed the foregoing on ECF on May 26, 2008 and that attorneys of record are registered e-filers.

s\Christopher Cooper.  May 26, 2008