IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Coronado, Roger Jr. by and through his next friend, Shelley Gilbert | ) ) |
| Plaintiff, | )Civil Action: 08cv1254 |
| v. | )Judge St. Eve |
| Valleyview Public School District, 365-U | )Magistrate Judge Schenkier |
| Alan Hampton, Bollingbrook Police, Ind.-Off Cap. | ) |
| Don Laverty, Off.-Indiv. Capacities | ) |
| Timothy Gavin, Off.-Indiv. Capacities | ) |
| Steven Prodehl, Off-Indiv. Capacities | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND MONETARY DAMAGES**

NOW COMES Plaintiff Roger Coronado Jr., with his Next Friend, Shelley Gilbert, both through Counsel, Christopher C. Cooper. They respond to Defendants' motion and memorandum of law (Doc. 76 & 77) to dismiss plaintiff's second amended complaint. Through counsel (and that because of Roger's infancy he is referred to as Roger at many times in this pleading), they state as follows:

## RESPONSE TO MOTION

1. **RESPONSE TO PARAGRAPH 1: No Dispute**

2. **RESPONSE TO PARAGRAPH 2:** Plaintiff, through plaintiff's counsel believes he has properly plead pursuant to FRCP 12(b)(6) and FRCP 8(a) and will respect the Court's decision to modify Counts as it sees necessary.

3. **RESPONSE TO PARAGRAPH 3: No Dispute**

## RESPONSE TO MEMORANDUM OF LAW

1. **RESPONSE TO PARAGRAPH 1 in Def.'s Statement of Facts**: Dispute. Plaintiff had recently become fifteen years-old when he was suspended/expelled from Bollingbrook [Public] High School February 7, 2008 for 2 semesters (one year) accused by defendants of violating a school policy prohibiting "Posturing"; and accused of having violated the criminal laws of Illinois, namely 720 ILCS 5/25-1(a)(2) (Mob Action); and 720 ILCS 5/26-1 (Disorderly Conduct). Plaintiff's suspension/expulsion paperwork (See DF. Exh. 6; p.4) says that plaintiff was found guilty of "Subversive Organizations/Gangs/Hate Groups; Mob

1

Action and "Fighting" (Ibid.).  The charging document is marked as Def. Exh. 4 and holds that Roger was charged with Posturing by Defendant Gavin.[1] (See Def. Exh. 4; note that the writing below Mr. Gavin's name was entered by Mr. Dettman after the charge of Posturing had been lodged. [Dist. Ct. Trans. 46:23-25;*47:1-9]).

**2. RESPONSE TO PARAGRAPH 2: Dispute.** Mr. Gavin cited Roger for Posturing. (See Def. Exh. 4). Plaintiff was forced by threats of violence to write a confession. (Dist. Ct. Trans. 70:9-12;*65:6-11;*67:21-25l*68:1-10). Plaintiff did not testify at the expulsion hearing that he lent support to anyone. Rather, plaintiff told the District Court, Defendant Hampton, and Defendant Hearing-Officer Prodehl (at the February 19th expulsion hearing) that he is innocent of the allegations against him (Dist. Ct. Tran. 89:19-25;*90:1-2;*77:1-23;*78:3;*83:18-25;*85:23-35;*86:1-23;*87:1-2;*88:8-13;*89:1-25); and that he was not a party to alleged destructive conduct by other students;  rather, plaintiff was an innocent bystander.

Inside of the police sub-station, Bollingbrook, Illinois Policeman Alan Hampton, a man who described himself for the District Court as "250" pounds and "6'6" inches in height (Dist. Ct. Trans. 126:1-4) assaulted and falsely imprisoned the child-plaintiff. (Dist. Ct. Trans. 64:7-11;*65:6-25*67: 1-25*67: 1-25*68: 1-25*70: 1-25;*83: 22-25; *84: 1-7). The District Court (Judge Darrah) took judicial notice that the child-plaintiff is approximately 5'5 to 5'6, 140 to 150 pounds.  (Ibid. ; Dist. Ct. Trans. 126:16-20).

The officer shouted hysterically, assaulting plaintiff with violent gestures (Dist. Ct. Trans. 70:9-12;*65:6-11;*67:21-25l*68:1-10) and that the officer slammed a door against the chair in which student Michael Clinton sat (Ibid., at 67:23) because Michael would not sign a document. Plaintiff believed that defendant-officer would strike him next. (Dist. Ct.

---

[1]The unconstitutional and vague Posturing policy (whether written or unwritten) of the Valley View School District and enforced by the Bollingbrook, Illinois Police Department enables for a far too broad interpretation of a "Mob Action" while making way for capricious and arbitrary law enforcement by school security and police (especially as to what physical characteristics fit the profile of a gang member).   Here there was not testimony presented before the U.S. District Court on March 13, 2008 that plaintiff, by standing in place in which there were groups of black and Mexican students, violated a school policy of Posturing or the laws of the state of Ilinois, namely Disorderly Conduct and Mob Action (the crimes for which he was cited by Bollingbrook Poice). The Valley View School District policy of Posturing and its application by the Bollingbrook Police offends the holding in *Chicago v. Morales*[1] and deprived plaintiff of substantive and procedural due process.

Trans. 68:8-10). By threat of violence, the officer coerced the plaintiff to sign a "referral-complaint (a witness statement prepared in part by Defendant Gavin, see DF. Exh. 4, and labeled as PF. Exh. 3), and that on the document was Defendant Gavin's accusation that plaintiff had engaged in Posturing. (Ibid.).

Shortly thereafter, the defendant-officer coerced plaintiff to handwrite a confession admitting to Posturing, see DF. Exh. 3 and Dist. Ct. Trans. 67:3-15;* 70:11-12;* 83: 22-25;*84:1-7. Defendant-Officer denies the allegation. He claims that the confession was written when he received it from Mr. Dettman (a person who was not an eyewitness to alleged events on February 4, 2008) (Dist Ct. Trans. 58: 2-25*59: 1-11).[2] And, that based upon the confession, Officer Hampton testified that he cited Roger for violations of Illinois Criminal laws (Ibid., 68:10-18;*57:10-25;*58:1-3).

Defendant-Officer testified (Ibid., 57:20-25;*58:1-25;* 59:8-11) that he had Probable Cause to cite plaintiff for violations of criminal law based on the handwritten confession (Ibid.; DF. Exh. 3) allegedly given to him by Mr. Dettman. Defendant, Bollingbrook Policeman Hampton, cited Roger for two crimes: Mob Action, 720 ILCS 5/25-1(a)(2); and Disorderly Conduct, 720 ILCS 5/26-1. (Dist. Ct. Trans. 65: 10-11; DF. Exh. 5). Plaintiff was told by Officer Hampton that he was suspended from the public high school for "Posturing" (Dist. Ct. Trans. 65:10-11;*66:3-25;*67:1-15;*67:13; DF Exh. 4).[3] None of the defendants testified before the District Court that plaintiff did a specific act; therefore, from the perspective of plaintiff's counsel, there is not evidence in the Court record

---

[2] Strange and unbelievable best describes Officer Hampton's testimony. By example, the officer claimed that he did not telephone and speak with plaintiff's parents (Dist. Ct. Trans. 70: 22-25); however, Roger and his mother testified that Mr. Hampton did call Mr. and Mrs. Coronado. (Ibid., 118:11-19). Roger has never met Mr. Dettman. (Ibid., 71:1-4;*96:24-25). Defendant Hampton claims that Roger was with Dean Dettman on the early morning of February 7, 2008. (Ibid., 57: 2-9). This would have been physically impossible. Roger was escorted (he did not walk of his own free will) directly to the police sub-station shortly after 8:10AM (Ibid., 61: 10-17). There was not a stop at Mr. Dettman's office. (Ibid., 71:1-4;*61: 10-17;*63: 24-45;*64: 1-2). The confession is dated January 7, 2008. It is sensible to assume that the writer intended February 7, 2008. If the defendant officer did not provide the 15 year-old plaintiff with the Valley View letterhead confession form, then who did and how did they get the form to Roger before February 7, 2008(?) Remember, Roger was taken from his first period class, early in the morning, shortly after 8:10AM on the 7th of February. (Ibid., 61: 10-17).

[3] Plaintiff's counsel asserts that the application by the Bollingbrook Police Department of the School District policy on Posturing, violates the U.S. Supreme Court's holding in *Chicago v. Morales, 177 Ill. 2d 440; 687 N.E.2d 53 (1997)*.

3

indicating the official basis for plaintiff's expulsion (Dist Ct. Trans. 35: 1-25*36: 1-25; 37: 1-25; 38:1-13;*44:8-25;*45:1-12;*46:12-17;*151: 8-25;*152:1-17) or for [the] citations [one citation, two offenses) against plaintiff for violations of Illinois criminal statutes. (See DF. Exh. 5: Citation).

**3. RESPONSE TO Paragraph 3:** Defendants are sued in their individual as well as official capacities. No legal authority has been cited by defendants that bars plaintiff- suing defendants in their individual capacities. Defendants are Not entitled to qualified immunity. Officials are not entitled to Qualified Immunity if their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have known." Eversole v. Steele, 59 F.3d 710. Their behavior was blatantly violative of Roger's civil and due process rights and that the defendants were aware that the law disallowed their lawless behavior. Compare Bell v. Marseilles Elementary School, 160 F. Supp. 2d 883 at 861-862 (2001), the Court having held that the official's (Mr. Long's) behavior was so egregious that he was clearly not entitled to qualified immunity.

4. **RESPONSE TO Def.'s Sec. II, para. 4 at p.2**: Plaintiff has properly plead pursuant to FRCP 12(b)(6) and FRCP 8(a).

5. **RESPONSE TO Def.'s** Sec. I, A, para. 1 under Argument): No Dispute.

6. **RESPONSE TO PARAGRAPH 2**: Plaintiff, through plaintiff's counsel believes he has properly plead pursuant to FRCP 12(b)(6) and FRCP 8(a) and will respect the Court's decision to modify Counts as it sees necessary.

7. **RESPONSE TO Def.'s B, para. 1-2:** Plaintiff's 42 U.S.C. 1985 claims are properly plead. His allegations in the Complaint represent that the defendants, collectively shared a common plan and scheme to deprive plaintiff of civil rights guaranteed to him by the United States Constitution and that collective scheme was motivated by race and ethnic class-based invidious discriminatory animus.[4] Plaintiff alleges that he was the subject to class-based, invidious discriminatory animus [underlying] the conspirators' action," as is required under

---

[4] Plaintiff has claimed that the behavior and actions of the defendants in their individual capacities reflects an animus against brown skinned, and Mexican persons. Plaintiff's Complaint shows that plaintiff reasonably believes that defendants "aimed at interfering with rights" that are "protected against private, as well as official, encroachment."

4

Griffin v. Breckenridge, 403 U.S. 88, 102-03, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971). Forty-Two USC 1985 claims represent allegations by plaintiff that the individual defendants collectively acted to deprive Roger of the equal protection of the laws and of equal privileges. By example, 1st, 4th, 5th, and 14th Amendment rights. Under the category of Privileges, there is the deprivation of Due Process rights to which Roger was entitled in the Expulsion process (not just in the expulsion hearing).

Plaintiff's Complaint purposely uses specific language that represents that the Complaint's counts incorporate all aforementioned paragrapghs in the Complaint. Throughout the Complaint is the following passage: "Plaintiff repeats, re-alleges and incorporates by reference, the allegations in aforementioned paragraphs with the same force and effect as if herein set forth."

8. **RESPONSE TO Def.'s C, para. 1-4, pp.4-5:** Qualified immunity protects a government official from liability in a 42 USC 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Pagels v. Morrison,* 335 F.3d 736, 739-40 (8th Cir. 2003). Defendants' conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known. Eversole v. Steele, 59 F.3d 710, 717 (7th Cir.1995). Any reasonable official would understand his conduct was unlawful in the situation he confronted as to Roger Coronado Jr. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Wilson v. Lawrence County, Mo.,* 260 F.3d 946, 951 (8th Cir.2001) citing *Tlamka v. Serrell,* 244 F.3d 628, 632 (8th Cir.2001); Burns v. Reed, 44 F.3d 524, 526 (7th Cir.1995).

9. **RESPONSE TO PARAGRAPH 5-6 & 8-9, pp.5-6:** Relevant: Count I. Plaintiff's lawsuit does raise a recognizable First Amendment issue. Roger expressed his right to stand and protest his right [as a brown skin, Mexican American] to stand in a public place "even" when people of Mexican descent believed to be gang members, are standing. Defendants were aware of plaintiff's message. When Roger stood up, he had a message to convey and that such message is protected speech as defined by Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). In Discovery, plaintiff will show that Bollingbrook

5

H.S. is place at which Mexican students endure ongoing harassment from school officials and Bollingbrook Police as a result of their (students) ethnicity and race. Roger and other Mexican students had [had] enough of the stereotypical based harassment on February 4, 2008. Not only did Roger intend to get out of the way of two groups of students. Roger stood up to convey to school officials that in a public school cafeteria, he, as a Mexican American, had a right to stand and not to be <u>assumed</u> or accused of being a gang member based on his appearance or ethnicity. This message was clearly understood by Defendant Gavin (he was there, Dist. Ct. Trans. 46:11-13). In the police substation, Roger's verbal and non-verbal actions represented expressions to defendants (Ibid., 65:6-25;*67:1-15) that it was a violation of his civil rights for Officer Hampton to accuse him of being a gang member based on his non-white appearance and ethnicity; and further it was a violation of his civil rights for Officer Hampton to force him under threat of violence to write a confession.

   Plaintiff has a right of freedom of association. He exercised his right of freedom of movement within the [public school] cafeteria pursuant to his constitutional right (a property right) to a public education. Plaintiff knew that Defendant Gavin knew that plaintiff was of Mexican descent. Plaintiff and other Mexican Americans stood up to convey to Defendant Gavin that they were not gang members. Defendant Gavin by causing plaintiff to be taken into police custody, deprived plaintiff of his liberty. And that plaintiff's liberty was taken because plaintiff exercised his right to stand among other Mexican people and not be defined as a gang member.

10. **RESPONSE TO PARAGRAPH 7, p.6, begins with "Here, even if we assume, arguendo…".** : Plaintiff's conduct (standing) to express pride of being Mexican (his race and ethnicity) and the conduct of other Mexican students represented that they were tired of harassment. Defendants are wrong if they are saying that standing for the foregoing reasons would have interfered with the operation of Bollingbrook H.S. and lead to a breakdown of order in the school.

11. **RESPONSE TO Def.'s D, para. 1-2, p.7**: In the Discovery process, Plaintiff will show that he is entitled to punitive damages, since the individual defendants joined by the School District performed conduct motivated by evil motive and intent and that the behavior was reckless, callous and with utter disregard and indifference to Roger's protected Civil Rights. In particular, the testimony of Defendant Gavin of a "Frequent Flyer List."

6

12. **RESPONSE TO Def.'s II., para. A, p.8:** No Dispute

13. **RESPONSE TO Def.'s II., para. B, p.8**: Please see Response in plaintiff's Paragraphs 8 and 9 above.

14. **RESPONSE TO Def.'s II., para. C, p.9**:  Count II applies to all defendants. In plaintiff's complaint, plaintiff's counsel wrote throughout the Complaint: "Plaintiff repeats, re-alleges and incorporates by reference the allegations in aforementioned paragraphs with the same force and effect as if herein set forth."  This proclamation includes the 28 facts listed above Count II.  More specifically, that the plaintiff was "summoned" (para. 9 in the Complaint), was a result of [intentional] tortious actions by defendants to deprive plaintiff of his civil rights.  Intent is either that the defendant desires or is **substantially certain** the elements of the tort will occur.  [See Restatement § 8A; *Garratt v. Dailey*, 279 P.2d 1091 (Wash. 1955).]

15. **RESPONSE TO Def.'s II., para. D, p.9**:  Count III represents civil rights and due process violations[5] under color of law and that defendants. The pleading of 42 U.S.C. 1983, 1985, and 1986 represent that under color law, the defendants intended to deprive plaintiff of civil rights and privileges guaranteed to him under the United States Constitution.

16. **RESPONSE TO Def.'s II., para. D, para 2 on page 9**: Judge Darrah ruled as to whether or not an injunction should be granted or denied. His decision is relevant to an Injunction, hence he addressed the following criteria: Could plaintiff show:  1) That there is a substantial likelihood of success on the merits of the case; 2)that plaintiff faces a substantial threat of irreparable damage or injury if the injunction is not granted; 3) there is not an adequate remedy at law (considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted); and 4)the grant of an injunction would not disserve the public interest. Cf. Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-313, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982); Ebay Inc. v.  Mercexchange, L.L.C., 547 U.S. 388 at 39 (2006).

    Judge Darrah denied plaintiff's motion for an injunction (Document 43). The plaintiff has appealed the Order. Plaintiff-Appellant's brief has been filed. Defendant's brief is due June 12. The Court of Appeals has ruled that extensions will not be granted. Oral arguments will occur July 8, 2008. The plaintiff asserts that he has satisfied FRCP 12(b)(6)

---

[5] Due Process violations are, arguably,  Privileges guaranteed by the US Constitution.

7

and FRCP 8(a) in his pleading (Complaint). Since the defendants' motion to dismiss [arguably] forces on plaintiff that he must make arguments that are required at the dispositive motion stage, plaintiff states that he can suceed on the merits[6] since the holdings in In re Gault[7]; *Colquitt*[8]; *Goss*[9]; *Mathews*[10]; *In re G.O.*[11]; and *Joint Anti-Facist Refugee Committee*[12] enable him to show that he was not afforded "meaningful" due process in the expulsion process.

Roger does have a likelihood of succeeding on the merits for the following reasons [found in the District Court record]: a. Roger is not a gang member and has never been a gang member (Dist. Ct. Trans. 88:9;*76:20); b. there was a witness who saw the illegal behavior by Officer Hampton toward plaintiff (Dist. Ct. Trans. 67:17); c. Roger had not had an interaction with the police until the awful and debilitating encounter with Bollingbrok Policeman Alan Hampton; d. that Roger has never had a formal disciplinary action against him until this incident (Dist. Ct. Trans. 9:19); Roger's teacher's wrote that he is a "respectful student" and "not a discipline" problem (DF. Exh 6., contents of sec.XVI); Mr. Prodehl had to concede that the allegation by him on page 5 of his report (DF. Exh. 6 and that PF. Exh. 1 should be a part of DF. Exh. 6) that Roger had offended before, was grossly wrong, see (Dist. Ct. Trans. 19: 4-11); and; e.that there is film footage of the cafeteria helpful to plaintiff (Ibid., 160: 1-5).

The film footage will show that plaintiff did not violate school policies or Illinois laws. Mr. Mitchem (school's principal) was aksed if he reviewed the film footage (Ibid., 160: 4) He answered: "Yes I did" at line 5; however, at pages 151 and 152, Mr. Mitchem stated that he does know what Roger did, because he, Mr. Mitchem, was not there; although, he claims that he has reviewed the film footage. (Ibid., 160:4-5). A motion for dismissal based on what could be overwhelming video proof has not been filed by the defendants. It

---

[6] Plaintiff has argued in his appellant's brief that the District Court wrongly held that plaintiff (Roger) is not likely to suceed on the merits (Doc. 43. p.2).
[7] In Re Gault 387 U.S. 1; 87 S. Ct. 1428; 18 L. Ed. 2d 527 (1967)
[8] Colquitt v. Rich Township High School District, 298 Ill. App. 3d 856 (1998). N.E.2d 1109;(1998).
[9] Goss v. Lopez, 419 U.S. 565; 95 S. Ct. 729; 42 L. Ed. 2d 725 (1975)
[10] Mathews v. Eldridge Test, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)
[11] G.O., 191 Ill. 2d 37; 727 N.E.2d 1003 (2000)
[12] Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 95 L.Ed. 817, 71 S. Ct. 624 (1951).

seems reasonable to ask: Why defense Attorney Riordan did not bring the video to the March 13, 2008 hearing in order that the District Court could adequately decide if a grant of an injunction would disserve the public interest is unknown.

Standard of Review:  In determining whether or not Roger had been afforded Due Process, the District Court had an obligation to make sure that the defendants were able to identify the wrong that plaintiff allegedly committed. (Cf. *Goss v. Lopez at 80, FN 9*).

The Goss Court wrote, "…the student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences."  Goss at 579. " The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair. Unfortunately, that is not the case, and no one suggests that it is. Disciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process." Goss v. Lopez at 579, 580.

Roger's chief accusers, Defendants Gavin and Officer Hampton, have not been able to offer any testimony that Roger violated a school policy or that he violated 720 ILCS 5/25-1(a)(2) and 720 ILCS 5/26-1(Dist Ct. Trans. 35: 1-25*36: 1-25; 37: 1-25; 38:1-13; 151:8-25;*152:1-17 ); yet Roger was seized by the Bollingbrook Police, cited-charged by the police for the aforementioned crimes and then expelled from school for two semesters- one year.

By example, consider questions to Defendant *Prodehl:   Q.  Describe the aggressive behavior, sir. A. There were gang signs being flashed, there were gang slogans being shouted, there were threats being shouted—Q. Please show me the gang signs. A Huh? Q. Please show me the gang signs. A. I did not see them.  Mr. Riordan: Objection. By Mr. Cooper: Q. Who saw them?  A. The Security officer.  Q. Why wasn't he at the hearing. (38: 1-13). Mr. Prodehl was asked at page 36, line 2 to name the hate group that Roger was allegedly a part.*

Roger was charged and expelled by defendants school officials for being a part of a Subversive Organization/Gang/Hate Group in addition to fighting and Mob Action (Dist.

9

Case 1:08-cv-01254 Document 92 Filed 05/26/2008 Page 10 of 14

Ct. Trans., 35: 7-13; DF. Exh. 6, p.4). To explain the charge of Posturing, Mr. Prodehl testified at page 36, lines 17-19: "*From the information that I received, he rose from the table and he stood behind a group of students that were engaged in activity towards another group.*"

On page 44, plaintiff's counsel asked Mr. Gavin to state what Roger Coronado did: *Q.[by Mr. Cooper] What incident? A. It was a verbal altercation between Hispanic males and black males. It started to get heated. Other black males went directly towards --- behind the black males in an attempt to back them up. Q. So show me the gang signs you saw him[Roger] throw? A. I saw many gang signs. Q. I want to see the gang signs that he threw. To line 25 then over to page 45, 1-4 : Q. Please show me the gang signs that my client threw in your presence. A. I witnessed many gang signs. I don't know which one relates to which group.*

The contents of the coerced handwritten confession (DF. Exh. 3) do not prove a crime under Illinois law; therefore, Officer Hampton did not have a legal basis to cite plaintiff for crimes (namely, 720 ILCS 5/25-1(a)(2) and 720 ILCS 5/26-1).

**17. RESPONSE TO Def.'s II., para. E, para 1 on page 10:** Legal conclusions are acceptable in Complaints and do not translate to the pleading lacking 12(b)(6) adequacy.

Responding to defendants' concern that the counts for assault and false imprisonment do not apply to his clients, plaintiff's counsel states, Intentional Torts share the requirement that the defendant *intentionally* commit the elements that define the tort. Intent is either that the defendant desires or is **substantially certain** the elements of the tort will occur. [See Restatement § 8A; *Garratt v. Dailey*, 279 P.2d 1091 (Wash. 1955).]

Defendants Valley View School District, Mr. Prodehl, Mr. Gavin and Mr. Laverty intended a physical or mental effect upon Roger Coronado Jr.; and that they did so without consent and that damages/injury occurred to Roger Coronado Jr. When the Substantial Certainty Test is applied, the reasoning is that the aforementioned defendants knew with substantial certainty that their conduct would lead to Roger being seized; deprived of civil rights; and due process; charged-cited for crimes; and unlawfully expelled for 2 semesters-1 year. Having satisfied the requisites of FRCP 12(b)(6) and FRCP 8(a), plaintiff respectfully asks, that, <u>at this stage in the litigation,</u> the Court to give him the opportunity to

10

show Transferred Intent and that the aforementioned defendants knew with "Substantial Certainty" that their tortious actions would damage plaintiff.

**18. RESPONSE TO Def.'s II., para. E, para 1-3, p.10:** Plaintiff has properly plead pursuant to FRCP 12(b)(6) and FRCP 8(a).

**19. RESPONSE TO PARAGRAPH F in Def.'s II. p.11**: Please see aforementioned "Substantial Certainty" argument presented in plaintiff's response to Defendants Paragraph E at plaintiff's number 16.

**20. RESPONSE TO PARAGRAPH G in Def.'s II. p. 11**: Please see aforementioned "Substantial Certainty" argument presented in Plaintiff's response to Defendants Paragraph E at Plaintiff's number 16.

**21. RESPONSE TO PARAGRAPH H in Def.'s Sec. II. para. 1-2 pp.11-12**: Relevant Count: Number XI.  First, plaintiff has a proerty right to an education; and that under color of law, all defendants deprived Roger of his civil rights and privileges under the U.S. Constitution, namely his property right to an education (a privilege).  Second, plaintiff has a learning disability (Dist. Ct. Trans. 100: 15-25*101: 1-25).[13]  Regarding the second prong, t**his denial came before and after the expulsion** and that Plaintiff has been wrongly told by defendants that he can go to Premier Academy located in Joliet, Illinois.  The school caters to students who are physically dangerous to others. (Ibid.,159:6-7). Plaintiff cannot be legally[14] placed at Premier Academy in Joliet because of his learning disability.  Support for this position is found in the ADA at 34 C.F.R. Part 104: 104.4 and 104-33.  Additionally, the

---

[13] 42 USC 1983, 1985, 1986 violations represent infringement of rights and "Privileges." Firstly, the defendants, by denying the plaintiff due process in an expulsion process denied plaintiff his 5th and 14th Amendment "Property" right to a Public Education. Then there is the denial of a Special Education to which he is entitled to receive pursuant to the ADA-Rehabilitation Act of 1973, through 34 C.F.R., parts 104.4 and 104.33.[13]  **This denial came before and after the expulsion.** Plaintiff is not alleging that he was discriminated against because of his diasbility, hence there is not an issue of a Title VI bar. Plaintiff has alleged in his Complaint that he has been denied an "appropraite" (Special) education to include not being given an IEP. The federal circuits are divided as to whether a 42 USC 1983 action without exhasution is permissible. The Seventh Circuit Court of Appeals has not addressed the issue. (Compare cases that support Plaintiff Roger Coronado's pleading: *Covington v. Knox County Sch. Sys., 205 F.3d 912, 917 (6th Cir. 2000); Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999); W.B. v. Matula, 67 F.3d 484, 495-96 (3d Cir. 1995*).

[14] Title 34 C.F.R.Part 104 mandates the appropriate education for students with learning disabilities. Based upon reasonable information and belief, Premier Academy does not cater to children with learning disabilities.

sheer long distance of the school from Bollingbrook, coupled with a lack of transportation to Joliet, make it impossible for plaintiff to attend Premier Academy.

Thirty-four CFR 104.6 (Remedial action, voluntary action, and self-evaluation) permits Roger to file an action for a violation of 34 C.F.R. 104. Please note sub-section (b): "V*oluntary action.* A recipient may take steps, in addition to any action that is required by this part, to overcome the effects of conditions that resulted in limited participation in the recipient's program or activity by qualified handicapped persons." 42 U.S.C. 1983, 1985, 1986 stand for infringement of rights and "Privileges."

Count XI represents that Plaintiff has a U.S. constitutional Right to a public education. The defendants, by denying the plaintiff due process in an expulsion process have denied plaintiff his 5th and 14th Amendment "Property" right too a Public Education, as well as the Special Education to which he is entitled to receive pursuant to the ADA-Rehabilitation Act of 1973, through 34 C.F.R., parts 104.4 and 104.33.[15]

**22. RESPONSE TO Def.'s I in Sec. II. para. 1-3 & 5, pp.12-13**: Count XIII (Defamation under Illinois law) does not apply to the School District.  Defendants are Not entitled to absolute immunity. Defendants are Not "officials" as defined in Barr v. Mateo 360 U.S. 564, 578, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) and in Blair v. Walker, 64 Ill.2d 1, 10, 349 N.E.2d 385 (1976); and (2). Defendants  made statements that are Not legitimately related to matters committed to their responsibility.  (Cf. Roberts v. Board of Education, 25 F.Supp.2d 866 (N.D. Ill. 1998).

In Blair v. Walker (1976), the Court looked to whether the Governor made statements legitimately related to matters committed to his responsibility. (See Blair at 8.)  In order to find that the Governor was entitled to absolute immunity, the Court had to first hold that the Governor was acting within the scope of this privilege when issuing the press releases relating to the plaintiffs. (Ibid., at 10).  Defendants are not executives and did not make statements legitimately related to matters committed to their responsibility, therefore, they are not entitled to absolute immunity.

---

[15] Count III is a Due Process claim that could incorporate Count XI (arguably, but for the ADA claim). Count III is a count for an omnibus deprivation of procedural due process while Count XI is a "specific" allegation of deprivation of the [specific] property right to a public education and Special Education guaranteed by the Fifth and Fourteenth Amendments.

**23. RESPONSE TO PARAGRAPH I,** para. 4 in Def.'s Sec. II. p.13**:** Plaintiff, through plaintiff's counsel voulnatrily dismisses Count XIV. The defamatory statements made under Color of Law were made with the intent of depriving Plaintiff of his First Amendment rights and his Fifth Amendment and Fourteenth Amendment property right to a public education. This claim is all ready plead XI, XIII and Count III.

**24. RESPONSE TO Def.'s J,** Sec. II. para. 1-3, p.14**:** Relevant: Count 15: Plaintiff is permitted to prosecute by way of 42 USC 1983.

Plaintiff is not alleging that he was discriminated against because of his diasbility, hence there is not an issue of a Title VI bar. Plaintiff has alleged in his Complaint that he has been denied an "appropraite" (Special) Education to include not being given an IEP. Defedants' counsel fails to provide this Court the best information when he writes: "*Plaintiff has not properly pled a claim … because Sec. 1983 cannot be used in connection with a claim for an IEP.*" The reality is that few circuits have addressed this legal question and for those that have, the circuits are divided. Defendant's counsel cites a First Circuit case, <u>Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 60-64 (1st. Cir. 2002)</u>. Plaintiff's counsel presents a significant quote from the First Circuit case:

*"The question of whether a plaintiff who seeks only money damages is required to exhaust administrative remedies before instituting a section 1983 claim predicated on a violation of the IDEA is one of novel impression in this circuit. Five other courts of appeals previously have grappled [\*\*13] with this question. Three of them have permitted plaintiffs who seek only money damages to proceed with their section 1983 claims without first exhausting the IDEA's machinery. See Covington v. Knox County Sch. Sys., 205 F.3d 912, 917 (6th Cir. 2000); Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999); W.B. v. Matula, 67 F.3d 484, 495-96 (3d Cir. 1995). Two other courts have reached the opposite conclusion, holding squarely that plaintiffs may not bypass the IDEA's administrative process merely by limiting their prayers for relief to money damages. See Charlie F. v. Bd. of Educ., 98 F.3d 989, 991-92 (7th Cir. 1996); N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996) (per curiam)."* Frazier at 60.

Plaintiff Roger Coronado has not pled 20 U.S.C. § 1400(d)(1)(A). Plaintiff asks that this Court hold that Roger not be precluded from prosecuting Count 15.

WHEREFORE, Plaintiff respectfully asks that the Court deny defendants' motion.

RESPECTFULLY SUBMITTED, 26 May 2008
s\Christopher C. Cooper, ESQ., PhD., Counsel for Plaintiff
PO Box 1225, Hammond, IN 46325 or
3700 W. 103rd Street, Chicago, IL 60655
Tel: 312 371 6752 or 219 228 4396  FAX: 866 334 7458
E-Mail: cooperlaw3234@gmail.com

CERTIFICATE OF SERVICE

Undersigned Attorney swears that he filed the foregoing on ECF on May 26, 2008 and that attorneys of record are registered e-filers.

s\Christopher Cooper.  May 26, 2008, approx. 8:49PM