CGP/433676                                                                                   6121-215

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER CORONADO, JR, by and through His next friend, SHELLEY GILBERT )<br><br>Plaintiff, )<br><br>v. )<br><br>VALLEY VIEW PUBLIC SCHOOL DIST., 365-U, )<br>ALAN HAMPTION, BOLINGBROOK POLICEMAN, (Official and individual Capacity), )<br>DON LAVERTY (Official and Individual Capacity), )<br>T. GAVIN (Official and Individual Capacity), )<br>STEVEN PRODEHL (Official and Individual Capacity), )<br><br>Defendants. ) | No. 08 CV 1254<br><br>Judge St. Eve |

**REPLY MEMORANDUM OF DEFENDANT ALAN HAMPTON
IN HIS "INDIVIDUAL AND OFFICIAL CAPACITY"
IN SUPPORT OF PARTIAL DISMISSAL
OF PLAINTIFF'S *SECOND* AMENDED COMPLAINT**

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

**ATTORNEY FOR DEFENDANT ALAN HAMPTON**

I.  **INTRODUCTION**

Plaintiff has styled his "Response" to Defendant Hampton's Motion to Dismiss/Memorandum in Support much like answering a complaint. He refers to many of the "paragraphs" in Officer Hampton's Memorandum as "agreed" or "disputed." However, that is not the function of a response and this procedure makes review by Defendant and this Court much more difficult. Moreover, Plaintiff's Response frequently cites to the wrong pages of Defendant Hampton's Memorandum. Finally, Plaintiff improperly heavily relies on the transcript and exhibits from the hearing on the preliminary injunction held in this case on March 12, 2008 before Judge Darrah.

Plaintiff tragically misunderstands the purpose of a motion under FRCP 12(b)(6) in that evidence outside the pleadings is usually never considered. It is black letter law that a motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the <u>complaint</u> for failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). Thus <u>none</u> of the so called exhibits and transcript from the preliminary injunction hearing can be considered in determining whether the Second Amended Complaint states proper claims. Defendant Hampton's Motion to Dismiss should be granted.

II. **REPLY ARGUMENT**

    A. **All "Official Capacity" Claims Must Be Dismissed**.

In Defendant Hampton's Opening Memorandum he described in detail the requirement to assert a so called "Official Capacity" claim under *Monell* and that the Second Amended Complaint was completely lacking in that regard and had failed to make even the slightest "hint" of such claim (Defendant's Memorandum, pg. 3-4). In response, Plaintiff merely states "without discovery, plaintiff does not know if *Monell* will arise." (Plaintiff's Response, pg. 4). This statement thus admits that the Second Amended Complaint is completely deficient in that regard. Judgment on all "Official Capacity" claims must be entered for Officer Hampton.

    B. **Plaintiff Points To Nothing in the Second Amended Complaint To Demonstrate a Protected First Amendment Expression for Count I, So it Must Be Dismissed**

Again, Plaintiff misunderstands the purpose of a 12(b)(6) motion and points to purported statements made in the preliminary injunction hearing held before Judge Darrah to support his First Amendment claim under Count I (Plaintiff's Response, pg. 4). As noted above, these

1

cannot be considered under 12(b)(6). So the fact remains that Plaintiff points to nothing in the Second Amended Complaint demonstrating a protected First Amendment expression or any case law in support thereof. This claim as to Officer Hampton must be dismissed.

Even assuming, *arguendo*, the Court indulges Plaintiff, nothing in his brief sheds any light on the First Amendment protected activity. Plaintiff claims he has a right to "stand," but points to absolute no case holding that simply "standing" is a protected First Amendment expression. Moreover, Plaintiff completely fails to explain how his "standing" conveyed any purported message not to be "assumed or accused of being a gang member" as he has claimed (Plaintiff' Response, pg. 4). And of course, Plaintiff provides nothing in the way of case law to even support this "standing vs. gang member" argument. This claim is meritless.

Plaintiff gets even further off-track by claiming that he was exercising his First Amendment rights with respect to Officer Hampton by "standing," but he never even states in the Second Amended Complaint that Officer Hampton was in the cafeteria on the day in question when Plaintiff "stood." (Response pg. 4) Indeed, his complaint states he saw Officer Hampton 3 days later! (Second Amended Complaint ¶ 10). And of course, his claim that he was exercising some unknown First Amendment right when he met with Officer Hampton is completely absent in the Second Amended Complaint. This claim must be dismissed.

### C. There is No False Imprisonment Claim under Count II

Plaintiff admits that the case of *Adams v. Cahokia School District,* 470 F. Supp.2d 897 (S.D. Ill. 2007) is not favorable to Plaintiff. Thus, Count II must be dismissed. However, Plaintiff attempts avoid this clear result with an argument that is completely incomprehensible and completely misstates the case law referenced by Defendant Hampton. In his Opening Memorandum, Officer Hampton cited the reported decision of *Adams v. Cahokia School District,* 470 F. Supp.2d 897 (S.D. Ill. 2007) for the proposition that a plaintiff, as a student, does not have complete mobility at the school, so no false imprisonment claim under 1983 can be made when a student is detained in part of the school.

Rather than discuss the holding of that case, Plaintiff discusses an unreported decision concerning a different defendants' motion for summary judgment on *excessive force* as to this same student (Adams). That decision was made by Judge Reagan of the Central District of Illinois. Judge Regan determined on summary judgment that material disputes remained as to whether the force applied against Plaintiff by Defendant Jackson was excessive. *Wilson v.*

2

*Cahokia School District #187*, Case N0. 06 C 0369, 2007 WL 1752150 (C.D. Ill. June 18, 2007). Even more unbelievable, Plaintiff's reference to the case decided by Judge Reagan was a different case number and a different defendant. In other words it was a separate civil action! Plaintiff's misrepresentation is not helpful.

Plaintiff's further argument defies logic. For starters, he states in his Second Amended Complaint that "three days later, February 7, 2008, on Defendant Gavin's complaint plaintiff was taken from his first period class and handed over to police a violent and out of control Alan Hampton. (Second Amended Complaint, ¶ 10). Although Plaintiff claims he was escorted to a 'police sub station' (an incorrect characterization, what ever a "sub station is" but that can be ignored for the moment), Plaintiff admits that he was still "within the High School" (Second Amended Complaint ¶11).

So it is clear that Plaintiff (by his admission in the Second Amended Complaint) was taken from class by someone <u>other</u> than Officer Hampton and brought to another room <u>in the school.</u> Thus Plaintiff's interaction with Officer Hampton occurred in the school on school grounds. The decision of *Adams v. Cahokia School District,* 470 F. Supp.2d 897 (S.D. Ill. 2007) provide persuasive authority that no claim for false imprisonment can be made.

Continuing down a completely unhelpful argument, Plaintiff cites a case he refers to as "*In re Gault* (1967)." (Plaintiff's Response, pg. 6). Of course, Plaintiff's first problem is that he provide no cite whatsoever to this case, so it should simply be ignored. However, should the Court wish to examine this case, it still has nothing to do with the Second Amended Complaint.

It is likely that Plaintiff is referring to *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). However, in that case the issue before the United State Supreme Court was a petition for writ of habeas corpus by parents seeking release of their 15 year old son on a *criminal matter*. The Supreme Court held that in criminal matters, a juvenile has a right to notice of charges to counsel to confrontation and cross examination of witness and the privilege against self incrimination.

Plaintiff's administrative expulsion from school was <u>not</u> a criminal matter. Moreover, *Gault* was referring to rights of juvenile criminal *in trial*. None of that has any bearing on whether a false imprisonment claim under § 1983 can be made when a student is detained in the certain part of a school during school hours. Plaintiff's reference to *Gault* is misleading.

3

Plaintiff does no better by his vague reference to "T.L.O. reasonableness standard." (again with no cite)(Plaintiff's Response pg. 6). Again, Plaintiff completely fails to develop this argument or even fully explain what he is referring to, so it should simply be ignored. However, and again if the Court wishes to indulge Plaintiff, it appear he is making a vague reference to *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). But *T.L.O.* concerned the reasonable suspicion standard for school officials to physically *search* a student's person. But again, this case has nothing to do with physical search.

Plaintiff questions the persuasive value of *Bell v. Marseilles Elementary School*, Case No. 00-2553, 2001 WL 818897 (N.D. Ill. Mar. 7, 2001). Plaintiff must have not read the case.

As quoted, the pertinent part of the opinion states:

> Accordingly, summary judgment must be granted in favor of the school officials regarding plaintiffs' false imprisonment claims. [FN6]
>
> FN6. Even if the school officials actions could be considered willful and wanton, they could not be found liable for false imprisonment. Plaintiffs cannot establish as a matter of law that they were unlawfully restrained because they never possessed freedom of movement within the school. The Illinois School Code mandates compulsory school attendance of children between the ages of seven and sixteen years. 105 ILCS 5/26-1. *School personnel possess power over students, and school personnel are permitted a degree of supervision and control that cannot be exercised over free adults. Veronia School District 47J v. Action,* 515 U.S. 646, 655 (1995)(emphasis added)

Plaintiff's discussion of qualified immunity in the *Bell* opinion with respect to a search is completely irrelevant to the false imprisonment issue (Plaintiff's Response, pg. 7).

### D. Plaintiff Has Failed to Provide Even an "Inkling" of Causation in the Second Amended Complaint For Count III So It Must Be dismissed.

Plaintiff completely fails to provide any discussion of "where" in the Second Amended Complaint he even provides an "inkling" that Officer Hampton caused to "deny him due process" by his actions (Count III). That is not surprising when the Second Amended Complaint is examined. After all he alleged that the School District voted to expel plaintiff and Defendant Prodehl "convened an expulsion hearing (Second Amended Complaint, Count 3, ¶ 13). Plaintiff then states that he was expelled from school "without Due Process of Law" (Second Amended Complaint ¶ 14). Nothing in that paragraph relates to anything Officer Hampton did with respect to the expulsion. Dismissal of Count III is required.

4

Rather than discuss his Second Amended Complaint, Plaintiff again points to preliminary injunction hearing testimony (Plaintiff's Response, pg. 8) . As noted above that is not proper, so it must be ignored. But again even indulging Plaintiff this improper argument, it does nothing to change the outcome. Plaintiff claims he was "coerced" into writing a confession. Assuming under FRCP 12(b)(6) that this statement is true, that still has nothing to do with any alleged expulsion. Plaintiff fails to point to anything in the Second Amended Complaint (or anywhere else for that matter) that a police officer has anything to do with the school hearing or expulsion itself. Plaintiff has forgotten what he is complaining about in his Second Amended Complaint; that the *process* of expulsion itself was not fair. So again even indulging Plaintiff, if the School District or the hearing officer relied upon improper documents, the process itself is at fault not the alleged "coercer" of the documents. He has completely failed to link up Officer Hampton to that alleged "unfair" process itself. Dismissal of Count III is proper.

### E. Plaintiff Confuses Judicial Due Process with School Expulsions

Both the Defendant School District and Defendant Officer Hampton in their dismissal briefs noted that the Seventh Circuit, and a multitude of other courts, have held there is no right to a formal judicial process of school expulsion, with no right cross examination or counsel (Defendant Hampton's, Memorandum, pg. 8-9). Plaintiff's Response does absolutely nothing to refute any of those cases. Nor does Plaintiff quarrel with the collateral estoppel effect of the preliminary injunction ruling by Judge Darrah in that Judge Darrah found no due process violations.

Nor does the fact that the alleged Spanish interpreter was not provided as alleged by Plaintiff make for a denial of due process (Plaintiff's Response, pg. 10). After all, there is nothing in the Second Amended Complaint, that demonstrates that the *student* could not fully comprehend English. And more importantly how does Officer Hampton have anything to do with the alleged refusal to provide an interpreter at a school expulsion hearing? Count III must be dismissed.

### F. Count IV Must Be Dismissed

Under Count IV, Plaintiff claimed a Due Process violation under 105 ILCS 5/10-22.6. But he ignores the fact that the statute does not allow for claims against *individuals* (assuming, without conceding, that a private action exists at all). So he certainly cannot maintain this count against Officer Hampton. He does nothing to even refute the plain language of the statute

barring any claim against individuals. To resist dismissal as to Officer Hampton on this basis is reckless.

### G. Plaintiff Concedes Count V is Not Directed Against Officer Hampton

Count V can be dismissed against Officer Hampton as Plaintiff concedes no cause of action against him.

### H. Plaintiff's Claim under Count VI that Article X of the Illinois Constitution May Provide a Cause of Action Based on Race is Meritless

It was assumed that Plaintiff, faced with Illinois Supreme Court precedent, that Article X of Illinois Constitution only means "free" as in money, not as in race, he would simply "throw in the towel" on that claim. However, Plaintiff persists in arguing for this meritless claim. In any event dismissal is still required for Count VI.

For starters, Plaintiff misrepresents the holding of *Aurora East Public School Dist. No. 131 v. Cronin,* 66 Ill. Dec. 85, 92 Ill.2d 313, 442 N.E.2d 511, 516 (1982). Plaintiff claims the passing of the Moore Amendment did not relate to Article X in that case. (Plaintiff's Response, pg. 11).

However, the issue in *Cronin* was whether rules promulgated by the State Board of Education to reduce segregation were proper. The Illinois Supreme Court held that these rules were invalid and the Board could seek no refuge in Article X of the State Constitution.

To make that point perfectly clear, the Illinois Supreme Court state "In light of monetary sense of word "free" in this section [Article X] providing free education through secondary level, legislature's delegation to Board of Education of duty to promulgate rules for establishing and maintaining free schools was intended to mean financially free schools and was not meant to encompass racial equality." The Court thus held that because this part of the Constitution had nothing to do with racial equality and the Board of Education rules on desegregation could find no Constitutional support here. So the Illinois Supreme Court was very clear as to what the import of Article X meant.

Plaintiff also misrepresents the holding of the *Cronin v. Lindberg,* 66 Ill, 2d 47, 56, 360 N.E.2d 360 (Ill. 1976) (Plaintiff's Response, pg. 11). In that case, the Illinois Supreme Court stated that there could possibly be a <u>due process claim</u> based on Federal and State Constitutional clauses on some type of racial inequality (the state had reduced funds because the school district had less than 176 days of attendance a required by state rule due to a teacher strike), but there

6

was no standing. The *Lindberg* court <u>never</u> stated that due process or equal protection claim, if one could be made, is grounded in Article X. The Court was clear that it was referring to the due process clauses of each respective constitution.

Plaintiff fares no better with the case of *Lewis E. v. Spagnolo,* 186 Ill.2d 198, 238 Ill.Dec. 1, 710 N.E.2d 798 (Ill.,1999). In that case, various students in East St. Louis sued the Superintendent of Education and the district in East St. Louis claiming education was completely inferior. Nothing in *Spagnolo* discusses race. Count VI must be dismissed.

### I.     Count VII Must Be Dismissed

Although unclear from the Second Amended Complaint, Plaintiff now claims that Count V is against the School District and that Count VII (§ 1983 Equal Protection Claim) is against all Defendants (Plaintiff's Response, pg. 12). However, Plaintiff provides no argument why the reasoning of Count V is not the same for Count VII mandating dismissal. In fact, Plaintiff provide no argument whatsoever. He thus apparently concedes Count VII must be dismissed. In any event, <u>any claim</u> for race discrimination in a school setting by a student is governed by Title VI, not Section 1983.

Plaintiff does absolutely nothing to demonstrate otherwise. As explained in detail in Defendant Hampton's Opening Memorandum, the *Sea Clammers* Doctrine states "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In determining whether an act subsumes a section 1983 action, the court must determine whether Congress intended that act to supplant any remedy that would otherwise be available under section 1983. *Id.* at 21, 101 S.Ct. 2615. Such Congressional intent may be found directly in the statute creating the right or inferred when the statutory scheme is incompatible with individual enforcement under section 1983. *City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 125 S.Ct. 1453, 1458, 161 L.Ed.2d 316 (2005).

In the Seventh Circuit that answer is "yes" with respect to race discrimination in a school setting. See *Boulahanis v. Bd. of Regents,* 198 F.3d 633, 641 (7th Cir.1999)(proper means of asserting race discrimination claims in school setting was Title VI, thus precluding Section 1983 and 1985 claim). Thus, the only claim for race discrimination in a school setting is Title VI, not 1983. This count must be dismissed.

7

### J. Plaintiff's Claim under Count IX for "assault" under § 1983 is Reckless

In Officer Hampton's Opening Memorandum, he explained how the Seventh Circuit, (consistent with all courts) requires that a 1983 action be based on a violation of the <u>Constitution</u> or Federal Law. It is beyond dispute that Section 1983 actions are based on federal rights, not state laws. *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995).

Notwithstanding that clear indication, Plaintiff persists in the misguided argument that a state common law claim of "assault" can be the premise of a § 1983 action. Plaintiff provides no case law for this unsupported claim. Nor does he point to anything remotely federal in character (i.e. Constitutional statutory or otherwise) that gives a "claim" of assault federal character that could be vindicated through § 1983. Count IX must be dismissed.

### K. Count X for "Right to Counsel" Must Be Dismissed

Plaintiff's argument under this Count is convoluted, making it difficult to decipher (Plaintiff's Response, pg. 12-13). In the first place, Plaintiff does not dispute that there is no right to counsel under the Sixth Amendment until arraignment as demonstrated in Defendant's Opening Memorandum. He also does nothing to demonstrate (because he cannot) that there is any arraignment even at issue in this case. He thus concedes he has no claim of "right to counsel" under the Sixth Amendment (as enforced through the Fourteenth) (as intimated in Count X) and concedes there was no criminal proceeding in this matter.

Rather, Plaintiff seems to "shift gears" in his argument to make a claim against self incrimination, but Plaintiff has a tragic misunderstanding of the Fifth Amendment right against self incrimination/right to counsel. For starters, it is clear that there is no § 1983 cause of action for a failure to give the so called "prophylactic" *Miranda* rights. *Chavez v. Martinez*, 538 U.S. 760, 772, 123 S.Ct. 1994, 2004, 155 L.Ed.2d 984 (2003). Plaintiff's insistence on asserting a § 1983 claim for failure to give such warning allegedly by Officer Hampton is reckless in light of *Chavez*, stating clearly to the contrary. ("Plaintiff should have been adminsitered [sic] Fifth Amendment Rights by Officer Hampton," Plaintiff Response, pg. 13).

Even ignoring that, Plaintiff completely misunderstands the privilege against self incrimination itself. It is, as *Chavez* makes clear, the Constitutional right not to have alleged "confessions" used against one in a <u>criminal</u> case. *Id.* 538 U.S. at 770, 123 S.Ct. 2003. The fact that courts have allowed a party to invoke the right in civil proceedings [so it is not used later in a criminal proceeding] does not mean there is a §1983 claim when an alleged "confession" is

8

introduced in a civil matter. That is not surprising given the text of the Fifth Amendment itself ("nor shall be compelled in any criminal case to be a witness against himself. . .")(emphasis added).

There is nothing in the Second Amended Complaint or Plaintiff's Response brief to demonstrate any criminal proceeding wherein these alleged statement/confessions were made or introduced. To insist on a § 1983 claim based on that when the Supreme Court has clearly indicated otherwise is meritless.

**L.     Count XI is Vague But Must be Dismissed in Any Event**

Count XI is so vague that even Plaintiff is unsure what he is looking for as demonstrated in his Response. He states "Count III is a due process claim that could incorporate Count 11 (arguably, but for the ADA claim). . . It is plausible that Count XI has been plead in Count 3" (Plaintiff's Response, pg. 14). Count XI should be dismissed based on that admission.

But even ignoring that, Plaintiff admits in his brief that he is merely claiming a challenge to the expulsion as pled in Count III (Plaintiff's Response, pg. 13). Plaintiff also vaguely references a claim of a "Constitutional right to public education" (Plaintiff's Response, pg. 13). *If* Plaintiff means that education can never be taken away with or without process, much like a fundamental right under substantive due process, that too is incorrect. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (education is not a fundamental right protected by the federal constitution) see also, *Committee for Educational Rights v. Edgar,* 174 Ill.2d 1, 34, 220 Ill.Dec. 166, 672 N.E.2d 1178 (1996).

Finally, Plaintiff makes a vague reference to some sort of Section 504 or IDEA claim for an IEP (Plaintiff's Response pg. 13). But even assuming plaintiff can proceed under § 1983 and ignore all of the administrative remedies for this, that still has nothing to do with Officer Hampton. Count XI must be dismissed.

**M.     Count XII**

Plaintiff admits that his claim "against self incrimination" under Count XII is really nothing more than the same claim he pleaded under Count X. (Plaintiff's Response, pg. 14). However, as explained in detail above, there can be no claim for alleged failure to give *Miranda* warnings or for alleged self-incrimination in a civil administrative proceeding. Count XII must be dismissed.

9

### N.    Count XIII for Defamation Must Be Dismissed

Putting aside for the moment that Plaintiff has yet to identify what statement exactly, Plaintiff's believe were defamatory, Plaintiff's argument against dismissal on the Count XIII is to simply claim Officer Hampton is not an "official." However, it is unclear what he means by that but, in any event, assuming he means only the highest ranking state official, that too is incorrect.

The Illinois Courts have found this privilege applicable to many government employees, not just executive like a governor as implied by Plaintiff (Plaintiff's Response, pg. 14). See *Savarirayan v. English*, 45 Ill. App. 3d 105, 359 N.E.2d 236 (4th Dist. 1977)(federal-employees, physicians, applying federal law). *Springer v. Harwig*, 94 Ill. App. 3d 281, 418 N.E.2d 870 (1st Dist. 1981) (village manager); *Dolatowski v. Life Printing and Publishing Co., Inc.*, 197 Ill. App. 3d 23, 554 N.E.2d 692 (1st Dist. 1990)(police superintendent); *Williams III v. Fischer* (1991), 221 Ill. App. 3d 117, 581 N.E.2d 744 (5th Dist. 1991)(county coroner);

The case of *Harris v. News-Sun, et al.*, 296 Ill. App.3d 648, 206 Ill. Dec. 876, 646 N.E.2d 8 (2d Dist. 1995) is right on point. In that case, a police detective had allegedly made defamatory statements about the wife of a suspect to the media. The court found those types of statements to be in the scope of official duties and absolutely privileged.

If a police detective can make statements about the wife of a suspect, certainly, a police officer whose "beat" is the school itself (Plaintiff even emphasizes the point, by incorrectly referring to the police office in the high school as a "sub station"), can certainly make statements about whether school age kids are in a "gang" (The only statement Plaintiff alleges in the Second Amended Complaint).

### O. Plaintiff Concedes Counts XIV/XV Must be Dismissed as to Officer Hampton

Plaintiff agrees that Count XIV can be dismissed against Officer Hampton and Count XV does not relate to Officer Hampton (Plaintiff's Response, pg. 14). Thus these counts must be dismissed.

### P. There Can Be No 1985 Claim.

Plaintiff has no substantive argument that a § 1985 claim for a race based conspiracy under 1985 cannot be maintained because it is supplanted by Title VI. Thus all 1985 claims must be dismissed. As explained in Defendant Hampton's Opening Memorandum, any such

class-based discrimination under § 1985 is displaced by Title VI (and cannot be made against individuals). *Boulahanis*, 198 F.3d at 640-41.

### Q. In the Alternative, Officer Hampton is Protected by Qualified Immunity

As explained in detail in Defendant Hampton's Opening Memorandum, even if there was some question of the merits of the claims, Officer Hampton is still protected under qualified immunity for all federal claims (Counts I-II, V, VII, IX-XII, XIV-XV).

In response, Plaintiff states there is no absolute immunity but that was never argued by Officer Hampton for the 1983 claims. Plaintiff really provides nothing otherwise other than to state the legal elements of "probable cause." (Plaintiff's Response, pg. 15). Plaintiff makes no "link" to what claim he thinks probable cause is relevant to in the context of qualified immunity, but assuming for the sake of argument he is referring to the § 1983 count of seizure (Count II). His response still does nothing to refute the claims.

As referenced above, because the alleged detention/seizure occurred on school grounds by Officer Hampton, it was plaintiff's burden to show closely analogous case law demonstrating that these facts were clearly established the law, and more importantly, case law to demonstrate that there is even the possibility of a "seizure" or false imprisonment claim on school grounds during school hours. Defendants demonstrated case law showing exactly the opposite. Plaintiff is completely deficient in that regard (and of course it is his burden to demonstrate).

## III. CONCLUSION

Counts I-VII and IX-XV must be dismissed with prejudice as to Officer Hampton and the Village of Bolingbrook.

Respectfully submitted

By: s/Craig G. Penrose
One of His Attorneys

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, IL 60606
(312) 627-4000
(312) 627-1717 (facsimile) cpenrose@tsmp.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on June 4, 2008, a copy of the foregoing document was served upon the counsel of record listed by:

- Electronically filing via court ECF system:

| **Counsel for Plaintiff**<br><br>Christopher Cooper<br>P.O. Box 1225<br>Hammond, In 46325<br>(317) 536-3197<br>(708) 425-8197 (facsimile<br>cooper@sxu.edu | **Counsel for Valleyview School District, Don Laverty, T. Gavin, and Steven Prodehl**<br><br>Brian Riordan<br>Anthony Ulm<br>Clausen Miller<br>10 South LaSalle Street<br>Chicago, Il 60603-1098<br>(312) 855-1010<br>(312) 606-7777<br>briordan@clausen.com |
|---|---|

s/Craig G. Penrose
Craig G. Penrose

Craig Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, Illinois 60606-6308
(312) 627-4000

12