CERTIFIED COPY

# In the
# United States Court of Appeals
# For the Seventh Circuit

No. 08-1850

ROGER CORONADO, JR.,

        *Plaintiff-Appellant,*

v.

VALLEYVIEW PUBLIC SCHOOL DISTRICT 365-U, ET AL.,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 1254—**John W. Darrah**, *Judge.*

ARGUED JULY 8, 2008—DECIDED AUGUST 12, 2008

Before BAUER, COFFEY and ROVNER, *Circuit Judges.*

PER CURIAM. Roger Coronado, Jr., a fifteen-year-old student at Bolingbrook High School, was involved in a confrontation between rival gangs in the school cafeteria—for which he received a two-semester expulsion. Acting through his next friend, Shelley Gilbert, Coronado sued the school district, a police officer, and various school officials under 42 U.S.C. § 1983, claiming, as relevant here, that his expulsion hearing deprived him of procedural due

2                                                                No. 08-1850

process. Coronado also sought a preliminary injunction that would lift the expulsion until a second hearing with "Due Process safeguards" could take place. The district court denied the motion, however, reasoning that Coronado had failed to demonstrate a reasonable likelihood of success on the merits, and that the proposed injunction would harm the public interest. This interlocutory appeal followed. *See* 28 U.S.C. § 1292(a)(1). We affirm.

### I.

The following facts are undisputed. During the lunch hour on February 4, 2008, several boys—some of them Latin Kings—sat down at Coronado's table in the school cafeteria. Within a few minutes, a member of a second gang, the Gangster Disciples, approached the table and began to taunt the group. The other boys at Coronado's table rose to confront their rival, which attracted additional Gangster Disciples. Both sides started shouting and making gang signs. Coronado stood up as well. But before the situation could escalate further, the bell rang and the group dispersed at the urging of a security guard. Shortly thereafter Timothy Gavin, a second security guard in the cafeteria, filed an incident report in which he wrote, "Roger was seen by myself posturing with a large group in the cafeteria who were flashing gang signs at a group of Gangster Disciples." Gavin also wrote up the other 12 to 14 students involved in the confrontation.

A few days later Coronado was told to report to the school's police substation, where he met Officer Alan Hampton. Officer Hampton showed Coronado the incident

No. 08-1850 3

report, which Coronado signed below this acknowledgment: "The above offenses have been explained to me and I have had the opportunity to respond to them; my signature shall not be taken as an admission of guilty [sic] of the offense(s) alleged." At Officer Hampton's invitation, Coronado telephoned his father to let him know that he was in trouble. Officer Hampton also demanded that Coronado complete a "Memorandum of Incident" describing the events in the cafeteria. Coronado's signed statement reads, "I just got up and try to see if my friends were goin [sic] to need help or something because there were a lot of them other guys on the there [sic] side so I got up to help." That document also bears the undated signatures of Coronado's parents underneath the representation that they had "seen this statement." On the basis of this confession, Coronado was suspended for ten days while the school considered expulsion.

Approximately a week later, Coronado's father received a letter from Hearing Officer Steven Prodehl explaining that the school administration had charged Coronado with "Subversive Organizations," had recommended expulsion, and had appointed Prodehl to review the matter. Prodehl "requested" that Coronado and his parents attend a hearing on February 19, 2008, at 11:00 a.m., to discuss Coronado's "behavior and said expulsion." The letter described the nature of the hearing as well:

> You, and your child, will be given the opportunity to review the charges made against your child. You may present evidence at the Hearing, and have counsel present, if you desire. Information germane to the

question of expulsion, which you may wish to present is requested and will be taken into consideration.

Coronado and his parents attended the expulsion hearing, as did Prodehl and Dean Rob Lathrope. Gavin and Officer Hampton did not appear. There is no record of the hearing other than Prodehl's written summary of the proceedings. According to that document, Coronado was charged with a second offense—"Fighting/Mob Action"—at the hearing. And, Prodehl writes, Coronado admitted to both charges: "Roger stated that he did walk over and lent support to his table, some of whom he knows are Latin Kings. . . . Roger stated that he should have acted differently and what he did was very stupid, especially when he is not that good of friends with any of them." The summary also recounts that Coronado's father remarked, in English, that he was "very surprised at his son" and that he and his wife support the school's efforts to prevent gang violence but believed that Coronado had just "got caught up in the moment and did something stupid." Additionally, Coronado's father related that his son had never been in trouble before, that the parents hope that he will attend college, and that the entire family is involved in coaching and playing team sports. Finally, Coronado's father asked that the school authorities "look at his son as an individual, find that he is a good kid and not expel him." Following the hearing, Prodehl proposed to the Board of Education a two-semester expulsion, which would encompass the remainder of the spring semester of 2008 (which has now ended) and the fall semester of 2008. On or around February 25, 2008, Coronado received notice that the Board had adopted Prodehl's recommendation; he was not to return to school until 2009.

No. 08-1850                                                                   5

Coronado responded by filing in the district court a sprawling, fifteen-count complaint, naming as defendants the school district, Prodehl, Gavin, and an assistant principal at the high school. At the same time Coronado moved for a preliminary injunction that would lift the expulsion until a second hearing "with Due Process safeguards" could take place. As relevant to his request for a preliminary injunction, Coronado claims that his expulsion violated his right to due process because the school district did not provide his parents with a Spanish-language interpreter, or allow him to cross-examine Gavin and Officer Hampton, or create a contemporaneous record of the hearing before Prodehl. The district court ordered an evidentiary hearing on the motion.

On March 12, 2008, Coronado, Coronado's parents, Prodehl, Gavin, and Officer Hampton, among others, testified about the events leading up to Coronado's expulsion. Coronado testified that, contrary to his written statement and Prodehl's summary of the expulsion hearing, he did not support or encourage anyone in the school cafeteria that day. According to Coronado, Gavin had "flat-out lie[d]" about his role in the incident, Hampton had intimidated him into falsely confessing, and Prodehl had misrepresented in his written summary that he admitted a role in the cafeteria confrontation. Gavin, Hampton and Prodehl, on the other hand, confirmed the accuracy of their earlier reports and denied any misrepresentation or intimidation. Notably, Coronado and his parents acknowledged that they had received advance notice of the expulsion hearing and the charge of "Subversive Organizations." Coronado, moreover,

conceded that he was offered an opportunity to respond to the charges and rebut the evidence presented by school officials, but he declined. The parties agree that Coronado learned of the second charge, "Fighting/Mob Action," at the hearing. Yet Coronado has never maintained that he was surprised by the second charge or that he asked for more time so that he could respond more fully to the new charge.

Coronado also testified that his father had called the school prior to the hearing to request a translator "[b]ut he left a voicemail and nobody called back." According to Coronado, his father made the request at the hearing as well and Prodehl denied the accommodation. Coronado's father also testified, through an interpreter, that "on the way in he asked the official if he could have an interpreter because he didn't exactly understand" the proceedings but "was told that he wouldn't need an interpreter" because his son was present. Prodehl, meanwhile, testified that he asked the parents at the outset of the hearing if they needed an interpreter and was told no.

At the conclusion of the evidentiary hearing, James Mitchem, the principal at Bolingbrook High School, testified that the proposed injunction would have a pernicious effect on his staff and the other students involved in the incident:

> I think that it would have a negative impact on the staff morale, I think that it would embolden students who were involved in this particular rules infraction to perceive that, in fact, they can violate particular school rules and not be held accountable. And I believe

No. 08-1850 7

that his presence back in our building, particularly at this juncture, would do just that.

The district court denied the preliminary injunction. The court concluded that Coronado had failed to demonstrate a reasonable likelihood of success on the merits, and that, in any event, the proposed injunction would harm the public interest. Due process, the court wrote, requires only that a student facing expulsion receive notice of the charges against him, notice of the time of the hearing, and a full opportunity to be heard. *See Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1010-11 (7th Cir. 2002). Coronado received all three, according to the court, and the evidence showed that he admitted wrongdoing at the hearing. In reaching this conclusion the court credited the testimony of the defendants' witnesses over the testimony of Coronado and his father. The court explained, moreover, that Coronado had no constitutional right to cross-examine Gavin or Officer Hampton at the expulsion hearing. And, the court continued, Coronado's contention that the school was required to provide an interpreter was baseless as well because the evidence showed that an interpreter was not needed: Coronado's father had asked questions *in English* at the expulsion hearing and made statements "regarding Plaintiff's education, activities and future plans as well as his own views of the school's efforts to combat gang activity." Finally, the court rejected Coronado's claim that Prodehl's six-page summary of the expulsion hearing was inadequate. As for the public interest, the court reasoned that school administrators must have "the authority to punish conduct such as that of Plaintiff if they are to provide a safe school environ-

ment." Ordering the school district to readmit Coronado, the court continued, "would diminish that authority and could threaten the safety of students."

## II.

A party seeking a preliminary injunction must demonstrate that he is reasonably likely to succeed on the merits, that he is experiencing irreparable harm that exceeds any harm his opponent will suffer if the injunction issues, that he lacks an adequate remedy at law, and that the injunction would not harm the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). "If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis . . . which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Id.*; *see Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004). In reviewing the denial of a preliminary injunction, this court examines legal conclusions de novo, findings of fact for clear error, and the balancing of harms for abuse of discretion. *Joelner*, 378 F.3d at 620. The scope of appellate review is, however, limited to the injunction decision itself and those issues inextricably bound to it. *See, e.g., Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1124 (7th Cir. 1983) ("Cases applying § 1292(a)(1) have held that other incidental orders or issues nonappealable in and of themselves but in fact interdependent with the order

No. 08-1850     9

granting or denying an injunction may also be reviewed, but only to the extent that they bear upon and are central to the grant or denial of the injunction.").

Coronado asserts on appeal that the district court erred in denying the preliminary injunction because, Coronado insists, he has a reasonable likelihood of success on the merits with respect to his due process claim.[1] The crux of his argument on the merits is that he was entitled to considerably more process than he received given the severity of his punishment. In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court recognized a high-school student's "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 574. That decision outlined the procedural protections enjoyed by a public-school

---

[1] Strangely, Coronado construes the district court's order as a "denial of a permanent injunction" because "there is not a possibility of a trial on the issue of injunctive relief." Without question the district court considered Coronado's motion to be one for a *preliminary* injunction. Regardless, this court would have jurisdiction over Coronado's interlocutory appeal even if the district court had denied a motion for a *permanent* injunction. *See* 28 U.S.C. § 1292(a)(1); *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 568-69 (7th Cir. 1990) (holding that grant of permanent injunction is appealable even though it is "an interlocutory order [that] does not wind up the litigation" and "it is not a temporary or preliminary injunction").

student facing a brief suspension. *Id.* And in *Remer* this court suggested that the same governing safeguards—notice of the charges, notice of the time of the disciplinary hearing, and a meaningful opportunity to be heard—apply to a student threatened with a four-year expulsion. *See Remer*, 286 F.3d at 1010-11. Due process does not, however, require "a judicial or quasi-judicial trial"—with all of the features and safeguards of, e.g., a delinquency proceeding—before a school may punish misconduct. *Linwood v. Bd. of Educ.*, 463 F.2d 763, 769-70 (7th Cir. 1972); *see Goss*, 419 U.S. at 583; *Remer*, 286 F.3d at 1010-11. Although the *Goss* court reserved the question whether more formal procedures might be necessary for longer suspensions or expulsions, *Remer* can fairly be read to stand for the proposition that expulsion does not require a more elaborate hearing in order to comport with due process so long as the student receives the "fundamentally fair procedures" set out in *Goss*. *See Remer*, 286 F.3d at 1010-11; *see also Lamb v. Panhandle Cmty. Unit Sch. Dist. No. 2*, 826 F.2d 526, 528 (7th Cir. 1987) (explaining that a penalty tantamount to expulsion entitles the student to some opportunity to present mitigating arguments).

Coronado's appeal falters because he received notice and a meaningful opportunity to be heard—and therefore cannot demonstrate any likelihood of success on the merits. *See Remer*, 286 F.3d at 1010-11. Prodehl's letter informed Coronado and his parents of the date of the hearing as well as the charge of "Subversive Organizations." Moreover, Coronado's contact with Officer Hampton—even by Coronado's account—yielded some understanding of the charges against him. Coronado does

not dispute that he had an opportunity to present evidence at the hearing and respond to the charges. But Coronado does challenge the school's failure to inform him *in advance* of the hearing of the second charge—"Fighting/Mob Action." As this court noted in *Smith ex rel. Smith v. Severn*, 129 F.3d 419 (7th Cir. 1997), though, same-day notice of school disciplinary charges passes constitutional muster. *Id.* at 428-29 ("As for the timing of the notice, no delay is necessary between the time notice is given and the time of the discussion with the student." (citing *Goss*, 419 U.S. at 582)).

Coronado acknowledges *Remer* but nevertheless argues that a student facing expulsion is entitled to something more than notice and an opportunity to be heard. Other circuits have accepted Coronado's premise that *Goss* provides merely a starting point for due-process analysis in the expulsion context; those courts have looked to the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether anything further is required. *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001); *Palmer ex rel. Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989); *Newsome v. Batavia Local School Dist.*, 842 F.2d 920, 923-24 (6th Cir. 1988). Yet none of those decisions has required any of the accommodations that Coronado insists he was denied.

Coronado first argues that he had a right to cross-examine Gavin and Officer Hampton—and the denial of that asserted right promises a reasonable likelihood of success

on the merits.[2] The record contains no evidence that Coronado ever asked that either Gavin or Hampton be required to appear and give testimony, so it is difficult to imagine how he was denied the opportunity. In any event, Coronado provides no federal authority to support his position, and the only circuit court to decide the question in the high-school context (that we have found) reached the opposite conclusion. *See Newsome*, 842 F.2d at 925-26.

Similarly, Coronado argues that Prodehl's written summary of the expulsion hearing did not comport with due process because, Coronado contends, it lacks sufficient detail. Again, there is no evidence in the record that Coronado asked during the expulsion hearing that a verbatim record be made. And, at six pages, Prodehl's summary provides considerable detail. Coronado insists that the document is rife with inaccuracies, but he is grasping at straws. For example, Coronado argues that Prodehl's denial of a "First Time Offender Recommendation" was error because, as the parties agree, Coronado was a first-time offender. But Prodehl testified in the district court that a "First Time Offender Recommendation"—essentially a recommendation of lenity—is discretionary and is typically reserved for first-time, minor drug offenders.

Coronado also complains of the absence of an interpreter at the expulsion hearing. The district court, though, did not

---

[2] For this proposition (and many others) Coronado relies on *Colquitt v. Rich Twp. High School Dist. No. 227*, 699 N.E.2d 1109 (Ill. App. Ct. 1998), which is not binding precedent on this court.

address whether due process might require an interpreter because the court concluded that an interpreter was not needed. In doing so, the court considered the extent of Coronado's father's remarks at the hearing and his ability to ask questions. On appeal Coronado does not dispute that his father asked questions at the expulsion hearing or that he delivered a statement regarding Coronado's goals, commended the school's efforts to combat gang violence, and requested leniency for Coronado—all in English. Coronado even concedes in his brief that his parents can speak "[c]onversational English or minimally fluent English." Yet, despite these concessions, Coronado does not explain why an interpreter was needed, or how the district court could have committed clear error in finding that an interpreter was not required. Nor does Coronado provide any specific legal authority—other than vague references to *Mathews* and *Colquitt*—to support his contention that he and his parents were entitled to an interpreter as a matter of due process. And we have not found any authority that supports Coronado's argument. His legal argument, therefore, is irrelevant and the district court was correct to avoid it.

Coronado's remaining arguments are nebulous. He seems to argue that the district court erred by not explicitly balancing the harms posed by granting or denying the injunction. But it is only *after* the moving party makes a threshold showing of, among other things, a reasonable likelihood of success on the merits that the district court is required to conduct this inquiry. *Walker*, 453 F.3d at 859; *Joelner*, 378 F.3d at 619. Coronado never made it past the first hurdle. He also contends that he was expelled for

"posturing," which he insists is an unconstitutionally vague "policy." Posturing is Gavin's term, though—not any school policy. Gavin used it to describe Coronado's actions in the cafeteria, and he elaborated on its intended meaning at the hearing: "getting up to essentially back up his friends, associates, in this—contained in this large group." Finally, Coronado argues that the district court should have considered that he has a learning disability in weighing whether to grant the preliminary injunction. Coronado did not raise this argument before the district court, however, so it is waived on appeal.[3] *Metzger v. Ill. State Police*, 519 F.3d 677, 681-82 (7th Cir. 2008).

A second problem with Coronado's appeal is his failure to confront the district court's alternative holding, that the proposed injunction would harm the public interest by undermining the authority of school officials and threatening the safety of students. To this Coronado offers only his opinion that Principal Mitchem's testimony concerning the need for a safe educational environment "is best

---

[3] In his reply brief, Coronado attempts to expand the scope of this appeal yet again. He argues that the school has exculpatory video footage of the cafeteria incident but concedes that the district court has not seen the video nor has Coronado. Elsewhere Coronado fashions arguments under the First and Fifth Amendment concerning his "coerced confession." Finally, Coronado asserts that the only school now available to him—Premier Academy—cannot accommodate his learning disability. None of these arguments were developed before the district court, and they have no bearing on his appeal regarding the denial of the preliminary injunction.

described as speculative and uninformed." That response is woefully inadequate; Coronado needs to do better in order to prevail on appeal.

## CONCLUSION

Coronado feels that he was entitled to "the full panoply" of due process, something akin to the rights enjoyed by a criminal defendant. No doubt his two-semester expulsion was a harsh punishment. But because his position is not supported by law, and because the district court did not err in denying his preliminary injunction, we AFFIRM.

8-12-08